DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ANDREW F. DAWSON (CABN 264421)
KATHERINE L. WAWRZYNIAK (CABN 254751)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7019
   FAX: (415) 436-7234
   andrew.dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-337 WHO |
| Plaintiff, | UNITED STATES'S RESPONSE TO DEFENDANT JOSEPH SULLIVAN'S MOTION FOR ACCESS TO GRAND JURY SELECTION MATERIALS |
| v. | |
| JOSEPH SULLIVAN, | Date: October 1, 2020 |
| Defendant. | Time: 1:30 p.m. |
| | Courtroom: 2, 17th Floor |

     Adopting the strategy of other defendants indicted during the COVID-19 pandemic,[1] Defendant Joseph Sullivan seeks 21 broad categories of documents from the Clerk's Office related to the process by which the Grand Jury that returned the indictment in this case was selected. Defendant assumes that the Grand Jury was selected after the onset of the pandemic, and that the selection process was affected by the pandemic.

---

[1]    *See, e.g.*, *United States v. Mattis*, CR 20-203 BMC (E.D.N.Y.), Dkt., 25, 25-1, 26, & 26-1; *United States v. Cruz*, CR 20-206 WFK (E.D.N.Y.), Dkt. 9 & 9-1; *United States v. Henry*, CR 20-293 LJL (S.D.N.Y.), Dkt. 23; *United States v. Baker*, CR 20-288 LJL (S.D.N.Y.), Dkt. 20 & 20-1; *United States v. Williams*, CR 20-286 WHP (S.D.N.Y.), Dkt. 7 & 7-1; *United States v. Balde*, CR 20-281 KPF (S.D.N.Y.), Dkt. 14.

The Jury Selection and Service Act, 28 U.S.C. §§ 1861, et seq. ("JSSA"), guarantees a defendant "the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." To that end, the JSSA provides a limited right to inspect the "contents of records or papers used by the . . . clerk in connection with the jury selection process . . . as may be necessary in the preparation or presentation of a motion" challenging compliance with selection procedures – not an unfettered license to rummage through the Court's records. While the government agrees that Defendant Sullivan is entitled to some of the materials he has requested, not all of the 21 requested categories align with the legal bases presented in the motion. For example, Defendant Sullivan requests specific demographic information for each grand juror that returned the indictment in this case. But there is no explanation of how that granular data is relevant to the random selection of the Master Jury Wheels from a fair cross section of citizens, which is the only right relied upon in the pending motion. Absent some articulation of how such juror-specific information would be relevant to a claim under the JSSA, Defendant Sullivan's requests related to the excusal, deferment, disqualification, and selection of individual potential grand jurors should be rejected. In addition, specific records pertaining to the members of the grand jury that indicted Defendant Sullivan are similarly irrelevant to the rights identified in the defendant's motion. On these grounds, and as discussed in more detail below, the government objects to requests 16 through 21. *See* Docket No. 17-1, at 4.

## BACKGROUND

### I. THE JURY SELECTION AND SERVICE ACT

The JSSA declares "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. It forbids "exclu[sion] from service as a grand or petit juror . . . on account of race, color, religion, sex, national origin, or economic status." *Id.* § 1862. It directs district courts to devise a written plan for random selection of grand and petit jurors, which shall be placed into operation after approval by a reviewing panel (including members of the judicial council of the circuit). *Id.* § 1863(a). District courts

are to promptly notify the reviewing panel, the Administrative Office of the United States Courts, and the Attorney General of the initial adoption and future modifications of the plan. *Id.* Among other things, the plan is to "provide for a master jury wheel . . . into which the names of those randomly selected shall be placed." *Id.* § 1863(b)(4). The JSSA also regulates the drawing of names from the master jury wheel, *id.* § 1864, qualifications for jury service, *id.* § 1865, and selection and summoning of jury panels, *id.* § 1866.

A defendant "may move to dismiss the indictment or stay proceedings . . . on the ground of *substantial* failure to comply with the provisions" of the statute in selecting the grand jury. 28 U.S.C. § 1867(a) (emphasis added). The JSSA also provides that "[t]he contents of records or papers used by the . . . clerk in connection with the jury selection process shall not be disclosed, except . . . *as may be necessary* in the preparation or presentation of [such] a motion . . . . The parties in a case shall be allowed to inspect, reproduce, and copy *such* records or papers at all reasonable times during the preparation and pendency of such a motion." *Id.* § 1867(f) (emphasis added).

