UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>Defendant. | Case No. 3:20-cr-00337-WHO-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ACCESS GRAND JURY SELECTION MATERIALS**<br><br>Re: Dkt. No. 17 |

Defendant Joseph Sullivan was recently indicted by a grand jury in this District. He moves to obtain access to 20 categories of records related to the selection of grand jurors in light of potential changes made to that process as a result of the COVID-19 pandemic. I find that this matter can be resolved on the parties' briefs without oral argument and GRANT the motion, subject to the conditions of and limitations in this Order.

## BACKGROUND

In March 2020, this District adopted General Order 72 in response to what it then described as the "COVID-19 outbreak." General Order No. 72, IN RE: Coronavirus Disease Public Health Emergency (Mar. 16, 2020). Among other things, that order suspended "[a]ll grand jury proceedings in this district" until May 1, 2020. *Id.* Effective May 1, 2020, the court extended that suspension until June 1, 2020. General Order No. 72-2, IN RE: Coronavirus Disease Public Health Emergency (Apr. 30, 2020). On May 21, the court ordered that grand jury proceedings resume "in June on a date and in a manner to be determined." General Order No. 72-3, IN RE: Coronavirus Disease Public Health Emergency (May 21, 2020). And on June 9, the court issued provisional modifications to the jury plan that permitted selection of jurors to proceed. *See* General Order No. 77, IN RE: Provisional Modifications to Jury Plan Due to COVID-19 Public

Health Emergency.

A grand jury empaneled in this District indicted Sullivan for one count of obstructing proceedings of the Federal Trade Commission in violation of 18 U.S.C. § 1505 and one count of misprision of a felony in violation of 18 U.S.C. § 4. Dkt. No. 13. Sullivan now moves to inspect 20 categories of records related to the grand jury selection process. Defendant Joseph Sullivan's Motion for Access to Grand Jury Selection Materials ("Mot.") [Dkt. No. 17]. The government agrees that Sullivan should be permitted to inspect all but five of those categories. United States's Response ("Oppo.") [Dkt. No. 20].[1]

**DISCUSSION**

Consonant with this constitutional requirement, the Jury Selection and Service Act of 1968 (the "Jury Act"), 28 U.S.C. § 1861 *et seq*, makes clear that "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. *Cf. Duren v. Missouri*, 439 U.S. 357, 370 (1979) (holding that juries must be "drawn from a fair cross section of the community"). The Jury Act requires that district courts put in place written plans "for random selection of grand and petit jurors that shall be designed to achieve the objectives of" the Act. *Id.* § 1863(a). The plans for selecting jurors "shall be designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division wherein the court convenes." *Id.* § 1863(c)(3). This District's Jury Plan also reflects this fair cross section requirement. *See* General Order No. 6.

The Jury Act permits defendants to challenge the procedures used to select grand jurors for failure to comply with the Act. *See* 28 U.S.C. § 1867(a). Upon a showing of "substantial failure" to comply, the court "shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate." *Id.* Accordingly,

---

[1] Sullivan originally requested 21 categories of records but has since withdrawn Request 21 without prejudice to his ability to renew the request. Reply [Dkt. No. 22] 2 n.1.

2

1    parties "shall be allowed to inspect, reproduce, and copy" records "used by the jury commission or
2    clerk in connection with the jury selection process" to prepare a motion challenging that process.
3    *Id.* § 1867(f). "Without inspection," the Supreme Court has explained, "a party almost invariably
4    would be unable to determine whether he has a potentially meritorious jury challenge." *Test v.*
5    *United States*, 420 U.S. 28, 30 (1975). As a result, "an unqualified right to inspection [prior to
6    drafting a motion] is required not only by the plain text of the statute, but also by the statute's
7    overall purpose of insuring grand and petit juries selected at random from a fair cross section of
8    the community." *Id.* (internal quotations omitted).

