# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED

Dec 22 2021

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

JOSEPH SULLIVAN,

DEFENDANT(S).

## SUPERSEDING INDICTMENT

18 U.S.C. § 1505 – Obstructing Proceedings of the Federal Trade Commission (Count One);
18 U.S.C. § 4 – Misprision of a Felony (Count Two);
18 U.S.C. § 1343 – Wire Fraud (Counts Three to Five)

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 22nd day of December 2021.

Joseph C. Spero, Chief Magistrate Judge

Clerk

Bail, $ No Process

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

**FILED**

Dec 22 2021

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH SULLIVAN,<br><br>    Defendant. | CASE NO. 3:20-cr-00337 WHO<br><br><u>VIOLATIONS</u>:<br>18 U.S.C. § 1505 – Obstructing Proceedings of the Federal Trade Commission;<br>18 U.S.C. § 4 – Misprision of a Felony;<br>18 U.S.C. § 1343 – Wire Fraud<br><br>SAN FRANCISCO VENUE |

S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

1.    The United States Federal Trade Commission ("FTC") was an independent agency of the United States. The FTC's Division of Privacy and Identity Protection oversaw and investigated, among other things, issues related to consumer privacy, identity theft, and information security.

2.    In or about February 2015, Uber Technologies, Inc. ("Uber") informed the FTC that it had learned of a data breach it had suffered in September 2014 (hereinafter the "2014 Data Breach"). In or about March 2015, the FTC informed Uber that the FTC was evaluating Uber's data security program and practices. On or about May 21, 2015, the FTC issued a Civil Investigative Demand to Uber, which contained a series of interrogatories and document requests. Over the subsequent months, and

SUPERSEDING INDICTMENT

continuing into 2017, Uber provided responses to the FTC's formal and informal requests for information related to the FTC's investigation.

3. In or about June 2016, the FTC issued another Civil Investigative Demand to Uber, which included a requirement that Uber designate one or more officers, directors, or managing agents to testify on behalf of the company on a variety of topics. Uber designated SULLIVAN as its witness, and SULLIVAN provided sworn testimony on or about November 4, 2016.

4. On or about November 14 and 15, 2016, approximately ten days after his testimony, SULLIVAN learned that hackers had gained unauthorized access to Uber data containing personally identifiable information related to Uber's users and drivers, including approximately 600,000 driver's license numbers associated with certain Uber drivers (hereinafter the "2016 Data Breach"). In other words, Uber had suffered another data breach. The breach was committed by a group including HACKER A and HACKER B.

5. Thereafter, SULLIVAN engaged in a scheme designed to ensure that the data breach did not become public knowledge, was concealed, and was not disclosed to the FTC and to impacted users and drivers. SULLIVAN arranged for the hackers to be paid a substantial sum of money in exchange for, among other things, their written agreement not to disclose the data breach. Moreover, the written agreement misrepresented the circumstances of the data breach. SULLIVAN also withheld information regarding the breach from others at Uber who were in a position to disclose the breach to the FTC and would have been aware of the relevance of the 2016 Data Breach to the FTC's investigation. Months later, when Uber hired a new CEO, SULLIVAN misrepresented the circumstances of the data breach to the CEO. At the time of that misrepresentation, the FTC investigation was not yet fully resolved, and the FTC remained unaware of the 2016 Data Breach.

## THE SCHEME AND ARTIFICE TO DEFRAUD

6. Beginning on or about November 14, 2016, and continuing through in or about November 2017, SULLIVAN knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by making materially false and misleading statements, and failing to disclose material facts with a duty to

disclose.

7. According to the contracts governing Uber's relationship with its California drivers at the relevant time, Uber was a provider of a ride-sharing platform. Individuals who offered rides within that platform (hereinafter "drivers") were not characterized by Uber as "employees" under these contracts, and they were not promised a traditional wage. Instead, the drivers agreed to pay a "Service Fee" to Uber in exchange for the right to use that platform. Uber's role was to act as the drivers' agent in collecting fares from the users of Uber's platform (hereinafter "riders") via Uber's payment processing platform. The Service Fee paid by drivers to Uber was in exchange for the use of the driver application and certain other services.

8. SULLIVAN was aware that California state law at the time contained certain provisions obligating businesses in California to notify affected California residents of data breaches under certain circumstances. In fact, SULLIVAN had been aware of, and had participated in, Uber's efforts to notify certain individuals of the 2014 Data Breach. This California state law provides that a business operating in California that "owns or licenses computerized data that includes personal information" shall disclose a breach to a resident of California "whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civil Code § 1798.82(a). "Personal information" is defined to include a driver's license number in combination with an individual's first name or first initial and last name. *Id.* § 1798.82(h)(1).

