DAVID H. ANGELI (admitted *pro hac vice*)
EDWARD A. PIPER (Cal. Bar No. 288289)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; ed@angelilaw.com; tyler@angelilaw.com;
       michelle@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>   Defendant. | Case No. 3:20-cr-00337-WHO<br><br>DEFENDANT JOSEPH SULLIVAN'S SURREPLY IN OPPOSITION TO UBER'S MOTION TO QUASH RULE 17(C) SUBPOENA<br><br><br>Date: February 10, 2022<br>Time: 1:30 p.m.<br>Crtrm: 2, 17th floor<br><br>Hon. William H. Orrick |

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO                                              1

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

Defendant Joseph Sullivan respectfully submits this surreply in support of his opposition to Uber's motion to quash his Rule 17(c) subpoena duces tecum (ECF No. 68) ("MTQ"). We address here the novel crime-fraud argument that Uber raised for the first time in its reply (ECF No. 84) ("Reply"), through which Uber seeks both to disclose the privileged communications of its designated scapegoats—Sullivan and ▇▇▇▇—and to avoid the subject-matter waiver that follows an intentional disclosure of privileged communications. Although we disagree with much of what Uber says on other issues, we will address those points at the hearing on Uber's motion.

**INTRODUCTION**

Uber maintains that its disclosure of privileged communications to the government did not waive the attorney-client privilege or the attorney work-product doctrine because those communications were subject to the crime-fraud exception and thus not privileged at all. Because the communications were not privileged, Uber's argument runs, their disclosure does not waive the privilege for other, undisclosed communications. This is a novel argument; we have found no case where a company invoked the crime-fraud exception against itself as a means of avoiding a waiver.

To assess Uber's crime-fraud argument, some background is necessary. Companies seeking to cooperate with federal prosecutors—by "cooperate" we mean denounce their employees and assist the government in prosecuting them—have long faced a dilemma concerning attorney-client privileged material. On one hand, cooperating companies often want to disclose privileged material to prosecutors to win favor with the government. Such materials may include both contemporaneus communications with company counsel and the results of outside counsel's after-the-fact internal investigation. On the other hand, voluntary disclosure of privileged communications constitutes a waiver not only of the disclosed communications, but of other privileged communications on the same subject, at least to the extent the disclosed and undisclosed communications "ought in fairness to be considered together." Fed. R. Evid. 502(a). Such a broad waiver may have devastating consequences in related civil litigation.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
2

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

For many years, this conundrum placed cooperating companies in a difficult position. Prosecutors often pressed companies to waive the privilege. Companies pushed back, gingerly, to avoid a potentially damaging subject-matter waiver. In 2003, the Department of Justice broke the impasse through brute force; in the infamous Thompson Memorandum, it declared that in deciding whether to charge a company, DOJ would consider the company's willingness to disclose the results of any internal investigation and to waive attorney-client and work-product protection.[1]

Companies, their counsel, and the organized bar (including the ABA) objected vociferously to the Thompson Memorandum. In the face of these objections, DOJ began to retreat. In 2005 and 2006, DOJ tinkered with the Thompson Memorandum's approach to corporate privilege waivers, but the revisions did little to quell criticism of DOJ's policy. In 2008, DOJ finally surrendered; it issued the Filip Memorandum, which prohibited prosecutors from requesting that cooperating corporations provide attorney-client communications or opinion work-product. With minor revisions, the policy toward waivers stated in the Filip Memorandum remains in effect. *See* Justice Manual § 9-28.710 (2008), https://www.justice.gov/jm/jm-9-28000-principles-federal-prosecution-business-organizations#9-28.700. Current DOJ policy permits prosecutors to request disclosure of otherwise privileged material only when the corporation or an employee asserts an advice-of-counsel defense or the communication falls within the crime-fraud exception. *Id*. § 9-28-720 (2017).

The Filip Memorandum returned companies to the dilemma they had faced before the Thompson Memorandum: should a cooperating company disclose privileged material to the government voluntarily to win favor with prosecutors but run the risk of a subject-matter waiver, or should it refuse to waive and run the risk that prosecutors will view it as uncooperative?

