DAVID H. ANGELI (admitted *pro hac vice*)
EDWARD A. PIPER (Cal. Bar No. 288289)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; ed@angelilaw.com; tyler@angelilaw.com;
michelle@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>Defendant. | Case No. 3:20-cr-00337-WHO<br><br>DECLARATION OF MICHELLE HOLMAN KERIN IN SUPPORT OF DEFENDANT'S UNOPPOSED MOTION FOR PRETRIAL RETURN DATE FOR SUBPOENA DUCES TECUM TO SOFTBANK GROUP |

1. My name is Michelle Holman Kerin. I am a member of the Oregon bar and am admitted to appear in this Court *pro hac vice*. I represent defendant Joseph Sullivan in the above-captioned matter. I make the following statements in support of Mr. Sullivan's Motion for Pretrial Return Date for Subpoena Duces Tecum ("Motion"), filed contemporaneously, and based on my personal knowledge.

DECL. OF MICHELLE HOLMAN KERIN IN SUPPORT OF DEF.'S
UNOPPOSED MOT. FOR PRETRIAL RETURN DATE FOR SUBPOENA
DUCES TECUM TO SOFTBANK
3:20-cr-00337-WHO

1

2. Attached as Exhibit 1 to this Declaration is a copy of the subpoena Mr. Sullivan seeks to serve on SoftBank Group Corp. ("SoftBank") as outlined in the Motion.

3. The initial indictment (ECF No. 13) alleged that Mr. Sullivan, Uber's former Chief Security Officer, sought to conceal the 2016 Incident from the Federal Trade Commission in violation of 18 U.S.C. § 1505 (Count 1), and from "some judge or other person in civil or military authority under the United States," in violation of 18 U.S.C. § 4 (Count 2). The Superseding Indictment (ECF No. 71) added three counts alleging violations of wire fraud, 18 U.S.C. § 1343. The new counts allege that Mr. Sullivan knew that "California state law at the time [of the 2016 Incident] contained certain provisions obligating businesses in California to notify affected California residents of data breaches under certain circumstances" but that he "concealed" the 2016 Incident in an effort to ensure that Uber's California drivers did not receive that notice. (ECF No 71, ¶¶ 8-10). Mr. Sullivan allegedly carried out the scheme by, among other things, "misrepresent[ing] the nature of the [2016 Incident] to Uber's new CEO" (*id.* ¶ 10; *see also id.* ¶ 5) and misrepresenting details of the incident to Uber's lawyers. (*Id.* ¶ 10.) Mr. Sullivan allegedly withheld this key information from those "at Uber who were in a position to disclose" it (*id.* ¶ 5).

4. Beginning in August 2017, Mr. Sullivan sat for three separate interviews with lawyers from Uber's then-outside counsel, WilmerHale, during which he discussed all the material details of the 2016 Incident. My understanding is that at that same time, WilmerHale lawyers interviewed other key members of the team that had responded to the 2016 Incident, learning additional details about the 2016 Incident. Based on the redacted documents produced

///

DECL. OF MICHELLE HOLMAN KERIN IN SUPPORT OF DEF.'S
UNOPPOSED MOT. FOR PRETRIAL RETURN DATE FOR SUBPOENA
DUCES TECUM TO SOFTBANK
3:20-cr-00337-WHO

2

by Uber to the government, it appears that the new CEO, Dara Khosrowshahi, was briefed on the matter shortly after he arrived at Uber in late August 2017.

5. The discovery produced in this case further demonstrates, that as Mr. Khosrowshahi's tenure as CEO began, Uber was in negotiations with SoftBank to sell a 15 percent stake of the company for more than $7 billion. As of approximately November 3, 2017, during SoftBank's due diligence process, Uber had only briefly described the 2016 Incident in documents outlining its current and potential regulatory and litigation matters. Those documents stated that Uber had not yet determined whether it was required to disclose the 2016 Incident. Documents produced in discovery further reveal that following questions by SoftBank about the 2016 Incident, Uber gave SoftBank a full debrief of the 2016 Incident and at Uber's request, WilmerHale apparently provided information directly to SoftBank's representatives regarding what it had learned in its investigation and whether disclosure was required. Following the full debrief, SoftBank informed Uber that it would not go forward with the deal unless Uber publicly disclosed the 2016 Incident.

6. Following negotiations, on November 12, 2017, Uber and SoftBank entered into a "side letter,"[1] making disclosure of the 2016 Incident a condition of the deal and obligating Uber to continue to provide SoftBank information about the 2016 Incident. A little over a week later, on November 21, 2017, Uber publicly disclosed the 2016 Incident and terminated Mr. Sullivan, claiming that "the details" of the 2016 Incident had "remained hidden" until November 21, 2017. (Complaint (ECF No. 1), ¶ 48.)

