1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  ANDREW F. DAWSON (CABN 264421)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-7019
7      FAX: (415) 436-7234
       andrew.dawson@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,          )  CASE NO. 3:20-CR-337 WHO
                                        )
14         Plaintiff,                   )  UNITED STATES'S OPPOSITION TO
                                        )  DEFENDANT SULLIVAN'S MOTION TO
15     v.                               )  DISMISS WIRE FRAUD COUNTS
                                        )
16  JOSEPH SULLIVAN,                    )
                                        )
17         Defendant.                   )
                                        )
                                        )

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO

**TABLE OF CONTENTS**

ALLEGATIONS IN THE SUPERSEDING INDICTMENT................................................................1

LEGAL STANDARD......................................................................................................................2

ARGUMENT ..................................................................................................................................3

      I.     *Kelly* and its Progeny Do Not Apply ..............................................................3

           A.     Honest-Services Fraud and the Supreme Court ................................3

                 1.     *United States v. Kelly*................................................................4

                 2.     *United States v. Yates*................................................................5

           B.     The Superseding Indictment Alleges Property Fraud, Not Honest-Services Fraud by Another Name. ....................................................6

                 1.     Fraud against Uber's drivers was not an "incidental byproduct" of the scheme. ...............................................................6

                 2.     Fraud against Uber's drivers is not analogous to "maintenance" of a defendant's salary. ...............................................8

                        (i)     *Yates* has no bearing on property fraud against third parties. .......................................................8

                        (ii)     The Superseding Indictment does not allege "salary maintenance." .........................................9

      II.     The Superseding Indictment does not violate the convergence requirement. ...................10

      III.     Defendant was responsible for the Uber's failure to follow state law. .............................12

      IV.     The government's fraud theory sits squarely within established Ninth Circuit law. ..........13

CONCLUSION..............................................................................................................................15

1

# TABLE OF AUTHORITIES

2

## Federal Cases

3    *Chiarella v. United States*, 445 U.S. 222 (1980) ..................................................................... 13

4    *Cleveland v. United States*, 531 U.S. 12 (2000) ................................................................... 13

5    *McNally v. United States*, 483 U.S. 350 (1987) ..................................................................... 3

     *Skilling v. United States*, 561 U.S. 358 (2010) .............................................................. 4, 5, 6, 8

6    *United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010) ......................................................... 10, 11

7    *United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) .............................................................. 2

8    *United States v. Dowling*, 739 F.2d 1445 (9th Cir. 1984) ..................................................... 14

     *United States v. Gatto*, 986 F.3d 104, 116 (2d Cir. 2021) ...................................................... 8

9    *United States v. Guertin, No. 1:21-CR-262* (TNM), 2022 WL 203467 (D.D.C. Jan. 24, 2022) ............... 9

10    *United States v. Holden*, 908 F.3d 395 (9th Cir. 2018) ........................................................ 13

11    *United States v. Holmes,* No. 5:18-CR-00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020) ......... 11

12    *United States v. Jensen*, 93 F.3d 667 (9th Cir. 2002) .......................................................... 2, 7

     *United States v. Kelly*, 140 S. Ct. 1565 (2020) ............................................................. passim

13    *United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010) ..................................................... 13

14    *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989) ......................................................... 10, 11

15    *United States v. Nukida*, 8 F.3d 556 (9th Cir. 1993) ............................................................. 2

     *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) ............................................. 12, 14

16    *United States v. Sullivan*, 522 F.3d 967 (9th Cir. 2008) ........................................................ 7

17    *United States v. Yates*, 16 F.4th 256 (9th Cir. 2021) ...................................................... passim

18

## Federal Statutes

19

18 U.S.C. § 1346 ............................................................................................................... 3

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                       II

1    Defendant Sullivan seeks to avoid a trial on the three pending wire fraud counts, asking this

2    Court instead to substitute its judgment for the jury's.  But the grounds for dismissal of an indictment are

3    narrow.  In his efforts to thread the needle Defendant is forced to twist both the plain allegations of the

4    Superseding Indictment and binding Supreme Court and Ninth Circuit caselaw.  Defendant's efforts

5    must fail.  *First*, factual questions are for the jury to determine, and Defendant's invitation to the Court

6    to intervene should be declined.  *Second*, Defendant misstates the holdings of *United States v. Kelly* and

7    its progeny, which results in an inflated sense of their significance.  That line of cases pertains to recent

8    limitations on what might otherwise be considered honest-services fraud.  They stand only for the

9    proposition that the Supreme Court's limitations on honest-services fraud cannot be evaded simply by

10   recategorizing intangible rights as property rights.  But this case bears no resemblance to that type of

11   honest-services fraud.  Defendant Sullivan is not a public employee (as in *Kelly*), nor does the

12   Superseding Indictment accuse him of defrauding his employer solely to maintain employment (as in

13   *Yates*).  On the contrary, the Superseding Indictment alleges old-fashioned financial fraud:  Defendant

14   Sullivan defrauded Uber's contractual counterparties, its drivers, in the hope that those drivers would

15   continue to pay money to Uber (instead of its competitors—a decision drivers could make every day).

