DAVID H. ANGELI (admitted *pro hac vice*)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
URSULA LALOVIC (Cal. Bar No. 215551)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; tyler@angelilaw.com; michelle@angelilaw.com;
    ursula@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, Washington 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cr-00337-WHO |
| Plaintiff, | |
| | DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE |
| v. | |
| JOSEPH SULLIVAN, | Date: August 22, 2022 |
| Defendant. | Time: 2:00 p.m. |
| | Crtrm: 2, 17th floor |
| | Hon. William H. Orrick |

DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

## NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE that on August 22, 2022 at 2 p.m., or at such later date and time as the Court may order, in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William H. Orrick, Defendant Joseph Sullivan will and hereby does move for an order excluding the following from trial:

1.      Evidence of guilty pleas and related documents, including plea and cooperation agreements, for government witnesses Brandon Glover and Vasile Mereacre (collectively, "the hackers"). At a minimum, the Court should exclude the so-called "truth-telling" provisions of the hackers' agreements.

2.      Testimony or evidence concerning the legal significance of the November 2016 cybersecurity incident at the heart of this case. This motion includes, but is not limited to, the hackers' and any other witnesses' characterizations of the 2016 Incident as "extortion," a situation involving a demand for "ransom," a "conspiracy to illegally obtain" data, a "felony," or a "data breach" under California or other state law.

3.      Brandon Glover's statement that "[i]t was obvious to [him] then that Uber was trying to hide the second breach."

4.      Testimony or evidence concerning any of the hackers' other allegedly criminal activity, including, for example, their participation in other bug bounty programs or other cybersecurity incidents.

5.      Testimony or evidence relating to the person identified as "Individual One" in the hackers' plea agreements, including any testimony or evidence to the effect that Individual One had a copy of the Uber data at the heart of the 2016 Incident.

In support of these motions, Sullivan relies on the following memorandum of points and authorities, the accompanying declaration of David H. Angeli, the documents in the record, and such other evidence and argument as may be presented to the Court.

DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO
i

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# TABLE OF CONTENTS

NOTICE OF MOTIONS AND MOTIONS.................................................................... i

TABLE OF CONTENTS......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

    I.     MOTION IN LIMINE NO. 1: Evidence of guilty pleas and related
          documents, including plea and cooperation agreements, for the hackers................1

          A.    Background ...........................................................................................1

          B.    Argument ...............................................................................................2

    II.    MOTION IN LIMINE NO. 2: Testimony or evidence concerning the legal
          significance of the 2016 Incident. ..........................................................................8

          A.    Background ...........................................................................................8

          B.    Argument .............................................................................................10

    III.   MOTION IN LIMINE NO. 3: Brandon Glover's statement that "[i]t was
          obvious to [him] then that Uber was trying to hide the second breach." ...............15

    IV.   MOTION IN LIMINE NO. 4: Testimony or evidence concerning any of
          the hackers' other allegedly criminal activity, including, for example, their
          participation in other bug bounty programs or other cybersecurity
          incidents. .............................................................................................................17

    V.    MOTION IN LIMINE NO. 5: Testimony or evidence relating to the
          person identified as "Individual One" in the hackers' plea agreements,
          including any testimony or evidence to the effect that Individual One had a
          copy of the Uber data at the heart of the 2016 Incident........................................19

          A.    Background .........................................................................................19

          B.    Argument .............................................................................................19

CONCLUSION.....................................................................................................22

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# TABLE OF AUTHORITIES

**Cases**

*Coca-Cola Co. v. Overland, Inc.*,
   692 F.2d 1250 (9th Cir. 1982) ......................................................................15, 16

*Cummings v. Worktap, Inc.*,
   No. C 17-6246 SBA, 2019 WL 4221652 (N.D. Cal. Sept. 4, 2019)......................16

*DiBella v. Hopkins*,
   403 F.3d 102 (2d Cir. 2005)...........................................................................13

*Lancey v. United States*,
   356 F.2d 407 (9th Cir. 1966) ........................................................................20

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) .......................................................................13

*Sharif v. Picone*,
   740 F.3d 263 (3d Cir. 2014)............................................................................5

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
   927 F. Supp. 2d 1069 (D. Or. 2013) ...............................................................16

*State v. Myers*,
   244 Neb. 905 (1994) ....................................................................................14

*Tennison v. Circus Circus Enterprises, Inc.*,
   244 F.3d 684 (9th Cir. 2001) .........................................................................17

*United States v. Anderson*,
   532 F.2d 1218 (9th Cir. 1976) .........................................................................2

*United States v. Coss*,
   677 F.3d 278 (6th Cir. 2012) .......................................................................6, 14

*United States v. Cox*,
   633 F.2d 871 (9th Cir. 1980) .....................................................................15, 16

*United States v. Dominguez*,
   CR-12-0834 EMC, 2014 U.S. Dist. LEXIS 13906 (N.D. Cal. Feb. 4, 2014)...........7

*United States v. Gas Pipe, Inc.*,
   Case No. 3:14-cr-298-M (N.D. Texas Sept. 21, 2018)..........................................2

*United States v. Gomez*,
   617 F.3d 88 (2d Cir. 2010)..........................................................................5, 12

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*United States v. Graham,*
   981 F.3d 1254 (11th Cir. 2020) ........................................................................ *passim*

*United States v. Griego,*
   837 F.3d 520 (5th Cir. 2016) ........................................................................9

*United States v. Gullo,*
   502 F.2d 759 (3d Cir. 1974)........................................................................6

*United States v. Halbert,*
   640 F.2d 1000 (9th Cir. 1981) ...............................................................1, 2, 3

*United States v. Hill,*
   953 F.2d 452 (9th Cir. 1991) ........................................................................5

*United States v. Kaluza,*
   Case No. 2:12-cr-265-SRD (E.D. La. Feb. 3, 2016)......................................2

*United States v. Kay,*
   513 F.3d 432 (5th Cir. 2007) ........................................................................9

*United States v. McIver,*
   470 F.3d 550 (4th Cir. 2006) ........................................................................13

*United States v. Miller,*
   Case No. 3:15-cr-234-CRB (N.D. Cal. Dec. 14, 2021) ..................................2