## II.    THE COURT'S GENERAL ORDERS

General Order No. 6, Plan for the Random Selection of Grand and Petit Jurors, sets forth the Court's Jury Plan. *See* https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_06_8-7-2017.pdf   The Jury Plan was approved by the Judicial Council of the Ninth Circuit on July 19, 2017. *Id.*

On June 9, 2020, the Court adopted General Order No. 77, In Re Provisional Modifications to Jury Plan Due to COVID-19 Public Health Emergency. *See* https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_77_signed_6-9-20.pdf. The order "temporarily modifies the provisions of the Jury Plan under General Order No. 6 in two respects: (1) to lower the minimum age at which persons of that age group may request to be excused from jury service from 75 years to 70 years of age, and (2) to extend the period of time that a person may, upon request, defer or postpone jury service." *See id.* The Court stated "[t]hese provisional modifications to the Jury Plan will remain in effect until expressly abrogated either by General Order or by approval and adoption of a superseding

RESPONSE TO MOTION FOR GRAND JURY MATERIALS
CR 20-337 WHO

3

Jury Plan." *Id.* To the government's knowledge, the Court has not issued any further orders or modifications to the Jury Plan.

On March 16, 2020, the Court ordered that "[a]ll grand jury proceedings in this district are suspended until May 1, 2010." *See* General Order No. 72, IN RE: Coronavirus Disease Public Health Emergency. On April 30, 2020, the Court ordered the suspension to continue until June 1, 2020. *See* General Order No. 72-2, IN RE: Coronavirus Disease Public Health Emergency. On May 21, the Court ordered that "[g]rand jury proceedings in this district will resume in June on a date and in a manner to be determined." *See* General Order No. 72-3, IN RE: Coronavirus Disease Public Health Emergency. None of these orders touches on or references the jury selection plan.

## ARGUMENT

The JSSA authorizes disclosure only of "[t]he contents of records or papers used by the . . . clerk in connection with the jury selection process . . . as may be necessary" to prepare or present a motion to dismiss the indictment or stay proceedings on the ground of substantial failure to comply with the JSSA in selecting the grand jury. 28 U.S.C. § 1867(f). The statute provides a right to "inspect jury lists . . . in order to aid parties in the 'preparation' of motions challenging jury-selection procedures." *Test v. United State*s, 420 U.S. 28, 30 (1975) (per curium). However, "there is no absolute right of access to all materials relating to grand jury selection." *United States v. Davis*, 2009 WL 637164, at *16 (S.D.N.Y. Mar. 11, 2009); *United States v. Gotti*, 2004 WL 32858, at *11 (S.D.N.Y. Jan. 6, 2004). A defendant's "unqualified right to records or papers encompasses only such data as [a defendant] needs to challenge the jury selection process." *United States v. O'Reilly*, 2008 WL 115537, at *3 (E.D. Mich. Jan. 10, 2008). Courts have further noted that "[i]t is not the actual selection of the grand jury which could constitute the violation but whether the jury was selected 'at random from a fair cross section of the community.'" *Gotti*, 2004 WL 32858, at *11 (quoting *United States v. Nichols*, 248 F. Supp. 2d 1027, 1034 (D. Kan. 2003), *judgment vacated on other ground by Nichols v. United States*, 125 S. Ct. 1082 (2005)) (internal quotations omitted; alteration in original); *see also Nichols*, 248 F. Supp. 2d at 1034 (denying request for jury questionnaires of jurors placed in master and qualified jury wheel; "[h]aving access to the method of selection is enough to comply with 28 U.S.C. § 1861 et seq.")

RESPONSE TO MOTION FOR GRAND JURY MATERIALS
CR 20-337 WHO

4

Defendant Sullivan's motion cites the JSSA's requirement that juries be "selected at random from a fair cross section of the community in the district or division wherein the court convenes." Docket No. 17, at 1. The government agrees that, on the specific facts of this case, requests 1 through 15 are relevant to consideration of a motion on those grounds. The government therefore does not object to production of such records.