9          This District's Jury Plan delegates the selection process to the Clerk of the Court. General
10   Order No. 6 at 2. The identities of prospective jurors are derived using a "multiple-source list"
11   drawn from voter, driver's license, and state ID records. *Id.* The Court has found this process to
12   represent a fair cross section of the District. *Id.* The District is split into three divisions (San
13   Francisco-Oakland, San Jose, and Eureka) and names are randomly selected from the list to be
14   placed on "master jury wheels" for each division that are emptied and refilled at least every other
15   year. *Id.* at 1, 3. The Clerk then draws at random from the wheel in each division to determine
16   who will be required for jury service. *Id.* Those selected are sent mail notices and must fill out a
17   questionnaire; those who do not reply may be issued a summons. *Id.* at 3–4. The Clerk must
18   determine that all those who will sit on juries are qualified to do so and prospective jurors can be
19   excused or deferred for certain good causes. *See id.* at 4–5. At least one grand jury is impaneled
20   at any given time, based in San Francisco. *Id.* at 5. Because it is District-wide, the Clerk draws at
21   random from each division's list in proportion to the number of registered voters in that division.
22   *Id.* Additional grand juries may be convened, including for a particular division. *Id.* at 5–6. "The
23   contents of records or papers used by the Clerk in connection with the Jury Selection Process will
24   not be disclosed, except upon written order of the court." *Id.* at 6.

25         Sullivan's counsel represents he is "preparing a contemplated motion challenging the jury
26   selection procedures for the grand jury that returned the indictment in this case." Mot. Ex. 1
27   ("Angeli Decl.") [Dkt. No. 17-1] at 2. But he "cannot ascertain whether we have substantial
28   grounds to file such a motion without access to the grand jury materials" requested. *Id.* Sullivan

3

makes two arguments for permitting inspection of the records: (1) the effect of the pandemic-related changes on grand jury composition is unknown and (2) "there are serious concerns as to whether the grand jury that returned the indictment was representative of the community in the district and division wherein this Court convenes, particularly in light of the disproportionate medical and economic impact that the COVID-19 crisis has had on certain populations." Mot. 2.

Sullivan requests access to 20 categories of records. *See* Angeli Decl. Ex. A; Reply 2 n.1. The Hon. Edward J. Davila recently addressed a motion to inspect these same categories of records under the Jury Act. *See U.S. v. Holmes, et al.*, No. 18-cv-00258-EJD-1, Dkt. No. 506 (Sep. 9, 2020). Judge Davila largely granted the motion with respect to these 20 categories. *Id.* at 12. I agree with his analysis and as explained below follow his rulings in this Order.

## I. Requests 1–15

The government concedes that Sullivan should be permitted to inspect the records reflected in Requests 1 through 15. Oppo. 5. I agree. As a general matter, those categories reflect the information and records that, if they exist, could shed light on the basic facts of and changes to the selection of potential grand jurors for the master jury wheels and summoned from the wheel. *See* Angeli Decl. Ex. A. Sullivan requests, for instance, the Jury Plan in effect on the date of his indictment, documents that reflect changes from the procedures used before the pandemic, and data and records about the master jury wheels used during the relevant time period. *See id.* Requests 1 through 15 are GRANTED.[2]

## II. Requests 16 and 17

Request 16 is for "The juror qualification and summons forms for the persons summoned to potentially become grand jurors"; Request 17 is for "The SurveyMonkey COVID-19 questionnaires sent to the prospective grand jurors." Angeli Decl. Ex. A at 2. These requests, in

---

[2] Sullivan's Request 9 is for "The record of calculations as described in General Order No. 6 Section XIV." Angeli Decl. Ex. A at 1. Section XIV describes the process by which grand juries are empaneled, and the limits on their service. General Order No. 6 at 5–6. Judge Davila limited Request 9, which is identical in both cases, to the grand juries for the San Jose Division. The government does not make such a request here. Because Sullivan's grand jury sat in the San Francisco Division, it is possible that it was District- or Division-wide. *See* General Order No. 6 at 5. I will, therefore, grant the request in its entirety.