9. In the wake of the 2016 Data Breach, SULLIVAN took measures to ensure that drivers did not receive the notification required by state law. This omission deprived those drivers of material information relevant to a driver's decision to continue driving for Uber and paying the associated Service Fee to Uber.

10. SULLIVAN also made, caused to made, and ratified material misrepresentations of fact to ensure that Uber's drivers and others did not learn the true nature of the breach. First, SULLIVAN caused to be drafted and executed a Non-Disclosure Agreement between Uber and the hackers responsible for the 2016 Data Breach. This Non-Disclosure Agreement falsely stated that the hackers had neither taken nor stored Uber's data in the course of the 2016 Data Breach. All signatories to the Non-Disclosure Agreement, in addition to SULLIVAN, knew this statement was false. The

SUPERSEDING INDICTMENT            3

misstatement falsely suggested that the 2016 Data Breach was not, in fact, a data breach, and that notification under California law thus would not be required.  This fraudulent Non-Disclosure Agreement created a misleading documentary record that would justify the failure to disclose the breach to Uber's drivers.  Second, SULLIVAN subsequently misrepresented the nature of the data breach to Uber's new CEO.  In response to an inquiry, SULLIVAN sent an email on September 20, 2017 to Uber's CEO falsely stating that the hackers' bounty had only been paid after the hackers had been identified.  SULLIVAN also misrepresented the scope of the breach, suggesting both that the hackers had merely accessed folders containing Uber's data, as opposed to taking and storing that data, and suggesting that the event was not, in fact, a data breach.  Third, in response to a related inquiry, SULLIVAN falsely suggested in an email on September 25, 2017, that the 2016 Data Breach was not, in fact, a data breach, and falsely claimed that the incident was no different factually from many other security incidents.  In reality, the 2016 Data Breach was the most severe data security incident in SULLIVAN's tenure and implicated approximately 57 million user and driver records.

COUNT ONE: (18 U.S.C. § 1505 – Obstruction of Proceedings before the Federal Trade Commission)

11. Paragraphs 1 through 10 are realleged as if set forth fully here.

12. Beginning on or about November 14, 2016, and continuing through in or about November 2017, in the Northern District of California and elsewhere, the defendant,

JOSEPH SULLIVAN,

did corruptly influence, obstruct, and impede, and endeavored to influence, obstruct, and impede, and any applicable combination, the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States, namely, the FTC and its investigation into Uber's data security program and practices, all in violation of Title 18, United States Code, Section 1505.

COUNT TWO: (18 U.S.C. § 4 – Misprision of a Felony)

13. Paragraphs 1 through 12 are realleged as if set forth fully here.

14. Beginning on or about November 14, 2016, and continuing through in or about November 2017, in the Northern District of California and elsewhere, the defendant,

SUPERSEDING INDICTMENT          4

JOSEPH SULLIVAN, having knowledge of the actual commission of a felony cognizable by a court of the United States, to wit, intentionally accessing a computer without authorization or exceeding authorized access, and thereby obtaining information from a protected computer, in violation of 18 U.S.C. § 1030(a)(2)(C), and conspiracy to commit extortion involving computers in violation of 18 U.S.C. §§ 1030(a)(7)(B), (b), and (c)(3)(A), did conceal the same, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, all in violation of Title 18, United States Code, Section 4.

COUNTS THREE THROUGH FIVE:         (18 U.S.C. § 1343 – Wire Fraud)

15. Paragraphs 1 through 14 are all realleged as if set forth fully here.

16. On or about the dates set forth below, within the Northern District of California, and elsewhere, the defendant,

JOSEPH SULLIVAN

for the purpose of executing the material scheme and artifice to defraud investors, and for obtaining money and property from investors by means of materially false and fraudulent pretenses, representations, promises, and material omissions with a duty to disclose, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and pictures, that is, electronic mail messages between an Uber employee and the two hackers responsible for the 2016 Data Breach, as further set forth below:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 3 | January 2, 2017 | Interstate email from UBER EMPLOYEE to HACKER A regarding Non-Disclosure agreement |
| 4 | January 2, 2017 | International email from HACKER B to UBER EMPLOYEE regarding Non-Disclosure Agreement |
| 5 | January 3, 2017 | International email from HACKER B to UBER EMPLOYEE regarding execution of Non-Disclosure Agreement in his true name. |

SUPERSEDING INDICTMENT            5

1 | Each in violation of Title 18, United States Code, Section 1343.

DATED: December 22, 2021                                A TRUE BILL.

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Foreperson
　　　　　　　　　　　　　　　　　　　　　　　　FOREPERSON

STEPHANIE M. HINDS
Acting United States Attorney

/s/ Andrew Dawson
ANDREW F. DAWSON
Assistant United States Attorneys

SUPERSEDING INDICTMENT                   6