Uber has hit on a novel tactic to get off the horns of this dilemma. It has selected the

---

[1] *See generally* Katrice Bridges Copeland, *The Yates Memo: Looking for "Individual Accountability" in All the Wrong Places*, 102 Iowa L. Rev. 1897, 1902–06 (2017) (describing evolution of DOJ policy on corporate privilege waivers).

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO

3

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1  privileged communications it wants to disclose, determined unilaterally that they are subject to
2  the crime-fraud exception, and produced them to the government—while redacting everything
3  else that it contends is privileged. It thus seeks to demonstrate to the government its eagerness to
4  cooperate against its former employees while denying Sullivan crucial information he needs to
5  defend against the charges that Uber fomented and (it hopes) avoiding a subject-matter waiver.

6  This tactic suits Uber's scapegoating strategy perfectly. The company has declared that
7  virtually all of the relevant Sullivan and ▇▇▇ communications after 1 a.m. on November 15,
8  2016 are subject to the crime-fraud exception, while withholding the relevant privileged
9  communications of all other persons (with several notable exceptions, discussed in Part IV
10 below). By only disclosing the privileged communications of the scapegoats, while withholding
11 the privileged communications of everyone it wants to protect, Uber has focused the
12 government's attention on Sullivan and ▇▇▇, while making it difficult to prosecute anyone else
13 and—not incidentally—hampering Sullivan's defense.

14 Uber's tactic has a potential flaw: the crime-fraud exception to the attorney-client
15 privilege requires disclosure of communications by the attorney whose services the client used to
16 perpetrate a crime or fraud, even if the attorney is unaware of the client's wrongdoing. *See, e.g.*,
17 *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997); *In re Grand Jury Proceedings*
18 *(Corporation)*, 87 F.3d 377, 381–82 (9th Cir. 1996). Uber does not want to open a can of worms
19 by exposing the communications of its allegedly unwitting in-house attorneys. So it has turned to
20 the attorney work-product doctrine, which permits innocent attorneys to assert work-product
21 protection over their opinion work-product (but not fact work-product) even when a client has
22 used their services in furtherance of a crime or fraud. (Reply at 6–7.)

23 Implicit in Uber's work-product argument are four premises: that the Uber attorneys
24 undertook the communications at issue in anticipation of litigation; that the attorneys whose
25 communications are redacted were not aware of the material facts concerning the 2016 Incident;
26 that the alleged work-product that has been redacted constitutes opinion work-product, rather
27 than fact work-product; and that the attorneys involved (as opposed to Uber itself) object to

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
4

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

disclosure of their work-product. As we discuss in more detail below, Uber has failed to establish any of these premises.

Uber implies that the government forced it into the crime-fraud strategy. It asserts that "[t]he USAO explicitly and repeatedly stated its expectation to Uber that the Company would consider and apply the crime-fraud exception when making its privilege determinations." (Reply at 6.) We are skeptical. The government appears to have acquiesced almost entirely in Uber's crime-fraud determinations, pushing only for disclosure of more Sullivan and ▇ communications and inquiring about communications involving the former CEO. Most strikingly, the government does not appear to have challenged Uber's conclusion that (former AUSA) ▇ communications are not subject to the crime-fraud exception, despite ample evidence that ▇ who was deeply involved in Uber's response to FTC information requests—knew almost from the outset all material aspects of the 2016 Incident. And, as far as we know, the government never went to court (or even threatened to do so) to challenge Uber's unilateral privilege determinations. In other words, the government appears to have swallowed whole, and never seriously questioned, Uber's claim that Sullivan and ▇ were wrongdoers who hoodwinked everyone else in the company, with the possible exception of the former CEO.

Even if Uber were correct, however, and the government had insisted that Uber apply the crime-fraud exception, that would have no effect on the Court's analysis. Intentional disclosure of privileged material, even in response to government pressure, still constitutes a subject-matter waiver.  Uber, and the government, always had the option of having the Court determine the extent (if any) to which the crime-fraud exception vitiated the privilege. Instead of seeking a judicial determination, Uber voluntarily produced privileged documents, relying on its own, unilateral crime-fraud determination to avoid waiver. It must now live with that decision.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
5

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# SUMMARY OF THE ARGUMENT

Uber's crime-fraud waiver avoidance strategy fails for several reasons.