---

[1] The November 12, 2017 side letter is attached as Exhibit A to the subpoena sought in this motion and attached to this Declaration.

DECL. OF MICHELLE HOLMAN KERIN IN SUPPORT OF DEF.'S
UNOPPOSED MOT. FOR PRETRIAL RETURN DATE FOR SUBPOENA
DUCES TECUM TO SOFTBANK
3:20-cr-00337-WHO

3

7. At trial, Mr. Sullivan intends to present evidence concerning Legal's knowledge of the 2016 incident, Legal's comments and advice to Mr. Sullivan and other members of the team responding to that incident, the extent to which Legal was responsible for determining Uber's obligation to report the incident to the FTC or others, the respective roles of Mr. Sullivan and others (including members of Legal) in communicating with the FTC, and the extent to which Uber's management team knew about the incident prior to November 21, 2017.

8. The documents Mr. Sullivan seeks from SoftBank are critical evidence to his defense because, I believe, they will negate the intent to conceal, an element of each of the charges against him, and will undermine other significant portions of the government's allegations against him.

9. Based on my review of the charging instruments in this case and the discovery produced by the government, we expect the government to argue at trial that as soon as Uber's outside counsel and new management learned of the 2016 Incident, the company quickly decided to disclose it in the interest of transparency. To the extent that new management at Uber and/or their outside counsel may have initially *agreed* with the advice that Uber's Legal department had contemporaneously provided to Mr. Sullivan and his team (*i.e.*, that disclosure was *not* required), and disclosed the incident a year later only because SoftBank insisted on it as a condition of its $7 billion investment, those facts are important to Mr. Sullivan's defense. So too would any information—including information that Uber and/or its lawyers provided to SoftBank—undermining the government's allegation that Uber's senior management and outside counsel were kept in the dark until just prior to Mr. Sullivan's firing.

///

DECL. OF MICHELLE HOLMAN KERIN IN SUPPORT OF DEF.'S
UNOPPOSED MOT. FOR PRETRIAL RETURN DATE FOR SUBPOENA
DUCES TECUM TO SOFTBANK
3:20-cr-00337-WHO
4

10. Mr. Sullivan asks that the Court authorize him to set a pretrial return date of March17, 2022. If the Court authorizes the pretrial return date, my office will promptly serve the subpoena on SoftBank. We have already communicated with SoftBank's lawyers in its transaction with Uber to ask them to accept service of the subpoena, should the Court issue it.

11. I have also communicated with AUSA Dawson and he has advised me that the United States does not oppose Mr. Sullivan's request for a pretrial return date for the Rule 17(c) subpoena to SoftBank and that the United States takes no position at this time on the merits of the subpoena or any motion to quash that SoftBank might file.

12. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON this 11th day of February 2022

*s/ Michelle Holman Kerin*
MICHELLE HOLMAN KERIN

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SUBPOENA TO PRODUCE DOCUMENTS OR OBJECTS IN A CRIMINAL CASE |
|---|---|
| Plaintiff, | |
| v. | Case No.: 3:20-cr-00337-WH |
| Joseph Sullivan | |
| Defendant(s). | |

TO: SoftBank Group Corp. ("SoftBank")

YOU ARE COMMANDED to produce at the place, date, and time specified the document(s) or object(s) indicated below. If compliance would be unreasonable or oppressive, you may file a motion requesting the court to quash or modify the subpoena, to review the documents in camera, or to permit production only pursuant to a protective order.

| PLACE | | | | COURTROOM/JUDGE |
|---|---|---|---|---|
| ☑ U.S. Courthouse 450 Golden Gate Ave. San Francisco, CA 94102 | ☐ U.S. Courthouse 280 South First St. San Jose, CA 95113 | ☐ U.S. Courthouse 3140 Boeing Ave. McKinleyville, CA 95519 | ☐ U.S. Courthouse 1301 Clay Street Oakland, CA 94612 | Crtrm. 2/J. Orrick |
| | | | | DATE AND TIME 3/17/2022 08:30 |

*If the document(s) or object(s) are produced in advance of the date specified, either to the court in an envelope delivered to the clerk's office or to the issuing attorney whose name and address appears below, no appearance is necessary.*

The following document(s) or object(s) shall be produced:

All documents, including communications between SoftBank and Uber Technologies, LLC ("Uber"), and their lawyers, agents, employees, directors, or investors, regarding: (1) the November 12, 2017 Company Side Letter between Uber and SoftBank (attached as Exhibit A); (2) the November 2016 cyber-security breach at Uber and the subject of the Superseding Indictment in this matter (the "2016 Incident"); (3) the investigation of the 2016 Incident by WilmerHale or any third-party (including any state or federal regulatory or law enforcement agency); (4) Joe Sullivan; and (5) and any action taken by Uber in response to the 2016 Incident.