16       The allegations in the indictment are sufficient to state legally valid wire fraud violations.

17   Whether the evidence sustains the charges is for the jury to decide, not this Court.  Defendant's

18   remaining arguments fail for similar reasons.

19                          **ALLEGATIONS IN THE SUPERSEDING INDICTMENT**

20       The Superseding Indictment ("SI") alleges that Uber Technologies, Inc. ("Uber") suffered a data

21   breach in October and November of 2016 (the "2016 Data Breach").  SI ¶ 4.  After learning of the extent

22   of the breach, Defendant "engaged in a scheme designed to ensure that the data breach did not become

23   public knowledge, was concealed, and was not disclosed to the FTC and to impacted users and drivers."

24   *Id.* ¶ 5.  Specifically as to the fraud against Uber's drivers, the SI alleges that those drivers were not

25   Uber's employees, but rather were users "of a ride-sharing platform" provided by Uber.  *Id.* ¶ 7.  Uber's

26   role in the relationship "was to act as the drivers' agent in collecting fares from the users of Uber's

27   platform . . . via Uber's payment processing platform."  *Id.*  Rather than pay the drivers, as an employer

28

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                              1

1    would, the flow of payments went in the opposite direction.  Uber's drivers agreed to pay Uber a service

2    fee "in exchange for the right to use that platform."  *Id.*

3          At the time of the 2016 Data Breach, Defendant was aware that "California state law at the time

4    contained certain provisions obligating businesses in California to notify affected California residents of

5    data breaches under certain circumstances," and that the data stolen in the 2016 Data Breach triggered

6    the notification requirement.  SI ¶¶ 4, 8, 9.  Nevertheless, Defendant "took measures to ensure that

7    drivers did not receive the notification required by state law."  *Id.* ¶ 9.  In addition, Defendant made

8    material misrepresentations in a series of documents, which were designed to corroborate the

9    misrepresentation that the 2016 Data Breach was not, in fact, a data breach requiring notification to

10   affected drivers.  *Id.* ¶ 10.

11         In sum, the SI alleges that Defendant Sullivan "knowingly and with the intent to defraud

12   participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter,

13   and to obtain money and property by means of materially false and fraudulent pretenses, representations,

14   and promises, by making materially false and misleading statements, and failing to disclose material

15   facts with a duty to disclose."  SI ¶ 6.

16                                        **LEGAL STANDARD**

17         While Defendant's Motion does not discuss the standard applicable to motions to dismiss, the

18   Motion specifies that is motion is brought under Federal Rule of Criminal Procedure 12(b)(3), which

19   permits a pretrial motion for "failure to state an offense."  Motion to Dismiss ("Mot.") at 2.  "In ruling

20   on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by

21   the four corners of the indictment."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "A

22   motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . .

23   The Court should not consider evidence not appearing on the face of the indictment."  *United States v.

24   Jensen*, 93 F.3d 667, 669 (9th Cir. 2002).  The "unavailability of Rule 12 in determination of general

25   issues of guilt or innocence . . . helps ensure that the respective provinces of the judge and jury are

26   respected . . . ."  *United States v. Nukida*, 8 F.3d 556, 670 (9th Cir. 1993).

27

28

**ARGUMENT**

The Superseding Indictment adequately alleges three counts of wire fraud. Defendant's arguments to the contrary invite this Court to make anticipatory factual determinations, and they rely on misreadings of precedent to argue that those factual determinations justify dismissal. The motion fails at both steps. The law is not as Defendant would have it be, and neither are the facts.

**I.      *Kelly* and its Progeny Do Not Apply**

Defendant's first two arguments rely on the two sides of the same coin: that the Supreme Court's recent honest-services case law, primarily *United States v. Kelly*, applies to an indictment charging financial fraud. In its first version, Defendant argues that Sullivan's attempt to obtain money or property from Uber drivers was an "incidental byproduct" of the scheme, as in *Kelly*. In its second version, which also relies on cases following *Kelly*, Defendant argues that he is analogous to a defendant who is alleged to have deceived his employer in order to maintain his salary. As a factual matter, Defendant's arguments misstate the allegations in the Superseding Indictment, and he asks this Court to intrude on the jury's factfinding. But more fundamentally, in his attempt to convert *Kelly* into an all-purpose fraud defense, Defendant rips it from its doctrinal context and misstates its significance. This is not an honest-services case in which the only object of the scheme was self-dealing or some other form of corruption. On the contrary, a central object of Defendant's scheme was to deprive Uber's drivers of money or property. Far from being "incidental," that deprivation was essential to the scheme's overall success.