*United States v. Olson,*
   856 F.3d 1216 (9th Cir. 2017) ..............................................................5, 9, 12, 19

*United States v. Prescott,*
   581 F.2d 1343 (9th Cir. 1978) ........................................................................5

*United States v. Shaw,*
   829 F.2d 714 (9th Cir. 1987) ........................................................................7

*United States v. Smith,*
   790 F.2d 789 (9th Cir. 1986) ...............................................................1, 2, 3

*United States v. Universal Rehabilitation Services,*
   205 F.3d 657 (3d Cir. 2000)...............................................................2, 6

*United States v. Wallace,*
   848 F.2d 1464 (9th Cir. 1988) ........................................................................7

*United States v. Waters,*
   627 F.3d 345 (9th Cir. 2010) ........................................................................21

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*United States v. Wetterlin*,
    583 F.2d 346 (7th Cir. 1978) ................................................................................... 14

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ............................................................... 13, 14

**Statutes**

18 U.S.C. § 4 .............................................................................................. 8, 9, 20

18 U.S.C. § 1030(b) ............................................................................................. 1

18 U.S.C. § 1030(a)(7)(B) .................................................................................... 1

18 U.S.C. § 1030(c)(3)(A) .................................................................................... 1

18 U.S.C. § 1343 .................................................................................................. 8

18 U.S.C. § 1505 .......................................................................................... 8, 9, 20

26 U.S.C. § 7212(a) ........................................................................................... 10

Cal. Civil Code § 1798.82 ............................................................................... 8, 14

**Rules**

Fed. R. Evid. 401 ....................................................................................... *passim*

Fed. R. Evid. 402 ......................................................................................... 13, 15

Fed. R. Evid. 403 ....................................................................................... *passim*

Fed. R. Evid. 404 .............................................................................................. 17

Fed. R. Evid. 404(b) ........................................................................................... 5

Fed. R. Evid. 404(b)(1) ..................................................................................... 18

Fed. R. Evid. 602 .................................................................................... 19, 20, 21

Fed. R. Evid. 608(b) ........................................................................................... 2

Fed. R. Evid. 609(a) ........................................................................................... 2

Fed. R. Evid. 701 ....................................................................................... *passim*

Fed. R. Evid. 702 ........................................................................................... 8, 13

Fed. R. Evid. 801 .................................................................................... 19, 20, 21

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

Fed. R. Evid. 802 ...................................................................................................19, 20, 21

**Other authorities**

A. Suderman, "Cyberattacks concerning to most in US: Pearson/AP-NORC poll,"
   *The Associated Press* (October 11, 2021) ................................................................12

James Lindgren, *Unraveling the Paradox of Blackmail*,
   84 COLUM. L. REV. 670 (1984) .............................................................................6

Jane K. Winn, *Are "Better" Security Breach Notification Laws Possible?*,
   24 BERKELEY TECH. L.J. 1133 (2009) .....................................................................14

United States Court of Appeals for the Ninth Circuit, Manual of Model Criminal
   Jury Instructions, Instruction 3.9 (2010 ed., updated 2021) ......................................4

United States Court of Appeals for the Ninth Circuit, Manual of Model Criminal
   Jury Instructions, Instruction 8.0A ("Misprision of Felony") (2010 ed.,
   updated 2021)...................................................................................................9

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.    MOTION IN LIMINE NO. 1: Evidence of guilty pleas and related documents, including plea and cooperation agreements, for the hackers.**

Sullivan moves under Federal Rule of Evidence 403 to exclude evidence of (1) the hackers' guilty pleas and related documents, including plea agreements, and (2) at a minimum, the so-called "truth-telling" provisions of the hackers' plea agreements. Sullivan certifies that, if this motion is granted, he will not attempt, on cross-examination or otherwise, to impeach the hackers with evidence of their guilty pleas or their agreements with the government.

### A.    Background

On November 12, 2019, the hackers pled guilty to a one-count superseding information. The information charged the hackers under 18 U.S.C. § 1030(b) with conspiring to engage in extortion of Uber and two other companies using computers, in violation of 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A). (Angeli Decl. ¶ 2, Ex. 1 (Superseding Information (ECF No. 46), *United States v. Brandon Charles Glover and Vasile Mereacre*, Case No. 5:18-cr-348-BLF (N.D. Cal. Oct. 30, 2019)) at 2-3, ¶¶ 11-12.) The offense to which the hackers pled guilty is the same offense, and is based on the same conduct, that Sullivan is charged in the misprision count with failing to report. (*See* ECF No. 71 at 4-5, ¶ 14.)

The hackers pled guilty under plea agreements. (Angeli Decl. ¶ 3, Ex. 2 (Glover's plea agreement) at 5; *id*. ¶ 4, Ex. 3 (Mereacre's plea agreement) at 5.) The agreements included, among other things, so-called "truth-telling" provisions in which the hackers agreed to "respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury, or at any trial or other proceeding" and to "testify truthfully at any grand jury, court, or other proceeding as requested by the government." (*See id*. ¶ 3, Ex. 2 at 5; *id*. ¶ 4, Ex. 3 at 5.)

For the reasons that follow, Sullivan seeks to exclude evidence of (1) the hackers' guilty pleas and related documents, including plea agreements, and (2) at a minimum, the so-called "truth-telling" provisions of the hackers' agreements with the government.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**B.      Argument**

**1.      The Court should exclude evidence of the hackers' guilty pleas and related documents, including plea agreements.**

Under Rule 403, the Court must determine whether the probative value of the guilty plea evidence is "substantially outweighed" by the danger of "unfair prejudice." As we discuss below, the hackers' guilty pleas and plea agreements have little or no probative value when the defense renounces their use for impeachment purposes, and they have significant unfair prejudicial impact.

**a.      Probative Value**

The law is settled that "evidence of a codefendant's guilty plea 'may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial.'" *United States v. Smith*, 790 F.2d 789, 793 (9th Cir. 1986) (quoting *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) (per curiam)). The Ninth Circuit has suggested, however, that under some circumstances the district court may exercise its discretion to admit prosecution witnesses' guilty pleas on direct examination (with a limiting instruction) for reasons other than to establish the defendant's guilt. None of those reasons applies here.