Defendant's subsequent requests, however, are not relevant to the specific identified right under the JSSA. Indeed, defendant's motion elides the distinction between a Master Jury Wheel, from which the list of qualified jurors is drawn and which is governed directly by JSSA's fair cross section requirement, and the selection of the Grand Jury itself. He argues that there are concerns "as to whether *the grand jury that returned the indictment* was representative of the community in the district and division wherein this Court convenes . . . ." Docket No. 17 at 2 (emphasis added). But the JSSA does not require that the grand jury itself be "representative of the community." On the contrary, it simply requires that it be "selected at random *from* a fair cross section of the community . . . ." 28 U.S.C. § 1861 (emphasis added). As the Seventh Circuit has observed, the legislative history of the JSSA makes plain that

> "[i]f the voter lists are used and supplemented where necessary, and if the procedures outlined in the bill are otherwise rigorously followed, it is no departure from the standards of the legislation that the qualified jury wheel, the venire or array, or the jury itself, may not reflect a community cross section. The act . . . does not require that at any stage beyond the initial source list the selection process shall produce groups that accurately mirror community makeup."

*United States v. Gometz*, 730 F.2d 475, 479 (7th Cir. 1984) (quoting S. Rep. No. 891, 90th Cong., 1st Sess. 17, U.S. Code Cong. & Admin. News 1968, p. 1794 (1967)).

This elision of the distinction between the Master Jury Wheel and the grand jury itself results in requests that go beyond the legal right identified in the motion. Requests 16 through 21 pertain to selection procedures that occur *after* a selection of persons has been summoned from the Master Jury Wheel. For example, Request 16 appears to seek juror qualification forms, which are then used by the Clerk to assess "whether a person is unqualified for, exempt from, or otherwise eligible to be excused from jury service." General Order No. 6, at Section IX. Similarly, Request 19 requests "[t]he disposition of each summoned potential grand juror as to excusal, deferment, disqualification or

RESPONSE TO MOTION FOR GRAND JURY MATERIALS
CR 20-337 WHO

selection as described in General Order No., 6 Section IX-XII." Again, this request relates to a process that occurs *after* the JSSA's guaranteed random selection, and thus does not implicate the specific right identified in the motion.

To be sure, the JSSA does require that the qualification process be performed to certain standards and that the Clerk's decisions be made on "objective" criteria. As the Fifth Circuit has observed, the legislative history "states the Act embodies two important general principles: '(1) random selection of juror names from the voter lists of the district or division in which court is held; and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only.'" *United States v. Bearden*, 659 F.2d 590, 600 (5th Cir. 1981) (quoting H.R. Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S Code Cong. & Admin. News 1792, 1793). But again, defendant's motion does not appear concerned with the objectivity of the qualification process, but rather presumes that the qualification process itself must result in a grand jury that is a precise cross section of the community. This distinction is significant because the underlying concern of defendant's motion appears to be that pandemic-related health screening may have affected the composition of grand juries. But defendant has failed to explain how such screening, so long as it is "on the basis of objective criteria only," could give rise to a claim under the JSSA.

Requests 20 and 21 are improper for a further reason. They relate not to the Clerk's process for selecting potential grand jurors, but rather the selection of the specific individuals comprising the grand jury. As noted above, "[i]t is not the actual selection of the grand jury which could constitute the violation but whether the jury was selected 'at random from a fair cross section of the community.'" *Gotti*, 2004 WL 32858, at *11 (quoting *Nichols*, 248 F. Supp. 2d at 1034). Defendant does not identify any statutory basis to challenge the composition of the specific grand jury.

Finally, the government notes that while defendant cites approvingly to Judge Davila's September 9 order in *United States v. Elizabeth Holmes, et al.*, No. CR 18-258, Judge Davila's order did not grant all the requests in Defendant Sullivan's motion. In particular, Judge Davila limited requests 16 and 17 to the blank forms provided to jurors, not the completed forms. Request 21 was also denied without prejudice after the defendant in that case withdrew the request. If the Court is otherwise

RESPONSE TO MOTION FOR GRAND JURY MATERIALS
CR 20-337 WHO

6

inclined to grant requests 16 through 21, the government believes the same limitations imposed by Judge Davila should be imposed here.

## CONCLUSION

For the reasons stated above, the government does not object to requests 1 through 15. Requests 16 through 21 should be rejected absent some articulation of how they relate to a contemplated motion. The government further requests that a protective order be imposed as to any granted requests similar to the protective order imposed by Judge Davila, and further that it be made clear that the government receive the same materials produced to the defendant.

DATED: September 17, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
ANDREW F. DAWSON
KATHERINE L. WAWRZYNIAK
Assistant United States Attorneys

RESPONSE TO MOTION FOR GRAND JURY MATERIALS
CR 20-337 WHO