4

other words, are for the notice and questionnaire sent to the potential grand jurors chosen at random from the master jury wheel and used by the Clerk to determine whether a person, on initial screening, is qualified to serve as a juror or should otherwise be exempt. *See* General Order No. 6 at 3–4. The requests are for the blank forms that are sent, not completed forms received back. *See* Reply 4 n.2.

The government argues that, unlike Requests 1 through 15, these requests are for information about the process after selection from the master jury wheel and, therefore, are about the selection process of the grand jury itself. Oppo. 5. There is no constitutional or statutory right, the government points out, to a grand jury that is representative of a fair cross section of the community; the right is to a grand jury drawn *from* a fair cross section. *Id.*

The Jury Act does not contain the limitation on post-wheel records that the government would impose on it. The text of the Act permits inspection of records "used by the jury commission or clerk in connection with the jury selection process" so long as those records may be necessary to the contemplated motion. 28 U.S.C. § 1867(f). There is, accordingly, no textual limitation on records used after selection from the master wheel. And what happens after the master jury wheel is constituted could potentially matter a great deal to knowing whether the grand jury was drawn from a fair cross section of the community.

One of Sullivan's potential claims is that the disproportionate impact of the pandemic on certain demographic groups may have deprived him of a grand jury drawn from a fair cross section of the community. Among other reasons that the Clerk might determine that a person will not serve on a jury is because of "undue hardship or extreme inconvenience." General Order No. 6 at 5. If particular demographic groups face disproportionate hardship from the pandemic, as Sullivan plausibly argues, those groups might then be systematically less likely to serve as jurors. *See* Mot. 2 (citing survey evidence of potential problems in reflecting fair cross sections because of the pandemic). The Clerk's blank form and questionnaire are relevant to this inquiry because they would shed light on what questions could lead to answers that might skew the selection process. At the very least, they may be probative of whether the selection process was sufficiently random and objective.

5

1    The government relies on a case in which the Seventh Circuit quoted the Jury Act's

2 legislative history to explain that,

> If the voter lists are used and supplemented where necessary, and if the procedures outlined in the bill are otherwise rigorously followed, it is no departure from the standards of the legislation that the qualified jury wheel, the venire or array, or the jury itself, may not reflect a community cross section. The act . . . does not require that at any stage beyond the initial source list the selection process shall produce groups that accurately mirror community makeup. Thus, no challenge lies on that basis.

*United States v. Gometz*, 730 F.2d 475, 479 (7th Cir. 1984) (alteration in original, internal quotations omitted). Of course, Sullivan does not have to prove a violation of the Jury Act today; the requested records need only be necessary to develop objections to the selection process. But even assuming this interpretation of the Jury Act is correct applies at this stage, it does not defeat Sullivan's request. His concern *is* that the "procedures outlined in the bill" were not "rigorously followed." The Jury Act requires that the entire selection process be "random" and "designed to achieve the objectives of sections 1861 and 1862 of this title." 28 U.S.C. § 1863(a). The "objective" of Section 1861, as noted, is to ensure the "right to grand and petit juries selected at random from a fair cross section of the community." *Id.* § 1861. Sullivan's argument may be—though at this stage he cannot reasonably know—that the post-wheel selection process was so distorted as to violate the statute.

I do not comment on whether Sullivan's challenge could ultimately be viable. But Requests 16 and 17 are GRANTED.

### III.     Requests 18 and 19

Request 18 is for "The Juror Numbers for the persons selected as potential grand jurors from February 1, 2020 to September 3, 2020"; Request 19 is for "The disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection as described in General Order No. 6 Sections IX-XII." Angeli Decl. Ex. A at 2.

The government has the same objection to these requests as to Requests 16 and 17; for the reasons explained, I reject that argument. Indeed, these requests are, if anything, potentially more relevant to Sullivan's contemplated motion than the previous two because they directly demonstrate how excusal, deferment, disqualification, and selection occurred. Requests 18 and 19

United States District Court
Northern District of California

are GRANTED.