First, Uber has not demonstrated that the Sullivan and ▬ communications it has disclosed to the government—virtually all relevant communications after 1 a.m. on November 15, 2016—fall within the crime-fraud exception. Because those communications are indisputably privileged if the crime-fraud exception does not apply, their voluntary disclosure to the government constitutes a subject-matter waiver of the attorney-client privilege and (at least) of work-product protection for fact work-product.

Second, if Uber's crime-fraud determination is valid as to Sullivan and ▬ (which we dispute), it must be extended to others as well—at least to ▬ and likely to others in the Legal and Security departments. Because those additional crime-fraud communications are not privileged, Uber has no basis to withhold them from Sullivan.

Third, Uber's effort to protect the communications of allegedly innocent attorneys under the rubric of opinion work-product fails because Uber has not established any of the four premises on which its claim rests.

Finally, Uber was not consistent in applying its own faulty methodology: it disclosed to the government certain privileged communications concerning the 2016 Incident by persons other than Sullivan and ▬ Those deliberate disclosures of privileged communications that, even by Uber's standards, do not fall within the crime-fraud exception constitute a subject-matter waiver of the attorney-client privilege and the attorney work-product doctrine.

For these reasons, and for the reasons in Sullivan's opposition and to be offered at oral argument, the Court should conduct *in camera* review of the documents at issue and, following that review, deny Uber's motion to quash and enforce Sullivan's subpoena duces tecum.[2]

---

[2] Uber contends that as the party seeking to enforce a Rule 17(c) subpoena, Sullivan has the burden of establishing that the attorney-client privilege and the work-product doctrine do not apply. (Reply at 3.) That is incorrect. Uber bears the burden of establishing each element of the attorney-client privilege and the work-product doctrine in the Rule 17(c) context, as in all other contexts. *See, e.g.*, *United States v. Heine*, 2016 WL 1270907 *10 (D. Or. 2016) (finding that in the Rule 17(c) context, the party asserting privilege has the burden to establish that the privilege applies and has not been waived); *United States v. Stein*, 488 F. Supp. 2d 350, 367–68 (S.D.N.Y.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO

6

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# ARGUMENT

**I.  Uber has not established that the Sullivan and ▮ communications fall within the crime-fraud exception.**

Uber has not established that the Sullivan and ▮ communications it disclosed to the government fall within the crime-fraud exception to the attorney-client privilege. Because Uber has not established that the exception applies, the communications must be treated as privileged. Uber's voluntary disclosure of those privileged communications constitutes a subject-matter waiver. *See, e.g.*, *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126–28 (9th Cir. 2012) (rejecting "selective waiver" approach when privilege holder voluntarily discloses privileged materials to the government); *United States v. Reyes*, 239 F.R.D. 591, 602–03 (N.D. Cal. 2006) (company's disclosure of privileged materials to the government waives the privilege as to the defendant); *United States v. Bergonzi*, 216 F.R.D. 487, 498 (N.D. Cal. 2003) (company's disclosure of work product to government waived protection as to defendant), *appeal dism'd as moot*, 403 F.3d 1048 (9th Cir. 2005); Fed. R. Evid. 502(a) (intentional disclosure waives privilege as to subject-matter when disclosed and undisclosed communications "ought in fairness to be considered together").

That Uber might have hoped that its crime-fraud maneuver would prevent a waiver is beside the point. "[T]he focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996); *see also Bittaker v. Woodford*, 331 F.3d 715, 720 n.4 (9th Cir. 2003) (express waiver "need not be effectuated by words or accompanied by the litigant's subjective intent") (citations omitted).

---

2007) (party seeking to quash Rule 17(c) subpoena has burden of establishing each element of attorney-client privilege; finding that subpoena recipient, KPMG, "failed to carry its burden of demonstrating that the materials in question are protected"); *United States v. Cedeno*, 496 F. Supp. 2d 562, 567 (E.D. Pa. 2007) (government issued Rule 17(c) trial subpoena to defense attorney; court notes that "[t]he burden of proving that the attorney-client privilege applies to specific information falls to the party asserting the privilege"); *cf. United States v. Wey*, 252 F. Supp. 3d 237, 252 (S.D.N.Y. 2017) (subpoena recipient asserting deliberative process, law enforcement, and investigative privileges bears burden of establishing that they apply).