NOTE: Subpoena forms requiring the appearance of a witness to testify at a criminal proceeding or to testify and bring documents to a criminal proceeding, must use Form CAND 89A, *Subpoena to Testify in a Criminal Case*) or for the production of state law enforcement personnel or complaint records (CAND 89C, *Subpoena to Produce State Law Enforcement Personnel Or Complaint Records in a Criminal Case*) are available at the Court's website: cand.uscourts.gov.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

David H. Angeli
Angeli Law Group
121 SW Morrison, Suite 400
Portland, OR 97204

CAND 89B (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

| PROOF OF SERVICE | | |
|---|---|---|
| RECEIVED BY SERVER | DATE | PLACE |
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS ☐ YES ☐ NO   AMOUNT $ | |
| SERVED BY (PRINT NAME) | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　DATE

_____
SIGNATURE OF SERVER

ADDRESS:

ADDITIONAL INFORMATION



November 12, 2017

SB Cayman 2 Ltd.
69 Grosvenor Street
London, W1K 3JP, UK
Attention: Legal Department
Email: legal@softbank.com

Re: <u>Project Magellan – Company Side Letter</u>

Reference is made to that certain Master Investment Agreement, entered into simultaneously with entry into this letter agreement (as may be amended, modified and/or supplemented from time to time, the "<u>Master Investment Agreement</u>"), by and among Uber Technologies, Inc., a Delaware corporation (the "<u>Company</u>"), SB Cayman 2 Ltd., a Cayman Islands exempted company with limited liability ("<u>Seville</u>"), and the other signatories thereto as of the date hereof and from time to time listed on the Schedule of Consortium Members thereto. Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Master Investment Agreement.

Section 2(a) of the Master Investment Agreement contemplates that: (a) the Company will issue, as promptly as reasonably practicable following the date hereof, a public announcement regarding the Tender Offer in substantially the form attached as Exhibit E-1 thereto (the "<u>Company Public Announcement</u>"); and (b) as promptly as reasonably practicable following the Company Public Announcement (and any public announcement by Seville contemplated by Section 2(a) of the Master Investment Agreement), on a date mutually agreed to between the Company and Seville not later than November 28, 2017 inclusive (such later date, the "<u>Outside Commencement Date</u>"), the Investors will commence the Tender Offer, subject to the terms and conditions contemplated thereby.

The Company has confirmed to Seville the occurrence of a data security incident (the "<u>Incident</u>") and will be taking certain remediation measures before and after the commencement of the Tender Offer, including, but not limited to, those hereby contemplated prior to issuing the Company Public Announcement and prior to the Investors commencing the Tender Offer.

Now, therefore, in consideration of the mutual covenants and agreements contained herein, the Company and Seville hereby agree as follows:

1. <u>Agreement Regarding Tender Offer</u>. As promptly as reasonably practicable following the date hereof, the Company shall deliver to Seville a true and complete copy of each

of the following with respect to the Incident, in each case, subject to Seville's reasonable and good faith determination as to form and substance: (a) a list of all notices statutorily required to be sent to individuals in the U.S. and outside the U.S. (as determined by the Company in its discretion after reasonable consultation with Seville); and (b) a list of all notices statutorily required to be sent to data protection authorities, state attorneys general and other regulatory authorities in the U.S. and outside the U.S. (as determined by the Company in its discretion after reasonable consultation with Seville) (collectively, the "<u>Required Information</u>").  The Company shall not issue the Company Public Announcement, and the Investors shall not commence the Tender Offer, until the Company has delivered all statutorily required notices contemplated by subsection 1(b) and has identified the process, including any third-party vendors who will assist that process, and timeline for sending all required notices contemplated by subsection 1(a) above to the reasonable satisfaction of Seville (the date upon which delivery of such notices and the identification of such process is completed, the "<u>Statutory Notice Completion Date</u>").  The Company further agrees to use reasonable best efforts to deliver such other information related to the Incident as reasonably requested by Seville, *provided*, *however*, that the Company shall be under no obligation to provide any such information that it determines in good faith and upon advice of counsel it should not provide in order to protect highly sensitive or confidential information or attorney-client privilege (the "<u>Additional Information</u>").

2. <u>Tender Offer Commencement Date</u>.  The Company agrees to cause the Statutory Notice Completion Date to occur prior to the Tender Offer Commencement Date and to provide Seville with all of the Required Information and the Additional Information as promptly as possible following the date hereof, in each case unless waived in writing by Seville.  If the Company has not delivered to Seville the Required Information, the Additional Information and the disclosures relating to the Incident to be included in the Tender Offer Documents as Company Information, or if the Statutory Notice Completion Date has not occurred, in each case prior to the Outside Commencement Date to the reasonable satisfaction of Seville, then the Investors shall have no obligation to commence the Tender Offer, unless waived in writing by Seville, and, upon notice to the Company from Seville that the Tender Offer will not be launched pursuant to this paragraph 2, the parties hereto agree to terminate the Master Investment Agreement immediately, unless waived in writing by Seville.