**A.      Honest-Services Fraud and the Supreme Court**

A proper reading of *Kelly* and *Yates* requires more than simply plucking stray sentences out of context. Those cases represent a continuation of a long line of precedent in which courts have struggled with the boundaries of actionable honest-services fraud.

As the Supreme Court explained in *Kelly* itself, prior to 1987 courts read the federal fraud statutes to "proscribe[] schemes to defraud citizens of their intangible rights to honest and impartial government." *McNally v. United States*, 483 U.S. 350, 358 (1987). The Supreme Court rejected this theory in *McNally*, which held that the fraud statutes were "limited in scope to the protection of property rights." *Id.* at 360. Congress sought to countermand this holding by enacting a law to remove the

1    limitation of property rights and to bar fraudulent schemes "to deprive another of the intangible right of

2    honest services." 18 U.S.C. § 1346.  The Supreme Court limited this effort in *Skilling v. United States*,

3    which narrowly construed the statute and limited it to schemes involving bribes or kickbacks.  *Skilling v.*

4    *United States*, 561 U.S. 358 (2010).  Throughout, courts have struggled with demarcating the line

5    between prosecutable financial fraud and amorphous "honest services" fraud relating to corruption and

6    self-dealing.

7                    ***1.      United States v. Kelly***

8            The Supreme Court's most recent statement on the line between corruption and self-dealing on

9    the one hand, and federal criminal fraud on the other, is *United States v. Kelly*, 140 S. Ct. 1565 (2020).

10   The defendant in *Kelly* had ordered the realignment of 12 toll lanes leading from Fort Lee, New Jersey,

11   to the George Washington Bridge.  140 S. Ct. at 1568.  The realignment resulted in gridlock, with traffic

12   rivaling "that of 9/11." *Id.* at 1570.  As the Supreme Court explained, the evidence at trial showed that

13   this realignment was retaliation against the mayor of Fort Lee for failing to support then-Governor Chris

14   Christie.

15           The Supreme Court's opinion in *Kelly* recounts the history of honest-services jurisprudence and

16   observes that "federal fraud law leaves much public corruption to the States (or their electorates) to

17   rectify." 140 S. Ct. at 1571.  The government acknowledged these limitations, but argued, in part, that

18   because the realignment had resulted in the costs of compensating the traffic engineers and back-up toll

19   collectors who implemented the scheme, those costs satisfied the "money or property" requirement. *Id.*

20   The Court disagreed based "on the distinction between property and regulatory power." *Id.* at 1572.

21   The Court explained that prior cases had held that a government's regulatory decisions do not create

22   property interests, and it observed that what that the defendants sought to do in *Kelly* was "alter a

23   regulatory decision about the toll plaza's use—in effect, about which drivers had a 'license' to use

24   which lanes." *Id.* at 1573.

25           The Court recognized, however, that in other contexts a "government's right to its employees'

26   time and labor . . can undergird a property fraud prosecution." *Id.* at 1573.  The problem in *Kelly* was

27   that the true object of the scheme was never money or property, but rather the regulatory object that

28

cannot support a fraud conviction.  Indeed, the Court observed that "[i]n the defendants' original plan, which scrapped all reserved lanes, there was no reason for extra toll collectors."  *Id.* at 1574.  The Court was motivated by the concern that "[to] rule otherwise would undercut this Court's oft-repeated instruction:  Federal prosecutors may not use property fraud statutes to set standards of disclosure and good government for local and state officials."  *Id.* at 1574 (quotation marks and alteration omitted).  After all, any regulation has "incidental costs," and to permit those costs to give rise to a fraud charge would abrogate the Court's prior limitations to honest-services fraud.