First, the court of appeals permits the government to "draw the sting" of anticipated impeachment by the defense. When the defense intends to cross-examine the witness about his guilty plea and his incentives to favor the government, it is only fair to permit the government to elicit the evidence on direct. Otherwise, the jury might be left with the misleading impression that the prosecution is trying to hide the witness's bias. *See*, *e.g.*, *Halbert*, 640 F.2d at 1004–05; *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976). That rationale has no application when, as here, the defense categorically renounces any intention to elicit evidence that the witness has pled guilty or has a reason, based on the guilty plea and plea agreement, to favor the government.

Three district courts, including Judge Breyer of this Court, have recently recognized that such a commitment by the defense eliminates any basis for the government to present evidence

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

of prosecution witnesses' guilty pleas, at least unless events at trial make it necessary for the government to impeach its own witnesses or the defense otherwise opens the door. *See United States v. Robert Kaluza*, Case No. 2:12-cr-265-SRD, Doc. 376, Order and Reasons, at 8–9 (E.D. La. Feb. 3, 2016) (attached as Exhibit 5 to the Angeli declaration); *United States v. Gas Pipe, Inc., et al.*, Case No. 3:14-cr-298-M, Doc. 1005, Order, at 2-3 (N.D. Texas Sept. 21, 2018) (attached as Exhibit 6 to the Angeli declaration); *United States v. David Miller et al.*, Case No. 3:15-cr-234-CRB, Docs. 1544 (motion to exclude guilty pleas), 1687 (text-only docket entry that motion 1544 was granted) (N.D. Cal. Dec. 14, 2021) (Breyer, J.) (attached as Exhibit 7 to the Angeli declaration).[1]

Second, the Ninth Circuit has recognized the possibility that the prosecution may elicit its witness's guilty plea "'to support the reasonableness of the witness'[s] claim to firsthand knowledge because of admitted participation in the very conduct which is relevant.'" *Smith*, 790 F.2d at 793 (quoting *Halbert*, 640 F.2d at 1005). This rationale is hard to understand. As Judge Roth of the Third Circuit observed in dissent:

> I am left wondering, however, how the introduction of a witness's guilty plea into evidence establishes the basis for his or her firsthand knowledge of the crime. Presumably, all that the introduction of the guilty plea establishes is that the witness pleaded guilty. It is the witness's testimony itself that establishes the basis for his or her firsthand knowledge of the crime—the witness has firsthand knowledge because s/he was present during or participated in the crime, not because s/he pleaded guilty to the crime.

*United States v. Universal Rehabilitation Services*, 205 F.3d 657, 672 (3d Cir. 2000) (en banc) (Roth, J., joined by Becker, C.J., and Sloviter, McKee, and Rendell, JJ., dissenting). In any event, it is unlikely that the defense will dispute the hackers' "claim to firsthand knowledge" as to matters embraced in the factual basis for their guilty pleas. If the defense were to make such a

---

[1] As *Kaluza* and *Gas Pipe* suggest, the defense might open the door to the government's use of a plea on redirect by eliciting testimony on cross-examination inconsistent with the witness's admissions during his plea colloquy. *See, e.g., Halbert*, 640 F.2d at 1006 (defense elicited testimony on cross that witness did not intend to defraud customers he had pleaded guilty to defrauding).

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

suggestion on cross-examination, the government could then ask the Court to bring out the plea on redirect, to the extent (if any) the plea would rebut the defense suggestion.

Third, and more generally, the Ninth Circuit has intimated that the government can elicit its witnesses' guilty pleas "'so that the jury may assess the credibility of the witnesses the government asks them to believe.'" *Smith*, 790 F.2d at 793 (quoting *Halbert*, 640 F.2d at 1005). It is accepted, however, that the fact of a witness's guilty plea and cooperation renders the witness's testimony less, rather than more, believable. *See*, *e.g.*, Fed. R. Evid. 609(a) ("The following rules apply to *attacking* a witness's character for truthfulness by evidence of a criminal conviction[.]" (emphasis added)). The Ninth Circuit pattern instruction on such witnesses alerts the jury to the possibility that the witness's testimony has been influenced by the promise of benefits from the government and directs jurors to view such a witness's testimony "with greater caution than that of other witnesses." United States Court of Appeals for the Ninth Circuit, Manual of Model Criminal Jury Instructions, Instruction 3.9 (2010 ed., updated 2021). It is implausible that the government elicits evidence of pleas out of an altruistic desire to have the jury disbelieve its witnesses. *Cf. Halbert*, 640 F.2d at 1005 (disclaiming "delusions about prosecutorial altruism"). The government may, of course, "draw the sting" if the defense intends to elicit the witness's plea and his hope for a reduced sentence—the first rationale discussed above. But where, as here, the defense eschews any such impeachment, the government has no legitimate basis (absent a need to impeach its own witness, if the witness testifies contrary to his plea) to attack the credibility of its own witnesses. Because the inferences to be drawn from a prosecution witness's guilty plea and cooperation can only undermine his credibility, the defendant should be permitted to forgo presenting that evidence in light of the prejudice that the evidence causes the defense.

In short, other than in the "drawing the sting" circumstance, which does not exist here, the probative value of the hackers' guilty pleas for the government's case is minimal at best.

DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO                                4

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

####     b.      Unfair Prejudice

2      On the other side of the Rule 403 equation, the unfair prejudice from the admission of the

3 guilty pleas is substantial. The Court will, of course, give Ninth Circuit Pattern Instruction 4.9,

4 the standard instruction that the witnesses' pleas cannot be considered as substantive evidence of

5 the defendant's guilt. But the Ninth Circuit has observed that "[w]hen [the facts at issue] are so

6 readily subject to misinterpretation by a jury . . . a curative or protective instruction [is] of

7 dubious value." *United States v. Prescott*, 581 F.2d 1343, 1352 (9th Cir. 1978); *see, e.g.*, *United*

8 *States v. Hill*, 953 F.2d 452, 458 (9th Cir. 1991) (instruction that limited consideration of Rule

9 404(b) evidence to an "irrelevant and prejudicial point" insufficient to cure prejudice). As the

10 Second Circuit noted in finding a limiting instruction insufficient to cure the prejudice from

11 erroneous admission of hearsay evidence, a court should not presume that jurors follow such

12 instructions where they "require[] jurors to perform mental acrobatics." *United States v. Gomez*,

13 617 F.3d 88, 96 (2d Cir. 2010) (quotation omitted). Here, jurors would have to "perform mental

14 acrobatics" to disregard the hackers' guilty pleas as substantive evidence of Sullivan's guilt and

15 confine their consideration of the pleas to the ostensibly permissible purposes above. Particularly

16 when it comes to such loaded and complex terms as those used in the hackers' plea agreements,

17 "[s]uch mental gymnastics may well be beyond the ability of the common man and may be more

18 confusing than helpful to the jury in light of the circumstances." *Sharif v. Picone*, 740 F.3d 263,

19 274 (3d Cir. 2014) (holding that an assault conviction should have been excluded under Rule 403

20 because it "stem[med] from the same incident at issue[,]" which posed "a particular danger" of

21 prejudice).

22      The danger of unfair prejudice is particularly great because Sullivan is charged with

23 misprision with respect to the very felony to which the hackers have pled guilty—conspiracy to

24 commit extortion involving computers in violation of 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A).

25 (*See* ECF No. 71 (Sullivan's Superseding Indictment) at 4–5, ¶ 14; Angeli Decl. ¶ 2, Ex. 1 (the

26 hackers' Superseding Information) at 2–3, ¶¶ 11–12.) The commission of that felony is an

27 element of the misprision charge. Ninth Circuit Pattern Instruction 8.0A; *see also United States*

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017). If the guilty pleas are admitted, jurors will be asked to perform the impossible "mental acrobatics" of ignoring the fact that the hackers have admitted committing the very felony that constitutes an element of the misprision offense. As the Third Circuit has recognized in the analogous context of a guilty plea to conspiring with the defendant:

> The guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial because the crime by definition requires the participation of another. The jury could not fail to appreciate the significance of this and would realize . . . that "it takes two to tango." A plea by a co-conspirator thus presents a unique situation which may require the courts to scrutinize more closely the purported remedial effect of instructions.

*Universal Rehabilitation Services*, 205 F.3d at 669 (quoting *United States v. Gullo*, 502 F.2d 759, 761 (3d Cir. 1974)); *see id*. at 677 (Roth, J., dissenting). The danger of confusion is compounded even further in these circumstances because even trained lawyers and judges often struggle with the concept of extortion. *See United States v. Coss*, 677 F.3d 278, 285 (6th Cir. 2012) ("The law of extortion has always recognized the paradox that extortion often criminalizes the contemporaneous performance of otherwise independently lawful acts. . . . Scholars have struggled to reconcile this paradox[.] . . .  Arguably, none of these scholarly efforts has been entirely successful; the precise contours of what does and does not constitute extortion remain undefined and often riddled with inconsistency and circularity in a variety of criminal contexts." (citing James Lindgren, *Unraveling the Paradox of Blackmail*, 84 COLUM. L. REV. 670 (1984)) (footnote and additional citations omitted)). The prejudice from the hackers testifying that they pled guilty to the very offense that Sullivan is charged with failing to report cannot be overcome by even the most stringent and oft-repeated limiting instructions.[2]

  For these reasons, the hackers' guilty pleas should be excluded from evidence under Rule 403.

---

[2] For this reason, if the Court admits evidence of the hackers' guilty pleas over our objection, it should at least bar any evidence that they pled guilty to the very felony that Sullivan is charged in the misprision count with failing to report.

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

### 2. At a minimum, the Court should exclude the "truth-telling" provisions of the hackers' plea agreements.

Even if the Court admits the hackers' guilty pleas, over our objection, it should exclude under Rule 403 the so-called "truth-telling" provisions of their agreements with the government. As with the hackers' guilty pleas, the defense unequivocally renounces any use of the agreements, or the potential benefits the hackers may obtain under the agreements, to impeach their credibility.

The Ninth Circuit permits the prosecution to elicit the "truth-telling" provision of a witness's agreement with the government *only* "in response to attacks on the witness's credibility because of the plea agreement." *United States v. Wallace*, 848 F.2d 1464, 1474 (9th Cir. 1988); *see, e.g.*, *United States v. Shaw*, 829 F.2d 714, 716-18 (9th Cir. 1987); *United States v. Dominguez*, CR-12-0834 EMC, 2014 U.S. Dist. LEXIS 13906, at *15–*19 (N.D. Cal. Feb. 4, 2014) (citing cases). Because Sullivan will not attack the hackers' credibility because of their agreements with the government, the Court should exclude the "truth-telling" provisions of those agreements.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

## II.     MOTION IN LIMINE NO. 2: Testimony or evidence concerning the legal significance of the 2016 Incident.

Sullivan moves under Federal Rules of Evidence 401, 403, 701, and 702 to exclude any testimony or other evidence concerning the hackers' or any other witness's subjective beliefs concerning the legal significance of the November 2016 cybersecurity incident at the heart of this case (the "2016 Incident"). This motion includes, but is not limited to, the hackers' and any other witnesses' characterizations of the 2016 Incident as "extortion," a situation involving a demand for "ransom," a "conspiracy to illegally obtain" data, or a "felony." It also includes, but is not limited to, testimony and evidence concerning whether the 2016 Incident qualified as a "data breach," whether under California law or the law of any other state.[3] *See, e.g.*, Cal. Civil Code § 1798.82.

### A.     Background

Count 1 of the original indictment alleged that Sullivan, Uber's former Chief Security Officer, sought to conceal the 2016 Incident from the FTC in violation of 18 U.S.C. § 1505. (ECF No. 13 ¶¶ 6–7.) Count 2 alleged further that the 2016 Incident amounted to a violation of various provisions of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and that Sullivan sought improperly to conceal it from "some judge or other person in civil or military authority under the United States" in violation of 18 U.S.C. § 4. (*Id.* ¶¶ 8–9.)