## IV. Request 20

Request 20 is for "The Juror Number for each grand juror who returned the indictment in this case on September 3, 2020." Angeli Decl. Ex. A at 2. In addition to maintaining its objection discussed above, the government argues that this request is improper because it relates to "the specific individuals comprising the grand jury." Oppo. 6.

This request is the farthest afield from Sullivan's potential motion because it concerns only the actual grand jurors that returned the indictment. As noted, there is no requirement under the Jury Act that the actual, constituted grand jury reflect a fair cross section of the community. Sullivan argues that Requests 18 through 20 "seek the juror numbers and the dispositions of each summoned potential grand juror as to excusal, deferment, disqualification, or selection." Reply 4. That is true with respect to Requests 18 and 19, but not 20. Request 20 is not about "summoned potential grand juror[s]," it is about those who ultimately sat on the grand jury.

Sullivan contends that "the grounds for excusal and the disposition of juror qualifications are directly relevant to whether the grand jury was selected at random." *Id.* As explained, I agree. That argument may be most relevant to Requests 18 and 19, but it bears on this request too. As the Sixth Circuit once put it, "[w]e can certainly envision a situation in which a defendant must be afforded access to [information about] those jurors who returned the indictment in order to vindicate the 'unqualified' right to inspection and to insure that the jury actually represented a wide spectrum of the community." *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984). Sullivan may not have a right to a grand jury that perfectly reflects the community but, to adequately protect the rights he does have, he may need to know how the grand jury that was ultimately selected differed in makeup from the pool from which it was chosen. *Accord Holmes*, No. 18-cv-00258-EJD-1, Dkt. No. 506 at 11–12 ("[The requests together may] reveal how the COVID-19 crisis affected the selection of the ultimate grand jurors. That is, Defendants will be able to analyze how excusal for COVID-19 related reasons altered the pool of otherwise qualified potential jurors from which the grand jury was drawn."); *United States v. Cloud*, No. 1:19-CR-02032, 2020 WL 4381608 (E.D. Wash. July 27, 2020) (granting access to the juror numbers of

those who returned the indictment).  Request 20 is GRANTED.

## V.      Protective Order

If any of the records disclosed under this Order contain personal identifying information about individual grand jurors, the Clerk of the Court shall redact that information.  If any records produced contain unredacted personal identifying information about individual grand jurors, the parties are ORDERED to promptly file a proposed protective order to prevent disclosure or misuse of that information.

For consistency, and because both parties support it, I will also issue the same protective order entered by Judge Davila.  I ORDER:

1. The materials may be used only in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.  The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.
2. The materials either must be returned to the Court at the commencement of jury selection or counsel must certify that the materials have been destroyed and that no materials have been retained in any duplicative form.
3. The Clerk of the Court shall file a SEALED copy of the records on the docket for purposes of maintaining a record of the production.
4. Consistent with 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties.  Similarly, the materials may only be disclosed to individuals who have a need to view the materials for purposes of the defined scope of the production, as set forth above.
5. Sullivan shall not possess the materials at any time, except when reviewing the materials with counsel.
6. Any attorney who accesses the materials is personally responsible not only for his or her compliance with this Protective Order, but also his or her client's compliance with the requirements of this Protective Order and compliance by any staff member or other person

1  who is shown the materials consistent with the parameters of this Order.

2  7. Counsel and Sullivan are reminded that, under the Jury Act, "[a]ny person who discloses
3  the contents of any record or paper in violation of this subsection may be fined not more
4  than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f).

## CONCLUSION

Subject to the conditions in this Order, Sullivan's motion is GRANTED. Sullivan's counsel and the government shall each be permitted to access the subject court records.

**IT IS SO ORDERED.**

Dated: October 7, 2020



William H. Orrick
United States District Judge