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
7

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

In light of these principles, the Court must determine whether the Sullivan and ▮▮▮ communications Uber voluntarily disclosed to the government fall within the crime-fraud exception. If they do not, Uber has waived the privilege.³

Clear rules guide the Court's analysis. The crime-fraud exception vitiates the attorney-client privilege when a client's communication with an attorney is "made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (quotation omitted).⁴ The exception applies only where the party challenging the privilege (here, Uber) makes a two-part showing:

> First, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. Second, it must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made *in furtherance of* the intended, or present, continuing illegality.

*United States v. Doe*, 810 F.3d 1110, 1113 (9th Cir. 2016) (quotations and brackets omitted; emphasis in original); *see, e.g.*, *Bauer*, 132 F.3d at 509 (party invoking crime-fraud exception must "'mak[e] a prima facie showing that the communications were in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality'") (quoting *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996)).

The party seeking to invoke the crime-fraud exception (Uber) has the burden of making a prima facie case. *See, e.g.*, *In re Grand Jury Proceedings (Corporation)*, 87 F.3d at 380. Outside the grand jury context, a prima facie case requires proof by a preponderance of the evidence. *See, e.g.*, *In re Napster Copyright Litigation*, 479 F.3d 1078, 1093–96 (9th Cir. 2007) (distinguishing civil cases from grand jury cases; lower standard applies in grand jury cases because of the need for speed and secrecy). Even in a grand jury case, the party seeking to invoke the exception must

---

³ As we discuss in Part IV, Uber has made other voluntary disclosures of privileged material, outside the parameters of the crime-fraud exception as Uber has defined them. Those voluntary disclosures likewise waive the privilege and work-product protection.

⁴ This discussion concerns application of the crime-fraud exception to the attorney-client privilege. We discuss the work-product doctrine in Part III below.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
8

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

show "reasonable cause to believe" that its elements are satisfied, meaning "more than suspicion but less than a preponderance of the evidence." *Chen*, 99 F.3d at 1503. Uber must satisfy its burden with evidence, rather than argument and allegations. "Allegations in pleadings are not evidence and are not sufficient to make a *prima facie* showing that the crime-fraud exception applies." *In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005); *see, e.g.*, *In re International Systems and Controls Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir. 1982) ("While the pleadings in this case are unusually detailed, they are not evidence to make a prima facie case."). Nor does the indictment satisfy Uber's burden. *See United States v. Dyer*, 722 F.2d 174, 178 (5th Cir. 1983) ("The indictment proves nothing. . . . It follows that for the government to defeat the privilege it may not rest on an indictment but must offer proof.").

Under these principles, Uber has fallen far short of proving by a preponderance of the evidence, or even under the "reasonable cause to believe" standard, that Sullivan "was engaged in or planning a criminal or fraudulent scheme when [he] sought the advice of [▮ and other Uber counsel] to further the scheme" and that virtually all of the communications by Sullivan and ▮ after 1 a.m. on November 15, 2016 relating to the 2016 Incident were "sufficiently related to and were made *in furtherance of* the intended, or present, continuing illegality." *Doe*, 810 F.3d at 1113 (quotations omitted; emphasis in original).

Uber bases its invocation of the crime-fraud exception on two alleged facts: (1) that "[a]s of 1:00 a.m. PT on November 15, 2016, members of the team working to respond to the data breach had determined and informed ▮ that hackers had accessed personally identifiable information, specifically driver license numbers, which would require Uber to make a public disclosure under state law," and (2) that Sullivan and ▮ made "apparent efforts to avoid disclosure by arranging for the hackers to be paid in exchange for not disclosing the breach and entering into an allegedly false and misleading non-disclosure agreement with the hackers." (Reply at 6.) But Uber offers no *evidence* of either of these alleged facts. And it ignores the many inferences other than criminality that could be drawn from them if proven—that ▮ was mistaken or in doubt, rather than engaging in criminality, in concluding that disclosure was not

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
9

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1   required (indeed, in 2017 Uber's new management took months to determine that disclosure was
2   required, and then only after significant prodding from SoftBank); that Sullivan relied in good
3   faith on ▓▓▓ advice that disclosure was not required; that the payment to the hackers was a
4   "bug bounty" and consistent with similar payments by dozens of other companies to hackers who
5   exposed vulnerabilities in their information systems; and on and on.