3. <u>Confidentiality</u>.  This letter agreement and its terms shall be treated as confidential.  This letter agreement may not be used, circulated, quoted or otherwise referred to in any document, except with the written consent of the Seville and the Company; *provided*, *however*, that (X) any of the Company and Seville may disclose this letter agreement (a) to their respective representatives who need to know the terms of this letter agreement in connection with the negotiation or furtherance of the Financing and the Tender Offer, (b) to Uptown DF Holdings, LP (the "<u>Cordoba Representative</u>"), including its representatives who need to know the terms of this letter agreement in connection with the negotiation or furtherance of the Financing and the Tender Offer; (c) to the extent required by applicable law, and (d) in connection with any litigation to enforce the terms of this letter agreement and (Y) the Cordoba Representative may, following the Company Public Announcement, disclose this letter agreement and the subject matter thereof to any prospective Consortium Member (as defined in the Master Investment Agreement) who has previously executed a confidentiality agreement with the Company, including such person's representatives who need to know the terms of this

letter agreement in connection with the negotiation or furtherance of the Financing and the Tender Offer.

4. <u>Specific Performance</u>. The Company agrees that irreparable damage would occur to Seville and its affiliates in the event that any of the provisions of this letter agreement were not performed in accordance with their specific terms or were otherwise breached, and the Company agrees that Seville shall be entitled to seek an injunction or injunctions to prevent breaches or threatened breaches of this letter agreement and to enforce specifically the terms and provisions of this letter agreement, without bond or other security being required.

5. <u>Governing Law; Consent to Jurisdiction; WAIVER OF JURY TRIAL</u>. This letter agreement shall be governed by, and construed in accordance with, the Laws of the State of Delaware, applicable to contracts executed in and to be performed entirely within that State. Each party to this letter agreement (i) irrevocably submits to the exclusive jurisdiction and venue of the Chancery Court of the State of Delaware (or, if such court finds it lacks subject matter jurisdiction, any federal court sitting in the State of Delaware), and any appellate court therefrom, for the purpose of any action, claim, cause of action or suit (in contract, tort or otherwise), inquiry, proceeding or investigation arising out of or related to this letter agreement, (ii) to the extent not prohibited by applicable law, waives and agrees not to assert by way of motion, as a defense or otherwise, in any such action, claim, cause of action or suit that it is not subject to the personal jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution by reason of a lack of personal jurisdiction, that any such proceeding brought in one of the above-named courts is improper by reason of a lack of personal jurisdiction or venue, or that this letter agreement or the subject matter hereof may not be enforced in or by such court by reason of a lack of personal jurisdiction or improper venue, and (iii) agrees not to commence any action, claim, cause of action or suit arising out of or related to this letter agreement other than before one of the above-named courts. Each party agrees that a final judgment in any such action, claim, cause of action or suit (in contract, tort or otherwise), inquiry, proceeding or investigation shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law. EACH OF THE PARTIES HERETO HEREBY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, CAUSE OF ACTION, SUIT OR PROCEEDING (IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR BASED UPON THIS LETTER AGREEMENT OR THE SUBJECT MATTER HEREOF OR IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE TRANSACTIONS CONTEMPLATED HEREBY. THE PARTIES ACKNOWLEDGE THAT THIS <u>PARAGRAPH 5</u> CONSTITUTES A MATERIAL INDUCEMENT UPON WHICH THEY ARE RELYING AND WILL RELY IN ENTERING INTO THIS LETTER AGREEMENT AND ANY OTHER AGREEMENTS RELATING HERETO OR CONTEMPLATED HEREBY. ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS <u>PARAGRAPH 5</u> WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH SUCH PARTY TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

6. <u>Binding Effect; Amendments and Waivers</u>. This letter agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective

successors and permitted assigns.  This letter agreement may not be amended, supplemented or otherwise modified except in a written instrument executed by the Company and Seville.

       7.    <u>Termination</u>.  This letter agreement may be terminated by (a) the mutual written agreement of the Company and Seville, or (b) either the Company or Seville, upon written notice to the other party, upon the valid termination of the Master Investment Agreement in accordance with its terms, in which event both parties thereupon shall be released without liability from all obligations under this letter agreement, but shall not be relieved of any liability for any breach of this letter agreement occurring prior to the termination hereof.

[*SIGNATURE PAGES FOLLOW*]

Very truly yours,

**UBER TECHNOLOGIES, INC.**

_____
Name: Dara Khosrowshahi
Title:  Chief Executive Officer

Accepted and agreed as of the date first set forth above:

**SB CAYMAN 2 LTD.**

_____
Name: Brian Wheeler
Title:  General Counsel