### 2.    *United States v. Yates*

In the wake of *Kelly*, The Ninth Circuit addressed similar issues in *United States v. Yates*, 16 F.4th 256 (9th Cir. 2021).  The defendants in *Yates* were accused to conspiring to conceal the true financial condition of the bank at which they worked.  16 F.4th at 263.  As relevant here, the government argued in part that the "money or property" at issue were the defendants' salaries and bonuses, which they sought to maintain.  The Ninth Circuit in *Yates*, like the Supreme Court in *Kelly*, began with a discussion of honest-services fraud, noting that the Supreme Court had strictly curtailed the use of the federal fraud statutes to criminalize pure self-dealing.  Citing to *Skilling v. United States*, the Ninth Circuit noted that the Supreme Court had rejected the notion that federal fraud statutes cover "undisclosed self-dealing by a public official or private employee—i.e., the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty."  16 F.4th at 267 (quoting *Skilling*, 561 U.S. at 404).  *Skilling* had considered whether the defendant in that case had defrauded his company's shareholders by misrepresenting the company's finances and thereby profited via his salary and bonuses.  *Id.*

Based on *Skilling*'s rejection of an honest-services fraud conviction on similar facts, *Yates* reversed the convictions.  The Ninth Circuit conceded that the government in *Yates*, unlike in *Skilling*, alleged "property fraud, not honest-services fraud," but explained that it could not permit "the government to recharacterize schemes to defraud an employer of one's honest services . . . as schemes to deprive the employer of a property interest in the employee's continued receipt of a salary."  16 F.4th. at 267.  In the Court's view, affirming such a conviction "would work an impermissible 'end-run' around

1    the Court's holding in *Skilling*." *Id.*  In sum, the Ninth Circuit concluded that the indictment in *Yates*

2    was simply honest-services fraud "dressed in the garb of salary deprivation," *id.* at 268, and that to

3    affirm the convictions would undermine the Supreme Court's prior restrictions on such cases.

4         *Yates* was also informed by the majority's concern that affirming a conviction under those

5    circumstances "would criminalize a wide range of commonplace conduct."  15 F.4th at 267.  The Court

6    proffered a hypothetical: "Consider an employee who wastes time on the Internet but then, to avoid

7    being fired, falsely claims to have been working productively."  *Id.*  The Court concluded that

8    "[e]xtending the fraud statutes in that way would raise serious concerns about whether the offense is

9    defined with sufficient definiteness."  *Id.*

10        **B.    The Superseding Indictment Alleges Property Fraud, Not Honest-Services Fraud by
                   Another Name.**

11

12        Defendant's arguments in support of dismissal under *Kelly* and *Yates* fail for many reasons, but

13   chief among them is the fact that the fraud counts Superseding Indictment do not implicate any of the

14   concerns motivating *Kelly* or *Yates*.  Defendant Sullivan was not a public official engaged in corrupt

15   acts.  He has not been accused of self-dealing to the detriment of his employer, thereby depriving it of

16   "intangible" honest services.  The case against him is not "an honest-services case dressed in the garb

17   of" property fraud.  *Yates*, 16 F.4th at 268.  Instead, he has been accused of defrauding his employer's

18   contractual counterparties: Uber's drivers.  *Kelly* and *Yates* simply do not apply, and their reasoning

19   cannot be stretched to cover these allegations.

20        To counter this conclusion, Defendant plucks a few sentences out of context, ignores the

21   underlying doctrine, and argues that those stray clauses justify avoiding a jury.  As explained below,

22   even if those stray clauses could be divorced from their context, Defendant is still forced to tweak them

23   and misstate the alleged facts in order to corral a colorable argument for dismissal.

24        **1.     Fraud against Uber's drivers was not an "incidental byproduct" of the
                   scheme.**

25

26        Defendant's first argument relies on *Kelly*'s holding that "property must play more than some bit

27   part in a scheme: It must be an object of the fraud.  Or put differently, a property fraud conviction cannot

28

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                                          6

1    stand when the loss to the victim is only an incidental byproduct of the scheme."  140 S. Ct. at 1573.

2    This argument fails for two reasons.  *First*, as explained at length above, *Kelly*'s holding is

3    explicitly premised on a concern that a scheme in fact motivated by some form of corruption, and thus

4    beyond the scope of federal fraud, can be recast as a financial fraud and thus swept back into the ambit

5    of federal criminal law.[1]  That concern does not apply here.  The case against defendant alleges a pure

6    property fraud, not some form of corruption or self-dealing.  Defendant is accused of defrauding Uber's

7    drivers out of money.  That is property fraud, pure and simple.  There is no lurking concern—as there

8    was in *Kelly* and in *Yates*—that the "real" offense is some regulatory or honest-service-type offense that

9    lies beyond the scope of federal criminal law but is being improperly recast as property fraud.

10   *Second*, Defendant's motion explicitly invites the Court to weigh the evidence, which is

11   forbidden in a motion to dismiss.  He argues that "[n]ot a single witness statement, email, text, or other

12   contemporaneous document produced to the defense so much as hints that Sullivan or others at Uber

13   responsible for addressing the 2016 Incident gave any thought to the drivers' service fees." Mot. at 7.