The Superseding Indictment added wire fraud counts (Counts 3 through 5), based on the theory that, with respect to the 2016 Incident, Sullivan sought to defraud persons who drove for Uber, in violation of 18 U.S.C. § 1343. (ECF No. 71 ¶¶ 15–16.) According to the Superseding Indictment, Sullivan did so partly by violating a duty to disclose certain facts about the 2016 Incident that supposedly was imposed on him by California Civil Code § 1798.82, commonly known as California's data breach law. (*See id.* ¶¶ 8–9.) Sullivan moved to dismiss Counts 3 through 5. (ECF No. 107.) On June 28, 2022, the Court denied the motion but held that "the wire fraud cha[r]ges cannot proceed on an omission theory[,]" *i.e.*, on the theory that in failing to

---

[3] Sullivan does not, however, object to the use of the term "data breach" as used in the FTC's civil investigative demand.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

disclose the 2016 Incident, Sullivan violated a duty imposed by California's data breach law. (*See generally* ECF No. 129 at 1, 11–14.) The government later moved to dismiss the three wire fraud counts in their entirety, and the Court granted the motion on August 2, 2022. (*See* ECF Nos. 133 and 134.) Thus, the matter of Sullivan's duties under California's data breach law is no longer a part of this case.

The remaining counts turn largely on, and require the government to prove, *Sullivan's* knowledge of and intent concerning aspects of the 2016 Incident without regard to what California's (or any other state's) data breach statute may require, or what other witnesses may or may not have believed. Count 1 requires the government to prove, among other things, that Sullivan knew that the circumstances of the 2016 Incident required Uber to report it to *the FTC*. *See* 18 U.S.C. § 1505 (prohibiting one from "corruptly . . . obstruct[ing], or imped[ing] or endeavor[ing] to influence, obstruct, or impede, the due and proper administration of the law under which any pending proceeding is being had before any *department or agency of the United States*. . . ." (emphasis added)); *see also United States v. Griego*, 837 F.3d 520, 523 (5th Cir. 2016) ("'[C]orruptly' in the context of § 1505 means 'knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.'" (quoting *United States v. Kay*, 513 F.3d 432, 454 (5th Cir. 2007))). Count 2 requires the government to prove, among other things, that Sullivan knew the hackers had "engaged in conduct that satisfies the essential elements of" the *federal* Computer Fraud and Abuse Act, *Olson*, 856 F.3d at 1225, "that . . . such conduct was a felony,"[4] *id.*, and that he actively "*conceal*[ed]" the same from "some judge or other person in civil or military authority *under the United States*," 18 U.S.C. § 4 (emphasis added); *see also* United States Court of Appeals for the Ninth Circuit, Manual of Model Criminal Jury Instructions, Instruction 8.0A ("Misprision of Felony") (2010 ed., updated 2021) (requiring proof that, *inter alia*, "a *federal* felony was committed," "the defendant failed to notify a *federal*

---

[4] "[T]he term 'felony' is defined as part of the *federal* criminal code as a crime punishable by death or a term of imprisonment exceeding one year." *Olson*, 856 F.3d at 1223 (emphasis added).

DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO                                                                9

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*authority* as soon as possible," and the defendant "did an affirmative act . . . to *conceal* the crime" (emphasis added)). Whatever label California's (civil) data breach law may or may not have attached to the conduct at issue, whatever obligations Uber and/or Sullivan may or may not have had to report that conduct to California authorities, and whatever any other witness may have believed about Uber's reporting obligations is plainly irrelevant to the two remaining Counts in this case.

### B.    Argument

However the government may attempt to prove Sullivan's knowledge and intent, one thing is clear: it may *not* do so using the hackers' or any other witness's opinions of the legal significance of 2016 Incident. Rules 401, 403, and 701 each independently bar that tactic.

### 1.    Rule 401 bars testimony and evidence concerning the 2016 Incident's legal significance because those impressions have nothing to do with any matter before the jury.

Rule 401 bars the government from offering testimony or evidence concerning the legal significance of the 2016 Incident because, as a matter of both law and logic, those impressions have no bearing on any matter the jury will consider. The Eleventh Circuit recently explained as much in closely analogous circumstances. In *United States v. Graham*, 981 F.3d 1254, 1257 (11th Cir. 2020), the defendant was charged with "corruptly endeavoring to obstruct the administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a)[,]" by passing "a fraudulent $3.6 million check known as an international bill of exchange." At trial, the defendant's counsel attempted to elicit testimony from the individual who procured the check for the defendant (a man named "Walker") concerning "whether [Walker] believed that the international bills of exchange 'were valid forms of payment for Graham's taxes,' whether Walker acted 'in good-faith reliance on the advice [a third person] gave' him, and whether he felt he was 'defrauded by'" the third parties from whom the check originated. *Id*. at 1261. None of those questions bore at all on the *defendant's* knowledge or intent, though, so the trial court sustained the government's relevance objections and barred the questioning.

The court of appeals affirmed that ruling. "The question," it noted, "is whether *Walker's*

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

subjective belief that the bills of exchange were or were not genuine made it any more likely that *Graham* thought the bills were valid." *Id.* at 1261 (emphasis in original). The court said no. "Graham did not present evidence that Walker assured him of the instruments' authenticity. Maybe Walker was fooled by [the third parties]; maybe he wasn't. What mattered at trial was what *Graham* knew and thought." *Id.* at 1262 (emphasis in original). "What Walker knew and thought had no bearing on Graham's own intent," the court concluded, "particularly given that no evidence was ever offered to show that Walker expressed these thoughts to Graham." *Id.*

So too here. For example, in his plea agreement, Glover characterized (or, more accurately, acquiesced in the government's characterization of) his activities as a "conspiracy" designed "to illegally obtain" corporate data, and agreed with the government that it amounted to "Extortion involving Computers." (Angeli Decl. ¶ 3, Ex. 2 at 1-3.) Mereacre did the same in his plea agreement. (*Id.* ¶ 4, Ex. 3 at 1-3.) Those opinions, however, have nothing to do with *Sullivan*'s knowledge or intent; by themselves, the hackers' *post-hoc* characterizations of their conduct have no conceivable relevance to any matter before the Court.