6       Moreover, Uber makes no effort to show, communication by communication, that each
7   privileged communication it disclosed to the government was "sufficiently related to" and was
8   "made *in furtherance of* the intended, or present, continuing illegality." *Doe*, 810 F.3d at 1113
9   (quotation and brackets omitted; emphasis in original). The Ninth Circuit made clear in *Doe* that
10  such an individualized determination must be undertaken before the crime-fraud exception can
11  be invoked. The court of appeals declared that "a district court must examine the individual
12  documents themselves to determine that the specific attorney-client communications for which
13  production is sought are 'sufficiently related to' and were made 'in furtherance of the intended,
14  or present, continuing illegality." *Id*. at 1114. Implicit in that holding is the requirement that the
15  party seeking to invoke the exception provide evidence from which the district court can make
16  the "related to" and "in furtherance of" determination for each communication at issue. Uber has
17  failed to provide any such evidence.

18      Because Uber has failed to carry its burden, the crime-fraud exception does not apply to
19  the Sullivan and ▓▓▓ communications that Uber disclosed to the government, and those
20  communications remained subject to the attorney-client privilege at the time of disclosure.
21  Voluntary disclosure of the privileged communications waived the privilege for all privileged
22  communications concerning the same subject matter—that is, the 2016 Incident. *See, e.g.*, *In re*
23  *Pacific Pictures Corp.*, 679 F.3d at 1126–28.

24  **II.  If the Court finds the crime-fraud exception applies to the Sullivan and ▓▓▓ communications, it should apply the exception to other communications as well.**
25  
26      For the reasons just stated, the Court should find that the crime-fraud exception does not
27  apply to the Sullivan and ▓▓▓ communications disclosed to the government. If the Court

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO

10

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

disagrees, however, and finds the exception applicable, it should extend the exception to other privileged communications as well, particularly those of ▇.[5] Uber has offered no reason—much less evidence—why the Sullivan and ▇ communications should be subject to the exception while ▇ communications should not be. As Sullivan demonstrated in his opposition, ▇ knew all material facts about the 2016 Incident shortly after it occurred, and she played a key role in determining what information to provide to the FTC in response to its inquiries. (Def.'s Opp. to Uber's Motion to Quash (ECF No. 75) ("Opp") at 3, 11, 13, 18.) Uber offers no explanation for its decision to shield ▇ under its attorney-client and work-product protections while insisting that Sullivan and ▇ consulted counsel in furtherance of a crime or fraud. If the Court concludes (over our objection) that Uber properly determined that the Sullivan and ▇ communications after 1 a.m. on November 15, 2016 are subject to the crime-fraud exception, it should order disclosure of ▇ communications relating to the 2016 Incident, and it should determine whether the exception applies as well to the relevant privileged communications of other Legal and Security department members who were involved in addressing the 2016 Incident.

**III. The Court should reject Uber's reliance on the work-product doctrine to shield communications of allegedly "innocent" lawyers.**

As noted earlier, Uber's crime-fraud theory has a significant hole: the crime-fraud exception to the attorney-client privilege vitiates the privilege both as to the client and as to the attorney, even if the attorney has no knowledge of the client's criminal intent. *See, e.g.*, *Bauer*, 132 F.3d at 509; *In re Grand Jury Proceedings (Corporation)*, 87 F.3d at 381–82. This means that if Uber were relying solely on the attorney-client privilege, its crime-fraud theory would require that it disclose not only the Sullivan and ▇ communications about the 2016 Incident, but also relevant communications of the allegedly unwitting attorneys whose services Sullivan and ▇ supposedly used to further their unlawful scheme.