14   But Defendant cannot seek summary judgment in a criminal case, and the Court is forbidden from

15   considering "evidence not appearing on the face of the indictment." *Jensen*, 93 F.3d at 669.  And in any

16   event, defendants in fraud cases do not often announce in the written record their intent to defraud

17   someone.  "It is settled law that intent to defraud may be established by circumstantial evidence."

18   *United States v. Sullivan*, 522 F.3d 967 (9th Cir. 2008) (citation and internal quotation marks omitted).

19   Moreover, such an intent "may be inferred from misrepresentations made by the defendants, and the

20   scheme itself may be probative circumstantial evidence of an intent to defraud." *Id.*  The government is

21   entitled to give a jury the opportunity to make those conclusions.

22   The Superseding Indictment alleges that an object of the scheme was to "obtain money and

23   property by means of" fraud, and that the "money and property" included the service fees paid by

24   drivers to Uber.  ¶¶ 6, 7.  *Kelly*, even assuming it applies, requires simply that property "be an object of

25   the fraud." 140 S. Ct. at 1573 (internal quotation marks omitted).  Defendant's argument in his motion

26

27   [1] *See Kelly*, 140 S.Ct at 1574 ("Much of governance involves (as it did here) regulatory choice.
     If U.S. Attorneys could prosecute as property fraud every lie a state or local official tells in making

28   sucha  decision, the result would be . . . a sweeping expansion of federal criminal jurisdiction.)

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                                    7

1  occasionally slips and suggests that property must be the "only" object in order to survive *Kelly*.[2]  That

2  is wrong.  A defendant "may have had multiple objectives, but property need only be '*an* object' of their

3  scheme" *United States v. Gatto*, 986 F.3d 104, 116 (2d Cir. 2021) (citing *Kelly*, emphasis in original).

4  Because the fraud on the drivers was "at the *center* of [Defendant's] plan," *id.* (emphasis in original),

5  there is no *Kelly* problem.

6  **2.      Fraud against Uber's drivers is not analogous to "maintenance" of a**
         **defendant's salary.**

7

8  Defendant's next argument relies primarily on *United States v. Yates*, and it fails for the same

9  reasons as his first.

10  **(i)      *Yates* has no bearing on property fraud against third parties.**

11  As explained above, the relevant holding in *Yates* relied primarily on the Supreme Court's prior

12  holding in *Skilling*, which held that maintenance of salary was insufficient for an honest-services-fraud

13  conviction.  16 F.4th at 267.  *Yates* rejected an alternative theory that would charge the same conduct

14  under the wire fraud statute, explaining that "[p]ermitting the government to recharacterize schemes to

15  defraud an employer of one's honest services . . . as schemes to deprive the employer of a property

16  interest in the employee's continued receipt of a salary would work an impermissible 'end-run' around

17  the Court's holding in *Skilling*."  *Id.*  But its holding was limited to this context:  to schemes "whose

18  object is to deceive an employer while continuing to draw an existing salary—essentially, avoiding

19  being fired."  *Id.* at 266.

20  This case does not involve deceit of an employer, and *Yates* therefore does not apply.  The

21  Superseding Indictment does not allege, either explicitly or implicitly, that Defendant fraudulently

22  deprived his employer of its right to his honest services.  Instead, the Superseding Indictment alleges

23  that Defendant sought to defraud a large number of third parties—Uber's drivers—out of money or

24  property.  *Yates* has no bearing on such an allegation.

25  For that reason, the allegations in the Superseding Indictment also do not pose the risks that

26

27  ───────────────────
    [2] *See* Mot. at 7 ("Not a scrap of evidence suggests that maintaining such fees was *the* 'object of

28  Sullivan's activities." (emphasis added)).

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                                          8

1    *Yates* was concerned about.  As explained above, *Yates* concluded that the allegations in that case would

2    be materially indistinguishable from a lazy employee lying to keep his job, 16 F.4th at 267, and that

3    such a broad reading would criminalize "a wide range of commonplace conduct," *id.* That concern does

4    not exist here.  The only lesson in the relevant allegations in the Superseding Indictment is that

5    defrauding a company's contractual counterparties out of their money is illegal.  But that is nothing new,

6    and it does not raise the vagueness concerns cited by *Yates.*

7            This point is neatly illustrated by the one additional case cited by Defendant in support of this

8    argument.  He notes that the U.S. District Court for the District of Columbia recently applied *Yates* in

9    dismissing a wire fraud charge.  Mot. at 8; *see United States v. Guertin*, No. 1:21-CR-262 (TNM), 2022

10   WL 203467 (D.D.C. Jan. 24, 2022).  But *Guertin*, like *Yates* and unlike this case, involved deception of

11   an employer.  And *Guertin*, like *Yates*, cited to prior honest-services caselaw.  It based its decision on

12   the fact that the allegations in that case were "just private-sector honest-services fraud—a case in which

13   the employee's criminal conduct arises out of his continued representation to the employer that he is

14   honest and loyal to the employer's interest." *Id.* at 5.  Again, that is not this case, and *Yates* does not

15   apply.