The same is true of the government's contention that California's data breach law "required" Sullivan to notify Uber's drivers of the 2016 Incident. (*See* ECF No. 71 ¶ 9.) Particularly given the Court's ruling on Sullivan's motion to dismiss and the government's subsequent abandonment of the wire fraud charges, that legal contention is irrelevant, as is a contention that the incident qualified as a "data breach" under the law of California and/or any other state or in the minds of others.

Those and any other similar statements concerning the legal significance of the 2016 Incident thus have no bearing on "[w]hat matter[s] at trial[,]" namely, "what [Sullivan] knew and thought" at the time regarding the specific issues that are relevant to the two remaining Counts. *See Graham*, 981 F.3d at 1262. They should be excluded under Rule 401.

DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO                                    11

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

2

  **2.**  **Rule 403 independently bars testimony and evidence concerning the 2016 Incident's legal significance, which would be unavoidably confusing and inflammatory.**

  Even if those characterizations of the 2016 Incident's legal significance had some

probative value, they still would flunk Rule 403's test for confusion of the issues and unfair

prejudice. Whether the 2016 Incident amounted to a "felony," a "conspiracy," an act of

"extortion," or a "data breach" under California or other state law is irrelevant to Count 1, which

will not require the jury to pass on those or any other related matters. And, on Count 2, the

question of whether the hackers actually committed some act of extortion in violation of 18

U.S.C. § 1030 is a legal issue that is relevant only insofar as Sullivan *knew* that the hackers done

so. *See Olson*, 856 F.3d at 1225. Other witnesses' *post-hoc* impressions or interpretations of the

2016 Incident's legal significance are not, as a matter of law, probative of Sullivan's knowledge.

*See Graham*, 981 F.3d at 1262. Thus, to permit the government's witnesses to characterize the

2016 Incident in any of the foregoing ways, or to offer other subjective impressions concerning

the legal import of what actually occurred, would invite precisely the sort of "mental acrobatics"

that Rule 403 bars. *Gomez*, 617 F.3d at 96. Jurors would, in other words, need to ask themselves

constantly whether and to what extent those characterizations accurately reflect what they

believe to have been Sullivan's knowledge—which, as explained above, is all that matters, *see*

*Graham*, 981 F.3d at 1262—and then somehow confine their thinking only to those aspects of

the characterizations that do.

  The same is true of characterizations of the 2016 Incident as a "data breach" under state

law, which reflects an issue of both state law and policy about which the overwhelming majority

of Americans appear to be deeply alarmed.[5] As the Court ruled in June, the matter of whether the

2016 Incident qualified as a "data breach" within the meaning of California law is irrelevant to

---

  [5] *See, e.g.*, A. Suderman, "Cyberattacks concerning to most in US: Pearson/AP-NORC poll," *The Associated Press* (October 11, 2021), https://apnews.com/article/joe-biden-technology-business-china-russia-c9a698542ed95bfa49f9cee0e96ef9a6 (reporting on a poll showing "that about 9 in 10 Americans are at least somewhat concerned about hacking that involves their personal information, financial institutions, government agencies or certain utilities" and that "[a]bout two-thirds say they are very or extremely concerned").

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

the government's case. Thus, to characterize the 2016 Incident as a "data breach" within the meaning of any such state law would serve only to inflame and confuse the jury.

The best way to avoid the dangers outlined above is to require the government to stick to facts. Under Rule 403, the Court can and should prohibit its witnesses from characterizing or interpreting the legal significance of the 2016 Incident.

### 3. Rules 701 and 702 also bar testimony and evidence concerning the 2016 Incident's legal significance, which would amount to an inadmissible legal opinion.

Like Rules 401, 402, and 403, Rules 701 and 702 also bar testimony and evidence concerning the 2016 Incident's legal significance, which would amount to an improper legal opinion.

As this Court has recognized, "'instructing the jury as to the applicable law is the distinct and exclusive province of the court.'" *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 679 (N.D. Cal. 2021) (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)). For that reason, a witness's mere legal conclusion "is not 'helpful' as it must be under FRE 701" and is thus inadmissible. *Id.* (quoting *Nationwide Transp.*, 523 F.3d at 1059-60). The same is true if the proponent offers the opinion as expert testimony. *See id.* ("'[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" (quoting *Nationwide Transp.*, 523 F.3d at 1058)). Either way, while "the facts underpinning those conclusions (so long as they are otherwise admissible)" may be received into evidence, "[d]istrict courts may . . . preclude witnesses from relating legal conclusions[.]" *Id.* (citing *Nationwide Transp.*, 523 F.3d at 1060; *see also United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (the trial court properly excluded testimony that "inappropriately drew a legal conclusion by opining that [the plaintiff's] actions amounted to extortion").

Any testimony or evidence that the 2016 Incident amounted to a "felony," a "conspiracy," or "extortion" would violate those principles. None of those terms refer to matters

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    that an ordinary witness might rationally base on her or his perception. *See* Fed. R. Evid. 701(a).

2    Instead, they refer to legal conclusions that are both unhelpful to the jury and necessarily based

3    upon specialized legal knowledge. Fed. R. Evid. 701(b)–(c); *see also Coss*, 677 F.3d at 285–86

4    (discussing "conceptual challenges" in the law of extortion); *United States v. Wetterlin*, 583 F.2d

5    346, 350 (7th Cir. 1978) ("The charge of 'conspiracy' is not a self-explanatory legal term or so

6    simple in meaning that it can be expected or assumed that a lay person understands it."); *State v.*

7    *Myers*, 244 Neb. 905, 910 (1994) ("The word 'felony' is a legal term of art and applies to

8    numerous charges which cannot be said to have a generally understood and accepted meaning to

9    the public at large."), *overruled on other grounds by State v. Burlison*, 255 Neb. 190 (1998). The

10   question of whether the 2016 Incident qualified as a data breach under California Civil Code §

11   1798.82 (or any other authority) likewise calls for a legal conclusion. *See generally* Jane K.

12   Winn, *Are "Better" Security Breach Notification Laws Possible?*, 24 BERKELEY TECH. L.J. 1133

13   (2009) (discussing California's security breach notification law).

14          Those matters are thus the "exclusive province of the court." *Zeiger*, 526 F. Supp 3d. at

15   679. The government's witnesses may testify to the underlying facts, but the Court should

16   preclude them from characterizing those facts in any way that suggests a legal conclusion.