---

[5] To be clear, we do not mean to suggest that Sullivan, ▇ ▇ or anyone else at Uber engaged in criminality with respect to the 2016 Incident. In our view, everyone at Uber involved in addressing the incident acted in good faith.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO                                                 11

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    Uber, of course, wanted to keep the government's focus solely on Sullivan and ▮▮▮ it

2 did not want to disclose communications by other lawyers in the Legal department, including

3 ▮▮▮ ▮▮▮▮, and ▮▮▮▮▮▮▮, and its outside counsel, including, for example, ▮▮▮▮

4 ▮▮▮ ▮▮▮▮▮▮. It thus turned to the work-product doctrine, which protects the attorney

5 as well as the client. (Reply at 6–7.) The crime-fraud exception applies to *fact* work-product just

6 as it does to the attorney-client privilege; once the party challenging application of the doctrine

7 establishes that the client intended to use the work-product to further a crime or fraud, even an

8 unwitting attorney cannot prevent disclosure of his or her fact work-product. As to *opinion* work-

9 product, however, an innocent attorney can resist disclosure even if the client intended to use the

10 work-product to further a crime or fraud. *See, e.g.*, *Grand Jury Subpoena v. United States*, 870

11 F.3d 312, 316–17 (4th Cir. 2017); *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980–82

12 (8th Cir. 2007); *see also In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir. 1989)

13 (district court did not abuse discretion in distinguishing between fact and opinion work product

14 for purposes of the crime-fraud exception).

15    Uber's invocation of the work-product doctrine to resist the crime-fraud exception thus

16 rests on four premises: (1) that the communications at issue constitute work-product—that is,

17 that the Uber attorneys undertook those communications in anticipation of litigation; (2) that the

18 attorneys whose communications are redacted were not aware of the material facts concerning

19 the 2016 Incident; (3) that the alleged work-product that has been redacted constitutes opinion

20 work-product, rather than fact work-product; and (4) that the attorneys involved (as opposed to

21 Uber itself) object to disclosure of their opinion work-product.

22    Uber has provided no evidence to support any of these premises.[6] It has not provided

---

[6] As noted in Part I, we maintain that the crime-fraud exception does not apply to the asserted work-product, because Uber has not established that Sullivan and ▮▮▮ sought to use the work-product to further a crime or fraud. *See, e.g.*, *In re Grand Jury Matter*, 847 F.3d 157, 166 (3d Cir. 2017) (rejecting crime-fraud exception in work-product context on this basis). Because the crime-fraud exception does not apply, the voluntary disclosure of ▮▮▮ work-product waives the work-product protection for other work-product on the same subject matter. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1121, 1123–25 (9th Cir. 2020). The arguments in this

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
12

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1  declarations or any other factual support for its assertion that the attorneys' communications with
2  Sullivan and ▇ about the 2016 Incident were undertaken in anticipation of litigation. (Opp. at
3  24 (noting lack of evidence on this point).) It has not established that the attorneys whose alleged
4  work-product it seeks to shield were unaware of the material facts concerning the 2016 Incident
5  (as to ▇ in fact, the evidence in the record shows exactly the opposite). It has not shown that
6  the redacted communications constitute opinion, rather than fact, work-product. And it has not
7  shown, by declaration or otherwise, that the attorneys whose communications are at issue object
8  to the disclosure of their opinion work-product. *See In re Grand Jury*, 705 F.3d 133, 158–59 (3d
9  Cir. 2012) (in appeal by corporation from order finding crime-fraud exception applicable to
10 work-product, court declines to address potential work-product claim of in-house counsel
11 because those counsel did not join the corporation's appeal and "[i]n the absence of their doing
12 so, we cannot properly assess the existence and parameters of their independent interests in
13 resisting disclosure of information").