16                    **(ii)        The Superseding Indictment does not allege "salary maintenance."**

17           Even if the holding in *Yates* applied to the allegations in the Superseding Indictment, the facts

18   differ.   And the fact dependence of the analysis illustrates precisely why this issue cannot be settled via

19   a motion to dismiss. *Yates*, after all, was not an appeal from a motion to dismiss.  It was an appeal from

20   a jury verdict in which the factual record was fully explored.

21           *Yates* concerned a "scheme whose object is to deceive an employer while continuing to draw an

22   existing salary—essentially, avoiding being fired." 16 F.4th at 266.  Defendant argues that Uber's

23   drivers are similarly situated to an employee, and that the alleged scheme was simply to "*maintain*

24   existing drivers and their associated service fees, not to *obtain* fees from new drivers or increased fees

25   from existing drivers." Mot. at 8 (emphasis in original).  Setting aside for a moment the identity of the

26   victim—whether an employer, as in *Yates*, or a contractual counterparty, as in the Superseding

27   Indictment—Defendant misstates the allegations in the Superseding Indictment and speculates without

28
OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                                    9

1   foundation on what the evidence at trial will establish.  The Superseding Indictment clearly alleges that

2   Uber's drivers are <u>not</u> employees.  On the contrary, the relevant contracts provide that Uber acted "as

3   the drivers' agent in collecting fares from the users of Uber's platform," and that the drivers "were not

4   promised a traditional wage" as would be an employee."  ¶ 8.  Uber's drivers therefore did not have "an

5   existing salary," as in *Yates*, and neither did Uber have an entitlement to amount of fees.  A driver was

6   entitled to "use" Uber's platform, but there was no obligation to do so and no set amount of a fee that

7   could be "maintained."  The government anticipates that the evidence at trial will differ substantially

8   from Defendant's speculation, since drivers maintained the freedom to drive frequently, infrequently, or

9   not at all, under the relevant contracts.  Because this Court cannot consider evidence beyond the four

10  corners of the indictment, the motion must be denied.

11         In effect, Defendant's distortion of *Yates* would impose a new and unjustified hurdle on all

12  manner of fraud cases.  Imagine a customer who purchases widgets from a variety of suppliers,

13  including Company A.  One day, a representative of Company A tells the customers that its widgets

14  work twice as well as the competitors.  That claim is knowingly false.  According to Defendant, because

15  the customer had previously purchased widgets from Company A, it was simply "maintaining" its status

16  as a customer and could not be defrauded.  *Yates* surely did not work such a dramatic change in fraud

17  cases, and certainly not to support summary dismissal of charges.

18  **II.      The Superseding Indictment does not violate the convergence requirement.**

19         Defendant next argues that the affirmative misrepresentation theory alleged in the Superseding

20  Indictment violates the convergence requirement as articulated in *United States v. Lew*, 875 F.2d 219

21  (9th Cir. 1989).  Once again, Defendant relies on a single clause plucked out of context, and he ignores

22  more recent caselaw that undermines his argument.  *See* Mot. at 9.  The only Ninth Circuit case cited by

23  Defendant is *Lew*, which stands for the general proposition that a defendant's "intent must be to obtain

24  money or property from the one who is deceived."  875 F.2d at 221.  From this, Defendant extrapolates

25  that each misrepresentation at issue must be directly communicated to the victim.  Not so.  More recent

26  caselaw confirms that a defendant "need not have made a misrepresentation directly to Microsoft in

27  order to be guilty of mail and wire fraud."  *United States v. Ali*, 620 F.3d 1062, 1070 (9th Cir. 2010).

28

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                                        10

1    In *Ali*, the defendants were convicted of defrauding Microsoft.  The defendants had first sought

2    special status with Microsoft that would grant them preferential pricing, in which they made

3    misrepresentations to Microsoft.  *Id.* at 1065.  After Microsoft cancelled that status, the defendants

4    embarked on a new scheme, in which they purchased under false pretenses companies that already had

5    preferential pricing, and then used the status of those purchased companies in order to get better prices.