17                                           * * *

18          For all of those reasons, the Court should exclude any testimony or evidence concerning

19   the legal significance of the 2016 Incident.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2222
Facsimile: (503) 227-0880

III.    **MOTION IN LIMINE NO. 3: Brandon Glover's statement that "[i]t was obvious to [him] then that Uber was trying to hide the second breach."**

Sullivan moves under Federal Rules of Evidence 401, 403, and 701 to exclude any testimony or other evidence concerning Glover's statement referenced above. The full statement, which appears in the government's summary of Glover's proffer interview, is as follows:

> After reading the news reports of the Uber data breach, Glover then realized why Uber was so willing to pay them. One of the news reports indicated that the FTC was already negotiating with Uber on a previous data breach. It was obvious to Glover then that Uber was trying to hide the second breach.

(Angeli Decl. ¶ 5, Ex. 4 (attaching the notes of that interview).)

The Court should exclude evidence concerning the statement for substantially the same reasons outlined immediately above. Glover's subjective impression as to why Uber was willing to pay him—which was never communicated to Sullivan—has nothing to do with the charges against Sullivan. *See* Fed. R. Evid. 401–02; *Graham*, 981 F.3d at 1261–62.

Glover's statement also is inadmissible under Rule 701. Myriad courts have held that Rule 701 does not permit a witness to speculate regarding another person's motivations or mindset. In *United States v. Cox*, 633 F.2d 871, 875 (9th Cir. 1980), a witness testified that she had the "impression" based on a conversation with the defendant that he was guilty of the bombmaking offense with which he was charged, even though the defendant "never actually said that[.]" Instead, the defendant told her only that "he knew someone who would blow up cars for fifty dollars" and at one point "show[ed] her a newspaper article concerning the second bombing incident" from which the case arose. *Id.* at 875. The Ninth Circuit found the admission of her testimony concerning her "impression" to be erroneous: the witness's "'understanding' did not aid the triers of fact in their understanding of what the [defendant] had said and done . . . and should not have been admitted." *Id.* at 876. Similarly, in *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982), the defendant attempted to show that the word "Coke" had become generic for purposes of the Lanham Act with affidavits in which its employees testified "that [they] believe that customers ordering 'Coke' are using the term in a generic sense." (Emphasis removed.) The court disagreed: the "employees are not qualified to testify as to what

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

their customers are thinking when using the term 'Coke.'" *Id*. at 1255 (citing Fed. R. Evid. 701); *see also Cummings v. Worktap, Inc.*, No. C 17-6246 SBA, 2019 WL 4221652, at *9 (N.D. Cal. Sept. 4, 2019) (a witness was "not competent to opine on the Individual Defendants' motive for classifying themselves as independent contractors; nor is he competent to opine or speculate on whether their actions were intended to avoid the payment of taxes"); *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." (collecting cases)).

At trial, Glover likewise should not be permitted to speculate about Uber's or Sullivan's thinking regarding the 2016 Incident. As the statement itself reveals, his opinion in that regard is based on nothing more than Uber's willingness to pay him and a news report about a prior Uber security incident then being investigated by the FTC. His conclusion that Uber wanted to "hide" the 2016 Incident no more follows from those facts than did the *Cox* witness's "impression" from her conversation with the defendant. As *Cox* demonstrates, Rule 701 demands more. There, as here, "the facts underlying [the] impression do not rationally lead to the conclusion made" by Glover, which is inadmissible for that separate reason. *Cox*, 633 F.2d at 876.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1     **IV.**     **MOTION IN LIMINE NO. 4: Testimony or evidence concerning any of the hackers'**
        **other allegedly criminal activity, including, for example, their participation in other**
2         **bug bounty programs or other cybersecurity incidents.**

3         Sullivan moves under Federal Rules of Evidence 401, 403, and 404 to exclude any

4 testimony or other evidence concerning other allegedly criminal activity in which the hackers

5 engaged. That evidence includes, but is not necessarily limited to, the hackers' alleged attempts

6 to extort funds from Lynda.com and LinkedIn by improperly accessing their company data. (*See*

7 Angeli Decl. ¶ 3, Ex. 2 at 5–6; *id*. ¶ 4, Ex. 3 at 5–6 (the hackers' plea agreements, in which they

8 discuss those separate incidents).)

9         Evidence concerning the hackers' other conduct has nothing to do with this case and is

10 inadmissible under Rule 401. Sullivan is not charged with any crime arising out of any of those

11 others incidents. As explained above, the defense has categorically renounced any intention to

12 use the hackers' guilty pleas (which include that other conduct) for impeachment purposes. They

13 similarly renounce any intention to offer any other wrongdoing by the hackers, whether charged

14 as a crime or not, as impeachment evidence. *See* Fed. R. Evid. 608(b). Accordingly, evidence

15 concerning other security incidents for which the hackers are said to be responsible will have no

16 bearing on the truth of the government's contention that Sullivan attempted to conceal the 2016

17 Incident. Moreover, if admitted, such evidence would dramatically expand the scope of the trial

18 and would almost certainly would lead to the sorts of "mini trial[s]" that courts routinely exclude

19 under Rule 403. *See*, *e.g.*, *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th

20 Cir. 2001) (affirming the exclusion of evidence that "might have resulted in a 'mini trial,'

21 considering that much of their testimony was disputed by Defendants[,]" on grounds that it

22 "would be an inefficient allocation of trial time" and "would create a significant danger that the

23 jury would base its [decision] on remote events involving other[s] . . . instead of recent events

24 concerning Plaintiffs").

25         Given Sullivan's renunciation of any intent to offer evidence concerning the hackers'

26 other wrongdoing, the only conceivable reason the government would offer such evidence would

27 be to show propensity, *i.e.*, that the hackers' other allegedly criminal conduct makes it more

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

likely that they engaged in criminal conduct in connection with the 2016 Incident. Plainly, the government may not do so. Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The Court should thus exclude any testimony or evidence concerning any of the hackers' other allegedly criminal activity.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**V.     MOTION IN LIMINE NO. 5: Testimony or evidence relating to the person identified as "Individual One" in the hackers' plea agreements, including any testimony or evidence to the effect that Individual One had a copy of the Uber data at the heart of the 2016 Incident.**

Sullivan moves under Federal Rules of Evidence 401, 403, 602, 801, and 802 to exclude any testimony or other evidence relating to "Individual One," who is identified in the hackers' plea agreements.