14        Because Uber has failed to prove any of these essential aspects of its claim, the Court
15 should reject its effort to shield the relevant communications of attorneys other than ▇ The
16 Court can overrule Uber's work-product claim on any one or more of several alternate grounds.
17 The Court can find that the communications at issue are not work-product at all, because Uber
18 has not shown that they were undertaken in anticipation of litigation. The Court can rule that, if
19 the crime-fraud exception *does* apply (contrary to our position), it vitiates the work-product
20 protection for ▇ and any other attorney who was aware of the material facts concerning the
21 2016 Incident. The Court can hold that the crime-fraud exception, if it applies, vitiates the work-
22 product protection for any fact work-product, even that of unwitting attorneys. And the Court can
23 hold that Uber's work-product claim fails because the allegedly unwitting attorneys have not
24 themselves objected to disclosure of their opinion work product concerning the 2016 Incident.
25 *See In re Grand Jury*, 705 F.3d at 158–59.

---

part rest on the assumption that the Court has found the crime-fraud exception applicable, over our objection.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
13

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

### IV. Even if Uber properly applied the crime-fraud exception, its intentional disclosure of other privileged communications waives the attorney-client privilege and the work-product protection.

Uber seeks to avoid a finding of waiver by contending that the privileged communications it disclosed to the government were subject to the crime-fraud exception and thus not privileged at all. For the reasons discussed above, that argument fails. But it fails for another reason as well: Uber voluntarily disclosed privileged communications and potential work product that do not fall within the crime-fraud exception even as Uber conceives it.

We offer two examples of these disclosures. First, one of the documents Uber seeks to withhold from Sullivan in part is the Preacher Central Tracker ("PCT"). Uber argues that the PCT it produced to the government was "appropriately redacted for privilege." (Reply at 7–8.) In assessing this claim, counsel re-reviewed documents that Uber had originally produced to the SEC.[7] In reviewing those documents, we realized that Uber produced to the SEC an *unredacted* version of the PCT.[8] Uber's voluntary production to the SEC of communications in the PCT that even Uber recognizes as privileged constitutes a subject-matter waiver of the privilege and work-product protection.

Second, Uber produced to the government a largely unredacted document created by Uber Security Communications Manager ▇▇▇ and shared with attorney ▇▇▇ The document, from November 15, 2016, is captioned "Security Incident: Extortion Attempt."[9] The unredacted portions of the document fall outside Uber's crime-fraud parameters, because they do not involve communications by either Sullivan or ▇▇▇ Uber insists that production of the ▇▇▇-▇▇▇ document does not constitute a waiver because the document as redacted is not privileged. According to Uber, it merely disclosed the "summary of facts" that ▇▇▇ gave to

---

[7] At Sullivan's request, the government obtained these materials from the SEC and produced them to the defense in June 2021.

[8] We have attached as Exhibit 1 to the Kerin Declaration a copy of the unredacted PCT, with highlighting to show the portions Uber redacted as privileged from the version it produced to the U.S. Attorney's Office in this case.

[9] This document is attached to the Declaration of David Angeli accompanying Sullivan's opposition to the motion to quash. It is Bates-numbered UBER-DATA-00072824.

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO                                  14

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

██ while redacting the actual "requests for legal advice." (Reply at 8.) But Uber elsewhere rejects this very distinction, noting (correctly) that "[t]he attorney-client privilege 'exists to protect not only the giving of professional advice . . . but also the giving of information to the lawyer to enable him to give sound and informed advice.'" (Reply at 4 (quoting *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996)).) Uber's claim that ██ did not provide this information to ██ for the purpose of seeking legal advice (Reply at 8) is wrong. This was not a preexisting document, and ██ created it for the express purpose of seeking legal advice from ██ (Opp. at 26–27.)

These voluntary disclosures of clearly privileged communications, with no contention by Uber that they fall within the company's crime-fraud theory, constitute a subject-matter waiver.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Sullivan's opposition to the motion to quash, the Court should deny Uber's motion to quash the subpoena Sullivan has served on the company.

DATED: February 3, 2022                  *s/ David H. Angeli*
                                                  David H. Angeli
                                                  Edward A. Piper
                                                  Tyler P. Francis
                                                  Michelle H. Kerin
                                                  John D. Cline

                                                 *Attorneys for Defendant Joseph Sullivan*

DEF'S SURREPLY RE UBER MTQ FED. R. CRIM. P. 17 SUBPOENA
3:20-cr-00337-WHO
15

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880