6    In this second phase of the scheme, the defendants did not make any misrepresentations to Microsoft.

7    *Id.*.  Nevertheless, the Court had no trouble concluding that the second phase was "part of a larger

8    scheme to defraud Microsoft, so Defendants need not had made a misrepresentation directly to

9    Microsoft in order to be guilty of mail and wire fraud." *Id.* at 1070.

10    As Judge Davila explain in *United States v. Holmes*, *Ali* and *Lew* read together simply establish

11    that "the indictment must show that the defendant intended to deprive the alleged victim."  2020 WL

12    666563, at *18.  The Superseding Indictment passes that test.  The superseding indictment alleges that

13    this misrepresentation was designed "to ensure that Uber's drivers and others did not learn the true

14    nature of the breach."  ¶ 10.  In other words, the scheme included an effort to insert false claims into

15    corporate records in order to maintain the deception of Uber's drivers.  Defendant's later statements to

16    Uber's new CEO were similarly part of the broader effort to ensure that Uber's drivers (and others)

17    remained unaware of the 2016 Data Breach.  The problem cited by the court in *Holmes*, by contrast, was

18    that as to some alleged victims of the scheme, it was actually a third party whose "money or property"

19    was on the line.

20    More broadly, Defendant's argument on this point misstates the government's theory as

21    articulated in the Superseding Indictment.  Defendant argues that the "indictment does not allege that

22    Sullivan intended the drivers to become aware of, or to be deceived by, the alleged misrepresentations."

23    Mot. at 10.  That is simply incorrect.  Paragraph 10 plainly alleges that Defendant made "material

24    misrepresentations of fact to ensure that Uber's drivers and others did not learn the true nature of the

25    breach." ¶ 10.  Taken together, the Superseding Indictment alleges a broad scheme to defraud Uber's

26    drivers, among other criminal goals.  The scheme involved omissions of material fact despite a statutory

27    duty to disclose, and it involved related misrepresentations designed "to ensure that Uber's drivers and

28

1   other did not learn the true nature of the breach." *Id.*

2   **III.    Defendant was responsible for the Uber's failure to follow state law.**

3          The Superseding Indictment alleges that "SULLIVAN was aware that California state law at the

4   time contained certain provisions obligating businesses in California to notify affected California

5   residents of data breaches under certain circumstances." ¶ 8.  It further alleges that "[i]n the wake of the

6   2016 Data Breach, SULLIVAN took measures to ensure that drivers did not receive the notification

7   required by state law," and that SULLIVAN at the time "had been aware of, and had participated in,

8   Uber's efforts to notify certain individuals" of a prior data breach.  *Id.*

9          Defendant does not dispute the scope of California state law as alleged in the Superseding

10  Indictment.  Instead, he argues that he cannot be liable for an omission if the duty in question did not run

11  to him personally.  Neither precedent nor common sense supports such a limitation.  Defendant's only

12  citation is to *United States v. Shields*, but the precise sentence quoted in the Motion does not appear in

13  that opinion.  *See* Mot. at 10.  And while the opinion *Shields* does indeed a *similar* statement, the Court

14  in that passage is simply referring to the appellant's argument, not to the Court's holding.[3]  *See* 844 F.3d

15  819, 822 (9th Cir. 2016).  In its analysis, *Shields* does not include the limitation that Defendant relies on,

16  namely that the duty in question must run directly to the defendant.  Instead, *Shields* held that "a

17  nondisclosure can support a wire fraud charge only when *there exists* an independent duty that has been

18  breached by the person so charged."  *Id.* at 822 (internal alterations omitted and emphasis added).  The

19  question is not to whom, precisely, the duty runs, but rather whether the defendant has breached a duty.

20  As alleged in the Superseding Indictment, Defendant knowingly breached a duty owed to Uber's drivers.

21         It should be noted that, not only is Defendant's argument on this point unsupported in precedent,

22  it also makes little sense.  In effect, Defendant asks for an immunity unique to corporate officers and

23  employees.  After all, a corporation can only act through its employees.  There is no reason to immunize

24  those employees if they knowingly violate the corporation's duties in the course of a scheme to defraud.

25

26         [3] *Shields*, 844 F.3d at 822 ("*Defendants argue* that their wire fraud convictions should be

27  reversed because the court erred in not instructing the jury that in order to find defendants guilty based
    on a material non-disclosure, it must first find that defendants had a duty to disclose the omitted

28  information." (emphasis added))

1    Indeed, Ninth Circuit law provides that "anyone who knowingly and intentionally participates in the

2    execution of a fraudulent scheme comes within the prohibition of the mail and wire fraud statutes

3    regardless of whether the defendant devised the scheme." *United States v. Holden,* 908 F.3d 395, 400

4    (9th Cir. 2018).  Defendant's invented limitation for corporate officers is flatly inconsistent with *Holden*,

5    as it would restrict liability only to a particular individual or entity in the scheme and absolve any other

6    knowing participant, regardless of their level of culpability and intent.  There is no justification for such

7    a limitation.