### A.     Background

In their respective plea agreements, the hackers each indicated that "a third individual ('Individual One') was involved in the Uber data breach." (Angeli Decl. ¶ 3, Ex. 2 at 5 (Glover's plea agreement); *id*. ¶ 4, Ex. 3 at 5 (Mereacre's plea agreement).) "Mereacre shared Uber's Amazon Web Services' credentials with Individual One, which allowed him to access Uber's Amazon Web Services account." (*Id*. ¶ 3, Ex. 2 at 5.) "Individual One is a technically proficient hacker, and he was responsible for identifying the specific archive file that contained the 57 million user records." (*Id*.) The hackers "agreed to split [their] $100,000 payment with Individual One in light of his contribution." (*Id*.) "In the course of his participation, Individual One obtained a copy of the archive file containing Uber's records." (*Id*.) The hackers "requested that Individual One delete his copy, which he said he would do, but [they could not be] certain that he did so." (*Id*.)

Critically, however, the hackers each indicated unequivocally in their plea agreements that "neither . . . ever disclosed to Uber" the fact that Individual One was working with them. (*Id*. ¶ 3, Ex. 2 at 5 (Glover's plea agreement); *see also id*. ¶ 4, Ex. 3 at 5 (Mereacre's plea agreement).)

### B.     Argument

As explained above, only facts of which Sullivan was aware are relevant to the mens rea elements of the charges against him. *See Graham*, 981 F.3d at 1262; *Olson*, 856 F.3d at 1220. As the hackers made clear in their plea agreements, neither Sullivan nor anyone else at Uber was ever aware of Individual One's participation or existence. Testimony and evidence concerning

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1   Individual One can thus have no relevance to Sullivan's mens rea or to any matter before the

2   Court, and should be excluded.

3   Moreover, the hackers' testimony regarding whether Individual One retained the Uber

4   data is flawed in another way: as their respective plea agreements confirm, they have no

5   firsthand knowledge concerning whether Individual One actually deleted the data.  (*Id.* ¶ 3, Ex. 2

6   at 5 (Glover's plea agreement); *id.* ¶ 4, Ex. 3 at 5 (Mereacre's plea agreement).) There is no

7   evidence, then, "sufficient to support a finding that [either] witness has personal knowledge of

8   the matter." Fed. R. Evid. 602. The only evidence that either hacker conceivably could offer on

9   that subject would be inadmissible hearsay. *See* Fed. R. Evid. 801–02. For those additional

10   reasons, they should not be permitted to testify on that subject.

11   The government may contend that Individual One's retention of Uber's data is an

12   example of the sort of harm that can result when a company fails to respond appropriately to a

13   cybersecurity incident. But even if the Court were to accept that premise, the evidence still

14   would be irrelevant. The ultimate fate of the Uber data at the heart of the 2016 Incident has no

15   legal bearing on any of the offenses with which Sullivan is charged. Sullivan is charged with

16   obstructing the FTC's investigation and affirmatively concealing a felony from a federal official;

17   neither the obstruction statute nor the misprision statute requires the government to prove that

18   any particular harm resulted from the alleged failure to do so. *See* 18 U.S.C. §§ 4, 1505; *cf.*

19   *Lancey v. United States*, 356 F.2d 407, 409–10 (9th Cir. 1966) (in a misprision case, the

20   government's independent knowledge of the felony and the identity of the perpetrator are

21   "unimportant" because, as with the issue of harm, "neither one is mentioned as an essential

22   element" of the crime).

23   Against that backdrop, testimony and evidence concerning Individual One would serve

24   no purpose beyond confusing and inflaming the jury. Even questions concerning the hackers'

25   *lack* of knowledge about what ultimately became of Uber's data would imply that perhaps

26   Individual One had not actually deleted it. Regardless of how the government might present it,

27   an invitation for the jury to consider Individual One, or to assess whether the hackers and

DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO

20

Individual One actually deleted the Uber data, would lead to "a grave danger" that the jury's decision will be guided "not by evidence relevant to the particular offense being tried, but rather by evidence that [is] wholly unrelated to these offenses." *United States v. Waters*, 627 F.3d 345, 356–57, 359 (9th Cir. 2010) (the district court erred when it refused to exclude such evidence under Rule 403).

Under Rules 401, 403, 602, 801, and 802, then, the Court should exclude all such testimony and evidence.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

**CONCLUSION**

2       For the foregoing reasons, the Court should exclude the following evidence:

3       1.      Evidence of guilty pleas and related documents, including plea and cooperation

4   agreements, for the hackers. At a minimum, the Court should exclude the so-called "truth-

5   telling" provisions of the hackers' agreements.

6       2.      Testimony or evidence concerning the legal significance of the November 2016

7   cybersecurity incident at the heart of this case. This motion includes, but is not limited to, the

8   hackers' and any other witnesses' characterizations of the 2016 Incident as "extortion," a

9   situation involving a demand for "ransom," a "conspiracy to illegally obtain" data, a "felony," or

10  a "data breach" under California or other state law.

11      3.      Brandon Glover's statement that "[i]t was obvious to [him] then that Uber was

12  trying to hide the second breach."

13      4.      Testimony or evidence concerning any of the hackers' other allegedly criminal

14  activity, including, for example, their participation in other bug bounty programs or other

15  cybersecurity incidents.

16      5.      Testimony or evidence relating to the person identified as "Individual One" in the

17  hackers' plea agreements, including any testimony or evidence to the effect that Individual One

18  had a copy of the Uber data at the heart of the 2016 Incident.

19

20  DATED: August 8, 2022.

21
                                         *s/David H. Angeli*
                                         David H. Angeli
22                                       Tyler P. Francis
                                         Michelle H. Kerin
23                                       Ursula Lalovic
                                         John D. Cline
24

25                                       *Attorneys for Defendant Joseph Sullivan*

26

27

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880