8    **IV.     The government's fraud theory sits squarely within established Ninth Circuit law.**

9            As a last effort, Defendant argues that the alleged crime should not, in fact, be a crime.  In

10   support, Defendant cites—once again—to an honest-services fraud case.  He argues that the Court

11   should not "approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear

12   statement by Congress."  *Cleveland v. United States*, 531 U.S. 12 (2000).  *Cleveland*, like the various

13   honest-services cases discussed above, expressed concern that without limitations the government's

14   theory in that case "would subject to federal mail fraud prosecution a wide range of conduct traditionally

15   regulated by state and local authorities."  *Id.*  But the Superseding Indictment poses no such risk.  Once

16   again (and for the last time), this is not an honest-services case.  There is no risk of prosecutors seeking

17   to regulate "good governance" or generalized honesty via data breach cases.  Each fraud case turns on a

18   unique misrepresentation, but each unique example of deception does not threaten to explode the scope

19   of federal criminal fraud.

20           Relatedly, Defendant argues that it is for some reason improper for an omissions fraud case to

21   rely on a duty imposed by state law.  Defendant claims that because California's regulatory regime (like

22   that of other states) chooses not to criminalize failure the failure to report a data breach, it would be

23   improper for that failure to lead to a criminal liability.  Defendant's argument is only viable if one

24   ignores decades of Ninth Circuit law.  Omission-fraud cases are almost *always* premised on a duty

25   established either in state civil law or through an even more nebulous course of dealing.  *See Chiarella*

26   *v. United States*, 445 U.S. 222, 230 (1980) (holding, in a securities fraud case, that "a relationship of

27   trust and confidence" is required to create a duty to disclose); *United States v. Laurienti*, 611 F.3d 530,

28

OPPOSITION TO MOTION TO DISMISS
3:20-CR-337 WHO                                          13

543 (9th Cir. 2010) (holding that a broker had a "trust relationship" with a client and that court erred by not instructing on that element); *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984) (affirming conviction in omissions-fraud case where duty was imposed by civil statute to notify copyright holder). *Shields* itself explained that "the relationship creating a duty to disclose may be a formal fiduciary relationship, or an informal trusting relationship . . . ." 844 F.3d at 823. In every one of these cases, the Ninth Circuit contemplated federal criminal fraud liability regardless of whether the underlying duty created criminal liability. If Defendant's argument were correct and "plain statutory language" were required before a civil or regulatory duty could give rise to omissions fraud, all of these cases would have been differently. They were not, and they control the outcome in this case.

Defendant's crucial error is the suggestion that the government's theory simply criminalizes state regulatory provisions and thereby upsets the delicate balance struck by those regimes. That is false. Federal criminal liability arises only when <u>all</u> the elements of wire fraud are satisfied. It is obviously not sufficient to simply identify a breach and a failure to disclose; the government must also prove, beyond a reasonable doubt, *scienter*, materiality, and all the remaining elements of the crime. Those remaining elements ensure that federal criminal statute remain firmly rooted traditional fraud and does not disrupt any statute regulatory apparatus. Just as prior omissions fraud cases premised on fiduciary duties did not upset the common-law balance of duties and limitations in tort law, neither does a fraud allegation relying in part on a regulatory notification regime upset the balance in that regime.

Defendant is also incorrect to suggest that California's data breach regulations apply only by "happenstance" in this case. Mot. at 15. Defendant worked in California for a company headquartered in California. The Superseding Indictment specifically alleges that "SULLIVAN was aware that California state law at the time contained certain provisions obligating businesses in California to notify affected California residents of data breaches under certain circumstances." SI ¶ 8. It further alleges that Defendant "had been aware of, and had participated in, Uber's efforts to notify certain individuals of the 2014 Data Breach." *Id.* This is no mere happenstance. To the extent Defendant is concerned

//

//

1   about defendants getting roped into far-flung jurisdictions, that is simply not this case.

2                                   **CONCLUSION**

3          For the foregoing reasons, Defendant's motion to dismiss should be denied.

4

5   DATED:  May 2, 2022                              Respectfully submitted,

6

7                                                   STEPHANIE M. HINDS
                                                    United States Attorney

8
                                                    _____/s/_____
9                                                   ANDREW F. DAWSON
                                                    Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28