DAVID H. ANGELI (admitted *pro hac vice*)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
URSULA LALOVIĆ (Cal. Bar No. 215551)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; tyler@angelilaw.com; michelle@angelilaw.com;
        ursula@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, Washington 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cr-00337-WHO |
| Plaintiff, | |
| v. | DECLARATION OF DAVID H. ANGELI IN SUPPORT OF DEFENDANT JOSEPH SULLIVAN'S OMNIBUS MOTIONS IN LIMINE |
| JOSEPH SULLIVAN, | |
| Defendant. | |

ANGELI DECL. ISO DEFENDANT JOSEPH SULLIVAN'S
OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

I, David H. Angeli, declare as follows:

1.      I am a member of the Oregon, Washington, Maryland, and District of Columbia Bars and am admitted to appear in this Court *pro hac vice*. I represent Defendant Joseph Sullivan in the above-captioned matter. I make this declaration in support of Defendant Joseph Sullivan's Omnibus Motions in Limine.

2.      Attached as **<u>Exhibit 1</u>** is the Superseding Information in *United States v. Brandon Charles Glover and Vasile Mereacre*, Case No. 5:18-cr-348-BLF (N.D. Cal. Oct. 30, 2019) (the "Underlying Case").

3.      Attached as **<u>Exhibit 2</u>** is Defendant Brandon Glover's plea agreement in the Underlying Case. References to email addresses have been redacted.

4.      Attached as **<u>Exhibit 3</u>** is Defendant Vasile Mereacre's plea agreement in the Underlying Case. References to email addresses have been redacted.

5.      Attached as **<u>Exhibit 4</u>** is a document produced by the government bearing bates numbers FBI_009747-54. I have redacted the portions that are not pertinent to the instant motions.

4.      For ease of reference, attached as **<u>Exhibits 5</u>**, **<u>6</u>**, and **<u>7</u>** are copies of the trial court authorities referenced on page 3 of the accompanying motion.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 8th day of August, 2022, in Portland, Oregon.


                    *s/David H. Angeli*
                    David H. Angeli

ANGELI DECL. ISO DEFENDANT JOSEPH SULLIVAN'S
OMNIBUS MOTIONS IN LIMINE
3:20-cr-00337-WHO                    1

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    DAVID L. ANDERSON (CABN 149604)
     United States Attorney
2

3

4                                                    FILED

5                                                    OCT 30 2019

6                                        CLERK, SUSAN Y. SOONG
                                         U.S. DISTRICT COURT
                                         NORTHERN DISTRICT OF COURT
7                                        SAN JOSE CALIFORNIA        9:03 Am
                                                                   DH
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11   UNITED STATES OF AMERICA,            )   No. CR 18-00348 LHK
                                          )
12          Plaintiff,                    )   VIOLATIONS:
                                          )   18 U.S.C. § 1030(b) – Conspiracy to Violate 18
13      v.                                )   U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A); 18 U.S.C.
                                          )   §§ 981(a)(1)(C), 1030(i), and 1030(j) – Criminal
14   BRANDON CHARLES GLOVER, and          )   Forfeiture
     VASILE MEREACRE,                     )
15                                        )
            Defendants.                   )
16                                        )   SAN JOSE VENUE
                                          )
17   _____)

18                    S U P E R S E D I N G   I N F O R M A T I O N

19   The United States Attorney charges:

20                            Introductory Allegations

21          At all times relevant to this Superseding Information:

22          1.      Uber Technologies Inc. ("Uber") was a technology and transportation network company

23   offering, among other things, ride service hailing.  Uber was headquartered in San Francisco, California.

24          2.      Lynda.com LLC was an online education company that offered video courses in

25   software, creative, and business skills.  On June 2, 2016, the company was acquired by LinkedIn

26   Corporation ("LinkedIn"), which was headquartered in Sunnyvale, California.

27

28

     SUPERSEDING INFORMATION

3.      "Bug bounty" programs are services wherein individuals that report security vulnerabilities receive recognition and compensation.  Bug bounty programs assist companies in discovering and resolving security vulnerabilities so that they can be resolved before the general public is aware of them, thus preventing the wide-spread exploitation of the vulnerability.

4.      LinkedIn maintained an invitation-only bug bounty program and accepted individuals, such as security researchers, into the program based upon the individual's reputation and previous work.  LinkedIn established rules for participation in the program, and an individual would be disqualified from participation in the program based on a variety of factors, including making threats, demanding money in exchange for security vulnerabilities, publicly disclosing security flaws without notifying the company first, modifying, copying, downloading, deleting, or otherwise misusing other members' data, and accessing non-public member information without authorization.

5.      HackerOne, headquartered in San Francisco, California, operated bug bounty programs for corporations, including LinkedIn and Uber.

6.      Amazon Web Services was a subsidiary of Amazon, Inc. and headquartered in Seattle, Washington, that provided, among other services, cloud-based computing platforms.

7.      GitHub, headquartered in San Francisco, California, was a cloud-based source code repository.

8.      Uber maintained a bug bounty program that was administered by HackerOne.

9.      Brandon Charles Glover ("GLOVER") was a resident of Winter Springs, Florida.

10.     Vasile Mereacre ("MEREACRE") was a resident of Toronto, Canada.

<u>COUNT ONE:</u>        (18 U.S.C. § 1030(b) – Conspiracy to Violate 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A))

11.     The factual allegations at Paragraphs One through Ten are re-alleged and incorporated as if set forth fully here.

//

//

//

//

SUPERSEDING INFORMATION                2

12.     Beginning in approximately October 2016 and continuing to approximately January 2017, in the Northern District of California and elsewhere, the defendants,

BRANDON CHARLES GLOVER, and
VASILE MEREACRE,

did knowingly conspire and agree with persons known and unknown to the Grand Jury to commit an offense under 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A), that is, with the intent to extort from a person money and other things of value, transmitted in interstate and foreign commerce communications containing a threat to impair the confidentiality of information obtained from a protected computer without authorization.

<u>Manner and Means</u>

13.     Defendants GLOVER and MEREACRE possessed and controlled and claimed to possess and control confidential databases and other data belonging to the victim-corporations all the while knowing that the data had been stolen from the victim-corporations' Amazon Web Services accounts. Using a cache of stolen user data, the defendants used their custom-built GitHub account checker tool to determine if the stolen data was also used as GitHub account credentials. The defendants then identified valid GitHub account credentials for corporate employees. They accessed several accounts belonging to the victim-corporations' employees and searched for Amazon Web Services' credentials. Once they found the Amazon Web Services credentials, they immediately used them to access the Amazon Web Services' Simple Storage Services, commonly known as S3, to search for and download sensitive data. The defendants exerted possession and control over the data in order to induce payments from the victim-corporations.

14.     The defendants used the email address "johndoughs@protonmail.com" (hereinafter, the "johndoughs account") to contact the victim-corporations to report a security vulnerability and demand payment in exchange for deletion of the data. The defendants used false names to communicate with the victim-corporations, and, on several occasions, informed the victim-corporations that they had been paid by other victim-corporations for identifying security vulnerabilities. They also sent the victim-corporations a sample of the data in order for the victim-corporations to verify the authenticity of the data.

SUPERSEDING INFORMATION                    3

15.     After examining the sample data, the victim-corporations communicated with the defendants about payment in exchange for the deletion of the data.  In some instances, the victim-corporations referred the defendants to HackerOne for payment pursuant to the victim-corporations' bug bounty program.  In other instances, the victim-corporation stopped communicating with the defendants and did not pay them for the data.

Defendants Extort Uber

16.     As part of the conspiracy, defendants GLOVER and MEREACRE devised a plan to extort Uber by obtaining approximately 57 million records consisting of Uber customer data and Uber driver data from Uber's Amazon Web Services' S3 cloud-based data repository.  The stolen data included drivers license information belonging to Uber drivers, and the names, email addresses, and telephone numbers of Uber customers.

17.     On or about November 14, 2016, using the johndoughs account, the defendants contacted the Chief Security Officer at Uber and claimed to have "found a major vulnerability."  In reality, the defendants had illegally accessed and downloaded approximately 57 million records of Uber customer data and Uber driver data.  In addition, on or about November 14, 2016, Uber confirmed that a sample of the stolen data provided by the defendants in connection with the data breach did in fact contain Uber's confidential data.

18.     The defendants demanded a minimum payment of $100,000, and Uber ultimately agreed to pay the defendants $100,000 in bitcoin, routed through its HackerOne account in order to classify it as a bug bounty payment.

19.     In exchange for the payment of $100,000, Uber required the defendants sign confidentiality agreements prohibiting the use of the data and public disclosure of the breach.

Defendants' Plan To Extort LinkedIn

20.     As part of the conspiracy, defendants GLOVER and MEREACRE devised a plan to extort LinkedIn by obtaining over 90,000 confidential Lynda.com user accounts from Lynda's Amazon Web Services S3 account, and exerting control over the accounts as a means to obtain money from LinkedIn.

21.     The defendants used the johndoughs account to communicate with LinkedIn.  They also

SUPERSEDING INFORMATION                    4

1 established an account with HackerOne using the false name "William Loafmann" and provided false

2 information, such as names, addresses, and a Social Security number, on Internal Revenue Service

3 forms.

4        22.     On December 11, 2016, the defendants sent an email from the johndoughs account to the

5 security team at LinkedIn notifying them about a "security flaw compromising databases of Lynda.com

6 along with credit card payments and much more."

7        23.     A LinkedIn executive responded a short time later requesting details so that LinkedIn

8 could investigate the matter.

9        24.     The defendants responded via an email sent from the johndoughs account, stating the

10 following:

11           Before I continue, I would like to say that this does not look good, I was able to
          access backups upon backups, me and my team would like a huge reward for this,
12           [sic]. The things we found were some of the following, [L]ynda database, email
          names addresses, usernames, some passwords, payments, we also found backend
13           code and many more. We also found partian [sic] [L]inkedin files. Before I continue,
          I would like to ask that you guys will promise to compensate for this find.
14

15        25.     A LinkedIn executive and the defendants continued to communicate about the

16 Lynda.com database, and the LinkedIn executive, in an attempt to identity the individual, lured the

17 johndoughs account to join LinkedIn's bug bounty program through HackerOne.

18        26.     After the invitation was extended, the defendants told the LinkedIn executive

19 "[P]lease keep in mind, we expect a big payment as this was hard work for us, we already helped a big

20 corp which paid close to 7 digits, all went well."

21        All in violation of Title 18, United States Code, Sections 1030(b), 1030(a)(7)(B), and (c)(3)(A).

22 <u>FORFEITURE ALLEGATION:</u>     (18 U.S.C. §§ 981(a)(1) and 1030(i) and (j))

23        27.     The factual allegations contained in Paragraphs One through Twenty-Six of this

24 Superseding Information are hereby re-alleged and incorporated by reference for the purpose of alleging

25 forfeiture pursuant to Title 18, United States Code, Sections 982(a)(1)(C) and 1030(i) and (j).

26 //

27 //

28 //

SUPERSEDING INFORMATION          5

28.     Upon conviction of the offense alleged in Count One of this Superseding Information, the defendants,

BRANDON CHARLES GLOVER, and
VASILE MEREACRE,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1030(i) and (j), any personal property used or intended to be used to commit or to facilitate the commission of said violation or a conspiracy to violate said provision, and any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including but not limited to, a sum of money equal to the total amount of proceeds defendant obtained or derived, directly or indirectly, from the violation.

29.     If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 1030(i)(2).

All pursuant to Title 18, United States Code, Sections 981(a)(1) and 1030(i) and 1030(j).

DATED: 10/30/19

DAVID L. ANDERSON
United States Attorney

SUSAN KNIGHT
AMIE D. ROONEY
Assistant United States Attorneys

SUPERSEDING INFORMATION                    6

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☒ INFORMATION ☐ INDICTMENT

☒ SUPERSEDING

### OFFENSE CHARGED

COUNT ONE: 18 U.S.C. § 1030(b) – Conspiracy to Violate 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A); 18 U.S.C. §§ 981(a)(1)(C), 1030(i), and 1030(j) – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: 5 years imprisonment, $250K fine, 3 years supervised release, $100 special assessment.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**— DEFENDANT - U.S**

► BRANDON CHARLES GLOVER

DISTRICT COURT NUMBER

CR-18-00348 LHK

*FILED*
*OCT 30 2019*
*SUSAN Y. SOONG*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*SAN JOSE*
*9:03 AM*

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

S/A Jeff Miller and Jon Chinn, FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form    DAVID L. ANDERSON

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    SUSAN KNIGHT

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
  ☐ Federal ☐ State
  If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No     give date filed

**DATE OF ARREST** ►    Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ►    Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

Bail Amount:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:    Before Judge:

Comments:

1 | DAVID L. ANDERSON (CABN 149604)
United States Attorney

2

3 | HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

4 | SUSAN KNIGHT (CABN 209013)
AMIE D. ROONEY (CABN 215324)

5 | Assistant United States Attorneys

6 |     150 Almaden Boulevard, Suite 900
    San Jose, California 95113

7 |     Telephone: (408) 535-5061
    Fax: (408) 535-5066

8 |     Email: Susan.Knight@usdoj.gov
           Amie.Rooney@usdoj.gov

9

10 | Attorneys for United States of America

**F I L E D**

**OCT 30 2019**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00348 LHK |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| BRANDON GLOVER, | |
| Defendant. | |

I, Brandon Glover, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

    1.    I agree to plead guilty to Count One of the captioned Superseding Information charging me with Conspiracy to Violate 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A), Extortion Involving Computers, in violation of 18 U.S.C. § 1030(b). I agree that the elements of a violation of 18 U.S.C. § 1030(b) are as follows: (1) Beginning in approximately October 2016, and continuing through at least

PLEA AGREEMENT
CR 18-00348 LHK

1

v. 10/02/2019

January 2017, I entered into an agreement with another individual to commit an offense under 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A), Extortion Involving Computers, in violation of 18 U.S.C. § 1030(b); and (2) I became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

I agree that the elements of 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A), Extortion Involving Computers, are as follows: (1) I acted with the intent to extort from any person any money or any other thing of value; and (2) by transmitting in interstate or foreign commerce a communication containing a threat to impair the confidentiality of information obtained from a protected computer without authorization or by exceeding authorized access.

I agree that the maximum penalties for a violation of 18 U.S.C. § 1030(b) are as follows:

| | |
|---|---|
| a. Maximum prison term | 5 years |
| b. Maximum fine | $250,000 |
| c. Maximum supervised release term | 3 years |
| d. Restitution | To Be Determined by the Court |
| e. Mandatory special assessment | $100 per felony count |
| f. Potential Deportation | |
| g. Forfeiture | |

I acknowledge that it is virtually certain that pleading guilty will have consequences with respect to my immigration status if I am not a natural born citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which I am pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and I understand that no one, including my attorney or the district court, can predict to a certainty the effect of this conviction on my immigration status. I nevertheless affirm that I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States. I also acknowledge that there are no identical or substantially similar charges to non-removable offenses to which the government would agree.

2.      I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true:  From approximately October 2016 and continuing through approximately January 2017, I engaged in a conspiracy with Vasile Mereacre ("Mereacre") and others to use stolen credentials in order to illegally obtain confidential databases and other data belonging to numerous victim-corporations from their Amazon Web Services accounts.  Specifically, I possessed stolen user data, and used a custom-built GitHub account checker tool to determine if the stolen data was also used as GitHub account credentials.  I then identified valid GitHub account credentials for corporate employees, and accessed several accounts belonging to the employees to search for Amazon Web Services credentials.  Once I found the Amazon Web Services credentials, I immediately used them to access the Amazon Web Services' Simple Storage Services, commonly known as S3, to search for and download sensitive data.  I possessed and controlled the data in order to induce payments from the victim-corporations, and knew that the victim-corporations, several of whom were headquartered in the Northern District of California, would sustain economic losses and damage to their reputations if the data were to be publicly disclosed.

In order to induce payments, we contacted the victim-corporations using an alias and an encrypted email account.  Specifically, Mereacre used the email address █████████████ (the █████████████) to contact the victim-corporations to report a security vulnerability and demand payment in exchange for deletion of the data.  Though Mereacre was the primary drafter of our messages sent from the johndoughs account, I consulted with him and helped him decide what to say.  I understand and agree that the emails to and from the johndoughs account were transmissions in interstate commerce.  On one occasion, we informed a victim-corporation that we had been paid by another victim-corporation for identifying security vulnerabilities.  We also sent the victim-corporations a sample of the data in order for the victim-corporations to verify the authenticity of the data.

After examining the sample data, the victim-corporations communicated with us about a payment in exchange for the deletion of the data.  In some instances, the victim-corporations instructed us to register with HackerOne.  (HackerOne is a San Francisco-based company that operates "bug bounty" programs for corporations.  Bug bounty programs are services wherein individuals report

PLEA AGREEMENT                           3                           v. 010/02/2019
CR 18-00348 LHK

1  security vulnerabilities and receive recognition and compensation. Each corporation establishes the

2  rules and regulations of its bug bounty program.) In other instances, the victim-corporation stopped

3  communicating with us and did not pay us for the data. We targeted the following companies:

4       a.    Uber: As part of the conspiracy, on or about November 14, 2016, we emailed the Chief

5  Security Officer at Uber at that time, using the johndoughs account. We claimed to have "found a major

6  vulnerability in uber, 1 [sic] was able to dump uber database and many other things." In fact, we had

7  not discovered a vulnerability directly in Uber's software, but had illegally accessed and downloaded 57

8  million records consisting of Uber customer data and Uber driver data from Uber's Amazon Web

9  Services account.

10       Uber replied to our message the same day, beginning an email correspondence that would extend

11  through mid-January 2017. On November 14, 2016, we provided a snippet of the database that we had

12  obtained as proof of the data exfiltration. Uber confirmed that it was Uber's data. In response, we

13  wrote, "Keep in mind this is not the only things I found. I can name 100 different more things I found

14  Me and My team expect a high compensation for this." When Uber said that its maximum bounty

15  amount was generally $10,000, we replied "our minimum is 6 digits." Uber agreed, on or about

16  November 16, 2016, to make a $100,000 payment in bitcoin through the HackerOne bug bounty

17  program. We registered on HackerOne to accept the payment, using the email address

18  █████████████████

19       Before making the payment, Uber wanted us to sign a confidentiality agreement that required us

20  to destroy the data we had stolen. We instructed Uber to send the proposed agreement to both the

21  ██████████████████████████ accounts. Uber wanted us to sign the confidentiality

22  agreements using our true names, and for approximately three weeks, we negotiated that and other

23  terms. By December 5, 2016, we were frustrated and sent an email that stated in relevant part: "Please

24  keep in mind, that the contract states All data will be deleted once the money is paid. The ball is in your

25  court." Uber paid us the money in two $50,000 installments, one on December 8 and one on December

26  14, 2016.

27       By January 2017, Uber informed me that it had discovered my true identity. I met with a

28

PLEA AGREEMENT          4                       v. 010/02/2019
CR 18-00348 LHK

1 representative from Uber at my home in Florida on January 3, 2017, admitted my role in the data breach
2 exfiltration, and signed a confidentiality agreement. The agreement required me to, among other things,
3 "promise that [I] have not and will not disclose anything about the vulnerabilities or [my] dialogue with
4 [Uber] to anyone for any purpose without [Uber's] written permission" and "promise that [I] did not
5 take or store any data during or through [my] research and that [I] have delivered to [Uber] or
6 forensically destroyed all information about and/or analyses of the vulnerabilities."

7      Furthermore, while Uber ultimately obtained confidentiality agreements from me and Mereacre,
8 neither Mereacre nor I ever disclosed to Uber that a third individual ("Individual One") was involved in
9 the Uber data breach. Mereacre shared Uber's Amazon Web Services' credentials with Individual One,
10 which allowed him to access Uber's Amazon Web Services account. Individual One is a technically
11 proficient hacker, and he was responsible for identifying the specific archive file that contained the 57
12 million user records. Mereacre and I agreed to split our $100,000 payment with Individual One in light
13 of his contribution. In the course of his participation, Individual One obtained a copy of the archive file
14 containing Uber's user records. We requested that Individual One delete his copy, which he said he
15 would do, but I cannot be certain that he did so.

16      b.   Lynda.com: As part of the conspiracy, on December 11, 2016, we emailed the security
17 team at LinkedIn using the ▮▮▮▮ account to notify the company, which owns Lynda.com, that we
18 found a "security flaw compromising databases of Lynda.com along with credit card payments and
19 much more." We were well aware there was not a security flaw, and that in fact, we possessed over
20 90,000 confidential Lynda.com user accounts that were illegally accessed and downloaded from
21 Lynda.com's Amazon Web Services account. A few hours later, a member of LinkedIn's security team
22 responded to us for an explanation of the alleged vulnerability. We responded with the following email
23 and attached a sample of the data:

24     Before I continue, I would like to say that this does not look good, I was able to
access backups upon backups, me and my team would like a huge reward for this,
25     [sic]. The things we found were some of the following, [L]ynda database, email
names addresses, usernames, some passwords, payments, we also found backend
26     code and many more. We also found partian [sic] [L]inkedin files. Before I continue,
I would like to ask that you guys will promise to compensate for this find.
27

28     The security team member and the ▮▮▮▮ account continued to communicate about the

PLEA AGREEMENT        5         v. 010/02/2019
CR 18-00348 LHK

1  Lynda.com database, and the LinkedIn executive invited the johndoughs account to join LinkedIn's bug
2  bounty program through HackerOne.

3       After the invitation to join HackerOne was extended, we emailed the security team member
4  using the ▓▓▓▓▓ account to inform him that: "[p]lease keep in mind, we expect a big payment as
5  this was hard work for us, we already helped a big corp which paid close to 7 digits, all went well."

6       We then established an account with HackerOne using the false name "William Loafmann" and
7  provided false information on the forms, and continued to communicate with LinkedIn using the
8  HackerOne communication platform. We stopped communicating with LinkedIn on approximately
9  January 16, 2017. The company did not pay us for the data or for confidentiality.

10      3.    I agree to give up all rights that I would have if I chose to proceed to trial, including the
11  rights to a jury trial with the assistance of an attorney; to confront and cross-examine government
12  witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth
13  Amendment claims; to any further discovery from the government; and to pursue any affirmative
14  defenses and present evidence.

15      4.    I agree to give up my right to appeal my conviction, including constitutional challenges
16  to the statute of conviction. I agree to give up my right to appeal the judgment and all orders of the
17  Court. I also agree to give up my right to appeal any aspect of my sentence, including any orders
18  relating to forfeiture and/or restitution, reserving only my right to claim that my sentence violated this
19  plea agreement, applicable law, or the Constitution. I reserve my right to claim that my counsel was
20  ineffective. I understand that this waiver includes, but is not limited to, any and all constitutional or
21  legal challenges to my conviction and guilty plea, including arguments that the statute to which I am
22  pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is
23  insufficient to support my plea of guilty.

24      5.    I agree not to file any collateral attack on my conviction or sentence, including a petition
25  under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was
26  ineffective. I also agree not to seek relief under 18 U.S.C. § 3582.

27      6.    I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. In
28

PLEA AGREEMENT           6           v. 010/02/2019
CR 18-00348 LHK

the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of this Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court proceeding, shall be admissible against me in any subsequent proceeding, including at trial. In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding.

7.    I understand that the Court must consult the United States Sentencing Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound by the Guidelines calculations below, the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask, to withdraw my guilty plea. I also agree that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea. I further agree that the Sentencing Guidelines offense level should be calculated as follows, except that I reserve my right to argue for a downward departure pursuant to U.S.S.G. § 5K1.1 and for a variance under the factors outlined in 18 U.S.C. § 3553(e). The parties have reached no agreement regarding my Criminal History Category.

a.    Base Offense Level:                                                                    18
(U.S.S.G. § 2X1.1(a) – Conspiracy; Use the Base
Offense Level from Substantive Offense; U.S.S.G.
§ 2B3.2(a) - Extortion)

b.    Specific Offense Characteristics:                                          + 2
(U.S.S.G. § 2B3.2(b)(2) – Demand Greater Than $20K,
Use Loss Table per U.S.S.G. § 2B3.1(b)(7)(C) – Loss More
Than $95,000 but Less Than $500,000)

c.    Acceptance of Responsibility:                                              - 3
If I meet the requirements of U.S.S.G. § 3E1.1,
through sentencing, I may be entitled to a three-level
reduction for acceptance of responsibility, provided that I
forthrightly admit my guilt, cooperate with the Court and
the Probation Office in any presentence investigation
ordered by the Court, and continue to manifest an acceptance
of responsibility through and including the time of sentencing.

d.    Adjusted Offense Level:                                                        17

PLEA AGREEMENT                                    7                                    v. 010/02/2019
CR 18-00348 LHK

8.　I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offense and the sentencing decision, including any victim impact statements and letters from the victim(s), and/or their friends and family. I agree that, based on the nature of the offense, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

<u>Special Condition (Searches)</u>

The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

9.　I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. I agree to pay the special assessment at the time of sentencing.

I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I understand that the Court will not consider my economic circumstances in determining the restitution amount. I agree to pay restitution in an amount to be set by the Court at the time of sentencing.

Any restitution payments shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

I understand that the restitution described above creates a lien in favor of the United States on all property and rights to property I may possess upon entry of judgment and continues for the later of 20 years from the entry of judgment or 20 years after release from imprisonment or until the debt is paid in full. I further understand the government will record a notice of the lien in any county where I reside or have property. I further understand that this order of restitution cannot be discharged in bankruptcy and that if I default on the payment of a fine or restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence me,

PLEA AGREEMENT　　　　　　　　　　　　8　　　　　　　　　　　　v. 010/02/2019
CR 18-00348 LHK

1   hold me in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any
2   other action necessary to obtain compliance.

3       At least sixty days prior to sentencing, I agree to complete, under penalty of perjury, a financial
4   statement provided by the U.S. Attorney's Office and to update that statement with material changes
5   within seven days of the change. I understand that I must identify all assets and financial interests
6   valued at more than $1,000. I further understand that these assets and financial interests include all
7   assets and financial interests in which I have an interest, direct or indirect, whether held in my own name
8   or in the name of another, in any property, real or personal.

9       I agree to surrender assets I obtained as a result of my crimes, and release funds and property
10  under my control in order to pay any fine, forfeiture, or restitution. I further agree to notify the Financial
11  Litigation Unit, United States Attorney's Office ("FLU") before transferring any interest in property
12  owned directly or indirectly by me, including any interest held or owned under any other name or entity,
13  including trusts, partnerships, and/or corporations. I also agree to notify the FLU of any interest in
14  property I may obtain, directly or indirectly, including any interest obtained under any other name, or
15  entity, including a trust, partnership, or corporation, after the execution of this Plea Agreement until the
16  fine or restitution is paid in full.

17      I agree that any fine, forfeiture, or restitution imposed by the Court against me will be due
18  immediately and subject to immediate enforcement by the government as authorized by 18 U.S.C.
19  § 3613. I further understand that the government may seek immediate collection of the entire fine,
20  forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the
21  Court or established by the Probation Office and that monetary penalties imposed by the Court will be
22  submitted to the Treasury Offset Program so that any federal payment or transfer of returned property I
23  receive may be offset and applied to federal debts.

24      10.     I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My
25  cooperation will include, but will not be limited to, the following:

26      a.      I will meet with the government when requested;

27      b.      I will respond truthfully and completely to any and all questions put to me, whether in
                interviews, before a grand jury, or at any trial or other proceeding;
28

PLEA AGREEMENT                                  9                                    v. 010/02/2019
CR 18-00348 LHK

c.     I will provide all documents and other material asked for by the government;

d.     I will testify truthfully at any grand jury, court, or other proceeding as requested by the government;

e.     I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;

f.     I will request continuances of my sentencing date, as necessary, until my cooperation is completed;

g.     I will participate in undercover activities under the supervision of law enforcement agents or the U.S. Attorney's Office.

11.     I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

12.     I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty plea.

13.     If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c)

Angeli Decl. Exhibit 2
Page 10 of 14

1    I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations

2    period has run between the date of this Agreement and the date I am indicted.

3        14.    I agree to forfeit my interest in a Seagate 500 gigabyte hard drive bearing Serial Number

4    S21HNXAG474617F (hereafter "subject property") that was seized by the Federal Bureau of

5    Investigation during the execution of a search warrant at my residence in Winter Springs, Florida.

6    I admit that the subject property was used to commit or facilitate the crime, and thus is forfeitable to the

7    United States pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C), 1030(i) and (j), and the

8    procedures outlined in Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853. I

9    relinquish any and all right, title, and interest I may have in the subject property and agree that such

10   right, title, and interest can be forfeited to the United States without further notice to me. I also agree I

11   will not contest any administrative or judicial forfeiture proceeding (whether criminal, civil, state or

12   federal) which may be brought against said property. I further agree to waive all constitutional and

13   statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any

14   forfeiture carried out in accordance with this Agreement on any grounds, including that the forfeiture

15   constitutes an excessive fine or punishment or that the forfeiture proceeding was brought in violation of

16   the statute of limitations.

17       15.    I agree that I personally obtained and acquired $50,000.00 from the violation in Count

18   One to which I am pleading guilty and I agree to the entry of a forfeiture money judgment in that

19   amount (the "Forfeiture Money Judgment"). I admit that the Forfeiture Money Judgment constitutes

20   proceeds from a violation of 18 U.S.C. § 1030(b), and thus is forfeitable to the United States pursuant to

21   the provisions of 18 U.S.C. § 1030(i)(1)(B) and the procedures outlined in Rule 32.2 of the Federal

22   Rules of Criminal Procedure and 21 U.S.C. § 853. I admit that because of my own acts or omissions,

23   the proceeds I originally obtained cannot be located upon the exercise of due diligence or have been

24   placed beyond the jurisdiction of the Court. As such, I agree that the procedures set forth in 21 U.S.C.

25   § 853(p)(2) are applicable.

26       I agree I will not contest any forfeiture proceeding that may be brought pursuant to this

27   Agreement. I further agree to waive all constitutional and statutory challenges in any manner (including

28

PLEA AGREEMENT                              11                        v. 010/02/2019
CR 18-00348 LHK

Angeli Decl. Exhibit 2
Page 11 of 14

direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Agreement on any ground, including that the forfeiture constitutes an excessive fine or punishment or that the forfeiture proceeding was brought in violation of any statute of limitations.

I agree to make payment to the United States of the entire amount of the Forfeiture Money Judgment. I agree that all payments I make towards the Forfeiture Money Judgment shall be made by certified or bank check, payable to the "United States" and sent by overnight delivery to the Chief of the Asset Forfeiture Unit, 450 Golden Gate Ave, 11th Floor, San Francisco, CA 94102, with the criminal docket number noted on the face of the check. I agree to assist fully the government in effecting the payment of the Forfeiture Money Judgment.

16. I agree that this Agreement contains all of the promises and agreements between the government and me, that this Agreement supersedes all previous agreements that I had with the government (including any "proffer" agreement), and I will not claim otherwise in the future. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

17. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

18. The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned Superseding Information, so long as the defendant has fully disclosed such conduct to the government and otherwise complied fully with this Agreement.

19. The government agrees to recommend a sentence no higher than the range associated with the Guidelines calculation set out in paragraph 7 above, unless the defendant fails to comply with any promises in this Agreement or fails to accept responsibility. As noted in paragraph 8, the government will provide the Court with any victim impact statements as well as letters from the victim(s) and/or their friends and family and any sentencing requests that they make to the court are not subject to any restrictions.

20. If, in its sole and exclusive judgment, the government decides that the defendant has

PLEA AGREEMENT
CR 18-00348 LHK

12

v. 010/02/2019

1  cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the

2  meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the

3  Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the

4  defendant's cooperation and recommends a downward departure.

5  The Defendant's Affirmations

6      21.    I confirm that I have had adequate time to discuss this case, the evidence, and the

7  Agreement with my attorney and that my attorney has provided me with all the legal advice that I

8  requested.

9      22.    I confirm that while I considered signing this Agreement, and at the time I signed it, I

10  was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand

11  the Agreement.

12      23.    I confirm that my decision to enter a guilty plea is made knowing the charges that have

13  been brought against me, any possible defense, and the benefits and possible detriments of proceeding to

14  trial.  I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or

15  threatened me to enter into this Agreement.

16  Dated:

17      10/30/19                            Brandon Glover

18                                          BRANDON GLOVER
                                        Defendant

19

20                                          DAVID L. ANDERSON
                                        United States Attorney

21

22  Dated: 10/30/19

23                                          SUSAN KNIGHT
                                        AMIE D. ROONEY
                                        Assistant United States Attorneys

24

25

26  //

27  //

28  //

PLEA AGREEMENT                          13                            v. 010/02/2019
CR 18-00348 LHK

1      24.     I have fully explained to my client all the rights that a criminal defendant has and all the

2 terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all

3 the rights my client is giving up by pleading guilty, and, based on the information now known to me, my

4 client's decision to plead guilty is knowing and voluntary.

5

6 Dated:   OCTOBER 30, 2019

7                                       CARLEEN R. ARLIDGE

8                                       ALBIE JACHIMOWICZ
                                      Counsel for Defendant Glover

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                  14                         v. 010/02/2019
CR 18-00348 LHK

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SUSAN KNIGHT (CABN 209013)
AMIE D. ROONEY (CABN 215324)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Email: Susan.Knight@usdoj.gov
           Amie.Rooney@usdoj.gov

**FILED**

OCT 3 0 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00348 LHK |
|     Plaintiff, | PLEA AGREEMENT |
|     v. | 10/30/19 |
| VASILE MEREACRE, | |
|     Defendant. | V, M |

    I, Vasile Mereacre, and the United States Attorney's Office for the Northern District of

California (hereafter "the government") enter into this written Plea Agreement (the "Agreement")

pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

    1.    I agree to plead guilty to Count One of the captioned Superseding Information charging

me with Conspiracy to Violate 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A), Extortion Involving

Computers, in violation of 18 U.S.C. § 1030(b). I agree that the elements of a violation of 18 U.S.C.

§ 1030(b) are as follows: (1) Beginning in approximately October 2016, and continuing through at least

Angeli Decl. Exhibit 3
Page 1 of 12

1   January 2017, I entered into an agreement with another individual to commit an offense under 18 U.S.C.

2   §§ 1030(a)(7)(B) and (c)(3)(A), Extortion Involving Computers, in violation of 18 U.S.C. § 1030(b);

3   and (2) I became a member of the conspiracy knowing of at least one of its objects and intending to help

4   accomplish it.

5        I agree that the elements of 18 U.S.C. §§ 1030(a)(7)(B) and (c)(3)(A), Extortion Involving

6   Computers, are as follows: (1) I acted with the intent to extort from any person any money or any other

7   thing of value; and (2) by transmitting in interstate or foreign commerce a communication containing a

8   threat to impair the confidentiality of information obtained from a protected computer without

9   authorization or by exceeding authorized access.

10        I agree that the maximum penalties for a violation of 18 U.S.C. § 1030(b) are as follows:

| | | |
|---|---|---|
| a. | Maximum prison term | 5 years |
| b. | Maximum fine | $250,000 |
| c. | Maximum supervised release term | 3 years |
| d. | Restitution | To Be Determined by the Court |
| e. | Mandatory special assessment | $100 per felony count |
| f. | Potential Deportation | |
| g. | Forfeiture | |

19        I acknowledge that it is virtually certain that pleading guilty will have consequences with respect

20   to my immigration status if I am not a natural born citizen of the United States.  Under federal law, a

21   broad range of crimes are removable offenses, including the offense to which I am pleading guilty.

22   Removal and other immigration consequences are the subject of a separate proceeding, however, and I

23   understand that no one, including my attorney or the district court, can predict to a certainty the effect of

24   this conviction on my immigration status.  I nevertheless affirm that I want to plead guilty regardless of

25   any immigration consequences that may result from my guilty plea, even if the consequence is my

26   automatic removal from the United States.  I also acknowledge that there are no identical or

27   substantially similar charges to non-removable offenses to which the government would agree.

28

PLEA AGREEMENT               2                   v. 010/02/2019
CR 18-00348 LHK

Angeli Decl. Exhibit 3
Page 2 of 12

1     2.     I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the

2 following facts are true: From approximately October 2016 and continuing through approximately

3 January 2017, I engaged in a conspiracy with Brandon Glover ("Glover") and others to use stolen

4 credentials in order to illegally obtain confidential databases and other data belonging to numerous

5 victim-corporations from their Amazon Web Services accounts. Specifically, I possessed stolen user

6 data, and used a custom-built GitHub account checker tool to determine if the stolen data was also used

7 as GitHub account credentials. I then identified valid GitHub account credentials for corporate

8 employees, and accessed several accounts belonging to the employees to search for Amazon Web

9 Services credentials. Once I found the Amazon Web Services credentials, I immediately used them to

10 access the Amazon Web Services' Simple Storage Services, commonly known as S3, to search for and

11 download sensitive data. I possessed and controlled the data in order to induce payments from the

12 victim-corporations, and knew that the victim-corporations, several of whom were headquartered in the

13 Northern District of California, would sustain economic losses and damage to their reputations if the

14 data were to be publicly disclosed.

15     In order to induce payments, we contacted the victim-corporations using an alias and an

16 encrypted email account. Specifically, I used the email address               (the

17               to contact the victim-corporations to report a security vulnerability and demand

18 payment in exchange for deletion of the data. I was the primary drafter of our messages sent from the

19       account; however, Glover consulted with me and helped me decide what to say. I

20 understand and agree that the emails to and from the johndoughs account were transmissions in

21 interstate commerce. On one occasion, we informed a victim-corporation that we had been paid by

22 another victim-corporation for identifying security vulnerabilities. We also sent the victim-corporations

23 a sample of the data in order for the victim-corporations to verify the authenticity of the data.

24     After examining the sample data, the victim-corporations communicated with us about a

25 payment in exchange for the deletion of the data. In some instances, the victim-corporations instructed

26 us to register with HackerOne. (HackerOne is a San Francisco-based company that operates "bug

27 bounty" programs for corporations. Bug bounty programs are services wherein individuals report

28

PLEA AGREEMENT            3               v. 010/02/2019
CR 18-00348 LHK

Angeli Decl. Exhibit 3
Page 3 of 12

1 security vulnerabilities and receive recognition and compensation. Each corporation establishes the

2 rules and regulations of its bug bounty program.) In other instances, the victim-corporation stopped

3 communicating with us and did not pay us for the data. We targeted the following companies:

4       a.    <u>Uber</u>: As part of the conspiracy, on or about November 14, 2016, we emailed the Chief

5 Security Officer at Uber at that time, using the ▋▋▋ account. We claimed to have "found a major

6 vulnerability in uber, 1 [sic] was able to dump uber database and many other things." In fact, we had

7 not discovered a vulnerability directly in Uber's software, but had illegally accessed and downloaded 57

8 million records consisting of Uber customer data and Uber driver data from Uber's Amazon Web

9 Services account.

10       Uber replied to our message the same day, beginning an email correspondence that would extend

11 through mid-January 2017. On November 14, 2016, we provided a snippet of the database that we had

12 obtained as proof of the data exfiltration. Uber confirmed that it was Uber's data. In response, we

13 wrote, "Keep in mind this is not the only things I found. I can name 100 different more things I found

14 Me and My team expect a high compensation for this." When Uber said that its maximum bounty

15 amount was generally $10,000, and we replied "our minimum is 6 digits." Uber eventually agreed, on

16 or about November 16, 2016, to make a $100,000 payment in bitcoin through the HackerOne bug

17 bounty program. We registered on HackerOne to accept the payment, using the email address

18 ▋▋▋▋▋. I also controlled that email account.

19       Before making the payment, Uber wanted us to sign a confidentiality agreement that required us

20 to destroy the data we had stolen. We instructed Uber to send the proposed agreement to both the

21 ▋▋▋▋▋ accounts. Uber wanted us to sign the confidentiality

22 agreements using our true names, and for approximately three weeks, we negotiated that and other

23 terms. By December 5, 2016, we were frustrated and sent an email that stated in relevant part: "Please

24 keep in mind, that the contract states All data will be deleted once the money is paid. The ball is in your

25 court." On November 18, 2016, I signed two confidentiality agreements with Uber using the false name

26 "John Doughs." A few days later, on November 21, 2016, I signed another confidentiality agreement

27 using the false name "William Loafmann." Uber paid us the money in two $50,000 installments, one on

28

PLEA AGREEMENT            4                  v. 010/02/2019
CR 18-00348 LHK

1  December 8 and one on December 14, 2016.

2      By January 2017, Uber had discovered my true identity. I met with a representative from Uber
3  at a restaurant in a hotel in Toronto, Canada on January 5, 2017, admitted my role in the data breach
4  exfiltration, and signed a confidentiality agreement. The agreement required me to, among other things,
5  "promise that [I] have not and will not disclose anything about the vulnerabilities or [my] dialogue with
6  [Uber] to anyone for any purpose without [Uber's] written permission" and "promise that [I] did not
7  take or store any data during or through [my] research and that [I] have delivered to [Uber] or
8  forensically destroyed all information about and/or analyses of the vulnerabilities."

9      Furthermore, while Uber ultimately obtained confidentiality agreements from me and Glover,
10  neither Glover nor I ever disclosed to Uber that a third individual ("Individual One") was involved in the
11  Uber data breach. I shared Uber's Amazon Web Services' credentials with Individual One, which
12  allowed him to access Uber's Amazon Web Services account. Individual One is a technically proficient
13  hacker, and he was responsible for identifying the specific archive file that contained the 57 million user
14  records. Glover and I agreed to split our $100,000 payment with Individual One in light of his
15  contribution. In the course of his participation, Individual One obtained a copy of the archive file
16  containing Uber's user records. We requested that Individual One delete his copy, which he said he
17  would do, but I cannot be certain that he did so.

18      b. Lynda.com: As part of the conspiracy, on December 11, 2016, we emailed the security
19  team at LinkedIn using the ▓▓▓▓▓ account to notify the company, which owns Lynda.com, that we
20  found a "security flaw compromising databases of Lynda.com along with credit card payments and
21  much more." We were well aware there was not a security flaw, and that in fact, we possessed over
22  90,000 confidential Lynda.com user accounts that were illegally accessed and downloaded from
23  Lynda.com's Amazon Web Services account. A few hours later, a member of LinkedIn's security team
24  responded to us for an explanation of the alleged vulnerability. We responded with the following email
25  and attached a sample of the data:

26      Before I continue, I would like to say that this does not look good, I was able to
       access backups upon backups, me and my team would like a huge reward for this,
27      [sic]. The things we found were some of the following, [L]ynda database, email
       names addresses, usernames, some passwords, payments, we also found backend
28

PLEA AGREEMENT                              5                              v. 010/02/2019
CR 18-00348 LHK

code and many more. We also found partian [sic] [L]inkedin files. Before I continue,
I would like to ask that you guys will promise to compensate for this find.

The security team member and the ▮▮▮▮▮▮ account continued to communicate about the
Lynda.com database, and the LinkedIn executive invited the johndoughs account to join LinkedIn's bug
bounty program through HackerOne.

After the invitation to join HackerOne was extended, we emailed the security team member
using the ▮▮▮▮▮▮ account to inform him that: "[p]lease keep in mind, we expect a big payment as
this was hard work for us, we already helped a big corp which paid close to 7 digits, all went well."

We then established an account with HackerOne using the false name "William Loafmann" and
provided false information on the forms, and continued to communicate with LinkedIn using the
HackerOne communication platform. We stopped communicating with LinkedIn on approximately
January 16, 2017. The company did not pay us for the data or for confidentiality.

3.      I agree to give up all rights that I would have if I chose to proceed to trial, including the
rights to a jury trial with the assistance of an attorney; to confront and cross-examine government
witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth
Amendment claims; to any further discovery from the government; and to pursue any affirmative
defenses and present evidence.

4.      I agree to give up my right to appeal my conviction, including constitutional challenges
to the statute of conviction. I agree to give up my right to appeal the judgment and all orders of the
Court. I also agree to give up my right to appeal any aspect of my sentence, including any orders
relating to forfeiture and/or restitution, reserving only my right to claim that my sentence violated this
plea agreement, applicable law, or the Constitution. I reserve my right to claim that my counsel was
ineffective. I understand that this waiver includes, but is not limited to, any and all constitutional or
legal challenges to my conviction and guilty plea, including arguments that the statute to which I am
pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is
insufficient to support my plea of guilty.

5.      I agree not to file any collateral attack on my conviction or sentence, including a petition
under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was

PLEA AGREEMENT                          6                          v. 010/02/2019
CR 18-00348 LHK

ineffective. I also agree not to seek relief under 18 U.S.C. § 3582.

6.      I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. In the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of this Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court proceeding, shall be admissible against me in any subsequent proceeding, including at trial. In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding.

7.      I understand that the Court must consult the United States Sentencing Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also agree that the sentencing range will be calculated by the Court. I reserve my right to join in a possible government downward departure pursuant to U.S.S.G. § 5K1.1, and to argue for a variance from the Guidelines range determined by the Court based on the factors in 18 U.S.C. § 3553(a). I understand that the government is free to oppose any such request. I understand that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea.

8.      I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offense and the sentencing decision, including any victim impact statements and letters from the victim(s), and/or their friends and family. I agree that, based on the nature of the offense, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

> Special Condition (Searches)
>
> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

PLEA AGREEMENT                                  7                          v. 010/02/2019
CR 18-00348 LHK

9.      I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay.  I agree to pay the special assessment at the time of sentencing.

I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3).  I understand that the Court will not consider my economic circumstances in determining the restitution amount.  I agree to pay restitution in an amount to be set by the Court at the time of sentencing.

Any restitution payments shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

I understand that the restitution described above creates a lien in favor of the United States on all property and rights to property I may possess upon entry of judgment and continues for the later of 20 years from the entry of judgment or 20 years after release from imprisonment or until the debt is paid in full.  I further understand the government will record a notice of the lien in any county where I reside or have property.  I further understand that this order of restitution cannot be discharged in bankruptcy and that if I default on the payment of a fine or restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence me, hold me in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any other action necessary to obtain compliance.

At least sixty days prior to sentencing, I agree to complete, under penalty of perjury, a financial statement provided by the U.S. Attorney's Office and to update that statement with material changes within seven days of the change.  I understand that I must identify all assets and financial interests valued at more than $1,000.  I further understand that these assets and financial interests include all assets and financial interests in which I have an interest, direct or indirect, whether held in my own name or in the name of another, in any property, real or personal.

I agree to surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine, forfeiture, or restitution.  I further agree to notify the Financial Litigation Unit, United States Attorney's Office ("FLU") before transferring any interest in property

PLEA AGREEMENT                                    8                                   v. 010/02/2019
CR 18-00348 LHK

owned directly or indirectly by me, including any interest held or owned under any other name or entity, including trusts, partnerships, and/or corporations. I also agree to notify the FLU of any interest in property I may obtain, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this Plea Agreement until the fine or restitution is paid in full.

I agree that any fine, forfeiture, or restitution imposed by the Court against me will be due immediately and subject to immediate enforcement by the government as authorized by 18 U.S.C. § 3613. I further understand that the government may seek immediate collection of the entire fine, forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office and that monetary penalties imposed by the Court will be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property I receive may be offset and applied to federal debts.

10. I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

    a.    I will meet with the government when requested;

    b.    I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury, or at any trial or other proceeding;

    c.    I will provide all documents and other material asked for by the government;

    d.    I will testify truthfully at any grand jury, court, or other proceeding as requested by the government;

    e.    I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;

    f.    I will request continuances of my sentencing date, as necessary, until my cooperation is completed;

    g.    I will participate in undercover activities under the supervision of law enforcement agents or the U.S. Attorney's Office.

11. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent

PLEA AGREEMENT              9              v. 010/02/2019
CR 18-00348 LHK

1   of the departure recommended by any motion, will not depend on whether convictions are obtained in

2   any case. I also understand that the Court will not be bound by any recommendation made by the

3   government.

4         12.    I agree not to commit or attempt to commit any crimes before sentence is imposed or

5   before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not

6   to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the

7   government; and not to fail to comply with any of the other promises I have made in this Agreement. I

8   agree that if I fail to comply with any promises I have made in this Agreement, then the government will

9   be released from all of its promises in this Agreement, including those set forth in the Government's

10   Promises Section below, but I will not be released from my guilty plea.

11        13.    If I am prosecuted after failing to comply with any promises I made in this Agreement,

12   then (a) I agree that any statements I made to any law enforcement or other government agency or in

13   Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in

14   any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal

15   Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or

16   rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c)

17   I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations

18   period has run between the date of this Agreement and the date I am indicted.

19        14.    I agree that I personally obtained and acquired $50,000.00 from the violation in Count

20   One to which I am pleading guilty and I agree to the entry of a forfeiture money judgment in that

21   amount (the "Forfeiture Money Judgment"). I admit that the Forfeiture Money Judgment constitutes

22   proceeds from a violation of 18 U.S.C. § 1030(b), and thus is forfeitable to the United States pursuant to

23   the provisions of 18 U.S.C. § 1030(i)(1)(B) and the procedures outlined in Rule 32.2 of the Federal

24   Rules of Criminal Procedure and 21 U.S.C. § 853. I admit that because of my own acts or omissions,

25   the proceeds I originally obtained cannot be located upon the exercise of due diligence or have been

26   placed beyond the jurisdiction of the Court. As such, I agree that the procedures set forth in 21 U.S.C.

27   § 853(p)(2) are applicable.

28

PLEA AGREEMENT               10                          v. 010/02/2019
CR 18-00348 LHK

1    I agree I will not contest any forfeiture proceeding that may be brought pursuant to this

2  Agreement.  I further agree to waive all constitutional and statutory challenges in any manner (including

3  direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this

4  Agreement on any ground, including that the forfeiture constitutes an excessive fine or punishment or

5  that the forfeiture proceeding was brought in violation of any statute of limitations.

6    I agree to make payment to the United States of the entire amount of the Forfeiture Money

7  Judgment.  I agree that all payments I make towards the Forfeiture Money Judgment shall be made by

8  certified or bank check, payable to the "United States" and sent by overnight delivery to the Chief of the

9  Asset Forfeiture Unit, 450 Golden Gate Ave, 11th Floor, San Francisco, CA 94102, with the criminal

10  docket number noted on the face of the check.  I agree to assist fully the government in effecting the

11  payment of the Forfeiture Money Judgment.

12    15.    I agree that this Agreement contains all of the promises and agreements between the

13  government and me, that this Agreement supersedes all previous agreements that I had with the

14  government (including any "proffer" agreement), and I will not claim otherwise in the future.  No

15  modification of this Agreement shall be effective unless it is in writing and signed by all parties.

16    16.    I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of

17  California only, and does not bind any other federal, state, or local agency.

18  The Government's Promises

19    17.    The government agrees not to file any additional charges against the defendant that could

20  be filed as a result of the investigation that led to the captioned Superseding Information, so long as the

21  defendant has fully disclosed such conduct to the government and otherwise complied fully with this

22  Agreement.

23    18.    If, in its sole and exclusive judgment, the government decides that the defendant has

24  cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the

25  meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the

26  Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the

27  defendant's cooperation and recommends a downward departure.

28

PLEA AGREEMENT                                   11                                   v. 010/02/2019
CR 18-00348 LHK

The Defendant's Affirmations

19.    I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

20.    I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

21.    I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial.  I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 10/30/19

_____
VASILE MEREACRE
Defendant

DAVID L. ANDERSON
United States Attorney

Dated: 10/30/19

_____
SUSAN KNIGHT
AMIE D. ROONEY
Assistant United States Attorneys

22.    I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement.  In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: 10/30/19

_____
DORON WEINBERG
Counsel for Defendant Mereacre

PLEA AGREEMENT
CR 18-00348 LHK

v. 010/02/2019

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry ___06/24/2019___



BRANDON GLOVER,

**BACKGROUND INFORMATION**

Investigation on  05/13/2019  at  San Jose, California, United States (In Person)

File #  288A-SF-2235532, 288A-SF-2114122                     Date drafted  05/14/2019

by  Jon K Chinn, Jeffrey S. Miller

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Angeli Decl. Exhibit 4
Page 1 of 8

288A-SF-2235532

(U) Proffer Interview of Brandon Glover on
Continuation of FD-302 of  05/13/2019                                                      , On   05/13/2019   , Page   2 of 8



Angeli Decl. Exhibit 4
Page 2 of 8

FBI_009748

288A-SF-2235532



**VASILE MEREACRE**

Angeli Decl. Exhibit 4
Page 3 of 8

FBI_009749

288A-SF-2235532



**UBER INTRUSION**

Angeli Decl. Exhibit 4
Page 4 of 8

288A-SF-2235532

Continuation of FD-302 of  (U) Proffer Interview of Brandon Glover on 05/13/2019 , On 05/13/2019 , Page 5 of 8



Angeli Decl. Exhibit 4
Page 5 of 8

FBI_009751

288A-SF-2235532

Continuation of FD-302 of    (U)  Proffer Interview of Brandon Glover on
05/13/2019    , On    05/13/2019    , Page    6 of 8



Angeli Decl. Exhibit 4
Page 6 of 8

FBI_009752



Angeli Decl. Exhibit 4
Page 7 of 8

FBI_009753

288A-SF-2235532

(U) Proffer Interview of Brandon Glover on

Continuation of FD-302 of  05/13/2019 _____ , On  05/13/2019 , Page  8 of 8



After reading the news reports of the Uber data breach, GLOVER then realized why Uber was so willing to pay them. One of the news reports indicated that the Federal Trade Commission was already negotiating with Uber on a previous data breach. It was obvious to GLOVER then that Uber was trying to hide the second breach.



Angeli Decl. Exhibit 4
Page 8 of 8

FBI_009754

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO.  12-265** |
| **ROBERT KALUZA** | **SECTION "K"(5)** |

## ORDER AND REASONS

Before the Court are the following motions which the Court will address *seriatim*:

1)  Defendant's Motion *in Limine* to Preclude Evidence of BP's and Transocean's Guilty Pleas (Doc. 274);

2)  Defendant's Motion *in Limine* to Exclude Judicial Findings Made in the Multidistrict Litigation (Doc. 276);

3)  Defendant's Motion *in Limine* to Exclude Improper Hypotheticals (Doc. 277);

4)  Defendant's Motion *in Limine* to Exclude Patrick O'Bryan's "Question Mark" Email and Related Testimony (Doc. 280);

5)  Defendant's Motion *in Limine* to Exclude Donald Vidrine's Guilty Plea and Conviction (Doc. 283);

6)  Defendant's Motion *in Limine*  To Exclude His Performance Evaluations, Performance Assessments, and Related Documents and Testimony (Doc. 284);

7)  Defendant's Motion *in Limine* to Exclude Evidence of Deaths (Doc. 285);

8)  Defendant's Motion *in Limine* to Preclude Improper Overview or Summary Testimony by Law Enforcement Agent (Doc. 286);

9)  Defendant's Motion *in Limine* to Exclude Email Exchange Between Kaluza and Anya Komogortseva (Doc. 290);

10)  Defendant's Motion *in Limine* to Exclude Wildlife Carcasses and Photos of Wildlife and Oil Soaked Beaches (Doc. 292);

11)  Defendant Motion *in Limine* to Exclude "Normalization of Deviance" Email (Doc. 294);

Angeli Decl. Exhibit 5
Page 1 of 19

12) Defendant's Motion *in Limine* Regarding Statements of Government Attorneys in MDL Civil Litigation (Doc. 298);

13) United States' Motion *in Limine* to Preclude Evidence, Question, Comment, or Argument Inviting Jury Nullification (Doc. 300);

14) United States' Motion *in Limine* to Exclude Evidence of Certain Statements Made by Department of Justice Civil Attorneys and to Require the Defendant to Identify pretrial all Statements He intends to Use Under Rule of Evidence 801(d)(2) (Doc. 301).

**1) Defendant's Motion *in Limine* to Preclude Evidence of BP's and Transocean's Guilty Pleas (Doc. 274)**

Defendant Robert Kaluza seeks to have the Court preclude the Government from mentioning before the jury the guilty pleas entered by BP Exploration and Production, Inc. and Transocean Deepwater Inc. The Government in large part does not oppose the motion except in the event that the defendant were to "open the door" by mentioning it at some point in the proceedings. At that point, the Government maintains that it should be able to mention same. Having reviewed the memoranda and the relevant law,

**IT IS ORDERED** that Defendant's Motion *in Limine* to Preclude Evidence of BP's and Transocean's Guilty Pleas (Doc. 274) is **GRANTED** subject to the Government's right to approach the bench and ask for reconsideration of this ruling in the event that defense counsel broaches this topic.

Angeli Decl. Exhibit 5
Page 2 of 19

**2)   Defendant's Motion *in Limine* to Exclude Judicial Findings Made in the Multidistrict Litigation (Doc. 276)**

Defendant Robert Kaluza seeks to have the Court exclude from evidence and preclude the Government from mentioning the judicial findings made in the multidistrict litigation, MDL 2179, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, on April 20, 2010.  The Government responds that it will not introduce such evidence at trial unless and until the defendant "opens the door" by mentioning same in opening statement, cross-examination questioning or defense evidence.  Having reviewed the memoranda and the relevant law,

**IT IS ORDERED** that Defendant's Motion *in Limine* Exclude Judicial Findings Made in the Multidistrict Litigation (Doc. 276) is **GRANTED** subject to the Government's right to approach the bench and ask for reconsideration of this ruling in the event that defense counsel broaches this topic.  The Court further notes that such extraordinary circumstances are not evident as in its estimation these civil determinations are not in any way admissible in this criminal trial.

**3)   Defendant's Motion *in Limine* to Exclude Improper Hypotheticals (Doc. 277)**

Defendant Robert Kaluza seeks to have the Court preclude the Government from asking hypothetical questions to lay witnesses regarding what "they would have done" had they been in defendant's position during the negative test.   As such, defendant maintains that such questions would violate Fed. R. Evid. 602 and 701, which prevent lay witnesses from speculating based on facts outside of their personal knowledge.  Moreover, defendant contends that such testimony would fail the Rule 403 probative/prejudice balancing test.

The Government responds that it should be able to ask that type of hypothetical question to all the well site leaders who worked on the Deepwater Horizon during the drilling of the

Angeli Decl. Exhibit 5
Page 3 of 19

Macondo well, as well as to other lay witnesses with similar personal experience in deepwater drilling. It maintains that "the testimony of these witnesses about what they would have done if they knew what the defendant knew about the negative pressure test is admissible as lay opinion testimony under Rules 602 and 701 because it constitutes 'straightforward conclusions for observations informed by [the witnesses'] own experience in the deepwater drilling industry and on the Deepwater Horizon that can be test adequately by cross-examination. '" *United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997). Moreover, the Government argues that the information is admissible given its high probative value that is not substantially outweighed by the risk of any unfair prejudice.

Rule 602 of the Federal Rules of Evidence provides, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703." Fed. R. Evid. 602. Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge withing the scope of Rule 702.

Fed. R. Evid. 701.

"Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing." *National Hispanic*

4

*Circus, Inc., v. Rex Trucking, Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005). Using that premise, the

Fifth Circuit in *United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010), held that a witness whose

former job duties as a risk officer at a corporation included risk analysis was allowed to testify as

a lay witness concerning his analysis with respect to the evaluation of risk tolerance.

> Because [the witness]'s knowledge and analysis were derived from duties he held
> at Dynegy, his opinions were admissible as testimony based upon personal
> knowledge and experience gained while employed by Dynegy. See Fed. R. Evid.
> 701. He engaged in precisely the kind of analysis he regularly performed as chief
> risk officer; the fact that he drew particular opinion and projections for purposes of
> this case does not make him an "expert" within the meaning of Federal Rule of
> Evidence 702. *See Tex. A&M Research Found. v. Magna Transp., Inc.* 388 F.3d
> 394, 403 (5th Cir. 2003).

*Id.* at 416.

> Nonetheless, as a threshold matter, as noted in *Howard v. Offshore Liftboats, LLC*, 2016

WL 316716 (E.D. La. Jan. 26, 2016):

> "[A] lay opinion witness may not testify based on speculation." "[A] lay witness's
> opinion testimony which constitutes speculation as to what might have been done
> or what might have occurred is not based on his first-hand perception of actual
> events, and thus does not satisfy the requirements" of Federal Rule of Evidence
> 701.

*Id.* at *4 (footnotes omitted).

> In the case at bar, the issue surrounding the proper course of action in the event of a

negative pressure test is pivotal. As such, the Court finds that the use of hypotheticals as to all

witnesses, save Donald Vidrine, as to "what the witness would have done as to the Macondo

well" will not be allowed. Those witnesses' testimony would not be rationally based on their

perception as they were not present at that time. However, this decision does not preclude the

Government eliciting testimony from other well site leaders based on personal knowledge as to

Angeli Decl. Exhibit 5
Page 5 of 19

what was done by those witnesses in other instances of a negative pressure tests.  In other words, such testimony must be based on a witness's own experience.

As to Donald Vidrine, his testimony will be  rationally based on his perception since he was present at the time of the accident; such testimony will be helpful to determine a fact at issue; and like the witness in *Valencia*, his testimony concerns matters that were specifically part of his business responsibilities, and, as such, does not constitute "expert" testimony prohibited under Rule 701.

Moreover, given the parameters set forth herein, the Court finds that Vidrine's testimony will not constitute evidence that should be excluded under Fed. R. Evid. 403 because its prejudicial value will not outweigh its probative value.  However, the Court finds that testimony based on hypotheticals with respect to any other witness would be overly prejudicial and outweighs any probative value it may have.  Accordingly,

**IT IS ORDERED** that Defendant's Motion *in Limine* to Exclude Improper Hypotheticals (Doc. 277) is **DENIED** as to the testimony of Donald Vidrine as set forth above and **GRANTED** as to other witnesses with the provisos contained herein.  The Court reminds counsel that a proper foundation must be laid for any such testimony and counsel should approach the bench to discuss this matter before eliciting such testimony from Donald Vidrine.

The Court further notes that the Government has indicated in its Disclosure of Expert Witnesses (Doc. 265) that it may call Ronald Sepulvado, Murray Sepulvado and Earl Lee and may seek to have them qualified as expert witnesses, and therefore, qualified to answer hypothetical questions concerning what would they have done had they encountered a negative pressure test.  This issue will be addressed at the *Daubert* hearing scheduled for February 11,

Angeli Decl. Exhibit 5
Page 6 of 19

2016. Specifically the Court notes that at issue is not only the specialized knowledge of these witnesses but also the scientific knowledge involved in making such assessments.

**4)** **Defendant's Motion *in Limine* to Exclude Patrick O'Bryan's "Question Mark" Email and Related Testimony (Doc. 280)**

Defendant Robert Kaluza seeks to have the Court preclude the Government from mentioning in front of the jury or introducing into evidence Patrick O'Bryan's "question mark" email and any related testimony.   This e-mail was from BP Vice President Patrick O'Bryan in response to forwarded e-mail which contained the Defendant's description of the "bladder effect" theory which is again at the epicenter of this trial.  Defendant maintains that it is hearsay under Fed. R. Evid. 801 and 802; moreover, "any testimony from O'Bryan regarding the bladder effect, constitutes improper lay opinion testimony under Fed. R. Evid. 602 and 701."  Finally, the defendant maintains that it is irrelevant and unfairly prejudicial under Fed. Rules of Evid. 401, 402 and 403.

The Government contends that the e-mail is admissible as an exception to the hearsay on three independent bases: (1) under Fed. R. Evid. 803(2) it is an "excited utterance"; (2) Rule 803(1), it is as a "present sense impression;" and (3) under Rule 803(6), it is as a business record. In addition, testimony concerning Mr. O'Bryan's views on the "bladder effect"  would not constitute  improper lay testimony in light of *United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010).  Moreover, it is highly relevant and its probative value far outweighs it prejudicial nature under Fed. R. Evid. 401, 402, and 403.

The Court finds that the e-mail itself will be excluded from evidence as it would be confusing to the jury and  it was written five days after the fact. Indeed, such a "question mark"

7

response would be an improper answer to a question posed to Mr. O'Bryan in Court.  However, as to Mr. O'Bryan's testimony, he will be allowed to testify about general industry practices based on his specific perceptions and knowledge concerning the Macondo well as well as matters within his own personal knowledge; however,  he will not be allowed to answer any hypothetical questions.  As an example, he may be asked whether he had heard of the bladder effect.  He may be asked what is normal procedure when a "kick" is experienced when completing a well.  He will be limited to only his personal knowledge in that regard.    Accordingly,

      **IT IS ORDERED** that Defendant's Motion *in Limine* to Exclude Patrick O'Bryan's "Question Mark" Email and Related Testimony (Doc. 280) is **GRANTED** in so far as the question mark email response shall not be admitted and is **DENIED** in so far as Mr. O'Bryan testifies in accordance with the parameters set forth above.  The Court requests that prior to his testifying, there be a recess and bench conference to insure that the parties understand the Court's order.

**5)     Defendant's Motion *in Limine* to Exclude Donald Vidrine's Guilty Plea and Conviction (Doc. 283)**

      Defendant Robert Kaluza seeks to have the court preclude the Government from mentioning before the jury Donald Vidrine's guilty plea and conviction unless the defense, before the end of Vidrine's direct examination, notifies the government of its intent to introduce Vidrine's guilty pleas into evidence.  The Government contends that the motion should be denied; it contends that under Fifth Circuit precedents, the Government may impeach its own witness and may admit evidence of a guilty plea for the proper purpose of explaining the relationship between the witness and the Government.

8

Based on *United States v. Leach*, 918 F.2d 464 (5th Cir. 1990), the Court finds defendant's motion to have merit.  Accordingly,

**IT IS ORDERED** that Defendant's Motion *in Limine* to Exclude Donald Vidrine's Guilty Plea and Conviction (Doc. 283) is **GRANTED.**  Unless the defense–before the end of Vidrine's direct examination–notifies the Government of its intent to offer Vidrine's guilty plea in evidence, the United States shall not mention Vidrine' guilty plea or conviction before the jury without first approaching the bench.

6)      **Defendant's Motion *in Limine*  To Exclude His Performance Evaluations, Performance Assessments, and Related Documents and Testimony (Doc. 284)**

Defendant Robert Kaluza seeks to have the Court preclude the Government from offering into evidence or mentioning before the jury his BP performance evaluations and assessments and related documents and testimony.  The Government maintains that it intends to use such evidence to rebut any evidence proffered by the defendant that he does not have a propensity for being negligent.

As stated in *Moorhead v. Mitsubishi Aircraft International, Inc.*, 828 F.2d 278 (5th Cir. 1987), "Under Fed. R. Evid. 404 evidence of [a defendant's] past conduct is not admissible to prove that he acted in conformity with that conduct on the afternoon of the crash, but it is admissible to rebut evidence of [the defendant's] past good conduct as a pilot offered in his defense."  Accordingly,

**IT IS ORDERED** that Defendant's Motion *in Limine*  To Exclude His Performance Evaluations, Performance Assessments, and Related Documents and Testimony (Doc. 284) is **GRANTED** subject to the Government's right to approach the bench and ask for reconsideration

9

of this ruling in the event that defense counsel offers evidence concerning the Defendant not

having a propensity for negligence.

**7)     Defendant's Motion *in Limine* to Exclude Evidence of Deaths (Doc. 285)**

Defendant Robert Kaluza seeks to have the Court preclude the Government from offering

evidence of or mentioning the deaths of the eleven people killed in the *Deepwater Horizon*

accident.  The Government responds that it should be able to do so in order "to present a complete

picture of the facts" and "prevent the jury from making incorrect assumptions about why certain

witnesses will not testify."  (Doc. 329 at 1).

At issue in this case is a violation of the Clean Water Act; as such, the deaths are not

relevant to the Government's burden of proof.  However, the Court recognizes that four

participants in the negative test will be mentioned, but each of these persons died as a result of the

explosion.  Thus, there is potential for the jury to engage in speculation as to why these

individuals have not been called to testify.  As such,

**IT IS ORDERED** that Defendant's Motion *in Limine* to Exclude Evidence of Deaths

(Doc. 285) is **GRANTED in part and DENIED in part**.  The Court shall include as part of its

explanation of the case upon the jury being seated that Dewey Revette, Jason Anderson, Donald

Clark, and Stephen Curtis died in the explosion onboard the *Deepwater Horizon* on April 20,

2010.

**IT IS FURTHER ORDERED** that neither party shall otherwise argue or present

evidence of any other deaths.

10

**IT IS FURTHER ORDERED** that neither party, without first approaching the bench, shall argue or suggest whether these decedents would have testified; or what they would have said if they had testified; or seek to admit evidence concerning the statements and conduct of these decedents during and leading into the events of April 20.

8)    **Defendant's Motion *in Limine* to Preclude Improper Overview or Summary Testimony by Law Enforcement Agent (Doc. 286)**

Defendant Robert Kaluza seeks to have the Court preclude the Government from offering improper overview or summary testimony by a law enforcement agent.  The Government responds that in large part it does not oppose the motion to preclude the use of law enforcement agents to provide "overview" testimony relating to evidence that the Government has not yet introduced.  However, it maintains that it is within the law's purview to have agents act as summary witnesses regarding documents at trial.

The Fifth Circuit has noted that summary evidence is "appropriate in several scenarios:"

First, Rule 1006 explicitly allows introduction of a "summary, chart or calculation" when the "content of voluminous writings . . . cannot be conveniently examined in court."  Fed. R. Evid. 1006; *see Nguyen*, 504 F.3d at 571-72; *Bishop*, 264 F.3d at 548; *Castillo*, 77 F.3d at 1499.  Second, expert witnesses are authorized to offer opinion testimony that rests on facts or data that reasonably were relied on to form the expert opinion and hence may constitute summary opinion of a specialized character.  Fed. R. Evid. 702, 703;  *Moore*, 997 F.2d at 57-59.  Third, summary evidence, usually in the form of demonstrative aids but also, we have said, in complex cases, through witness testimony accompanying Rule 1006 evidence, may be admissible.  *See Armstrong*, 619 F.3d at 383-85; *Taylor*, 210 F3d at 315; *Winn*, 948 F.2d at 157-59.

In the context of testimony accompanying Rule 1006 summary evidence, we have held that summary testimony referencing prior testimony is appropriate so long as the testimony has an "adequate foundation in evidence that is already admitted," is unquestionably accurate, and is "accompanied by a cautionary jury instruction."  *Armstrong,*  619 F.3d at 385; *United States v. Fullwood*, 342 F.3d

11

409, 414 (5th Cir. 2003). Similarly, we have emphasized that the evidence being
summarized must be of sufficient complexity (numerous witnesses, technical
testimony, and scores of exhibit) to be helpful under Rule 611(a) and not
excludable under Rule 403 as cumulative. *Armstrong*, 619 F.3d at 385; *Fullwood*,
342 F.3d at 414.

*United States v. Echols*, 574 Fed. Appx. 350, 356 (5th Cir. 2014). Accordingly,

   **IT IS ORDERED** that Defendant's Motion *in Limine* to Preclude Improper Overview or

Summary Testimony by Law Enforcement Agent (Doc. 286) is **GRANTED** in part and is

**DENIED** in part. On no account shall overview testimony be allowed. However, the Court shall

allow summary testimony as to records already introduced in evidence; however, no opinion

testimony shall be allowed in that context. Moreover, no summary of live witnesses' testimony

shall be allowed unless there is (1) an adequate foundation in evidence that is already admitted,

(2) such evidence is unquestionably accurate, and (3) such testimony shall be accompanied by the

following cautionary jury instruction:

> I remind the jury that this evidence is not independent evidence. It is
> admitted to assist in summarizing other evidence. If you find that the exhibit does
> not accurately or correctly summarize the evidence that has been otherwise
> established, you should disregard it to that extent, and give it only the weight that
> you think it deserves.

**9)   Defendant's Motion *in Limine* to Exclude Email Exchange Between Kaluza and Anya
      Komogortseva (Doc. 290)**

   Defendant Robert Kaluza seeks to have the Court exclude evidence and comment on an

email exchange between Kaluza and Anya Komogortseva as irrelevant and unfairly prejudicial.

The Government contends that this exchange is relevant to demonstrate Kaluza's presence on the

rig and to give the jury "a complete picture of Kaluza's demeanor and state of mind" after the

12

accident. The Government contends this evidence show that Kaluza had a cavalier attitude toward the events that occurred on the *Deepwater Horizon*. Clearly, this evidence is far more prejudicial than it is probative under Fed. R. Evid. 403. Accordingly,

**IT IS ORDERED** that Defendant's Motion *in Limine* to Exclude Email Exchange Between Kaluza and Anya Komogortseva (Doc. 290) is **GRANTED**.


**10)    Defendant's Motion *in Limine* to Exclude Wildlife Carcasses and Photos of Wildlife and Oil Soaked Beaches (Doc. 292)**

Robert Kaluza seeks to have the Court preclude the Government from offering into evidence or showing the jury wildlife carcasses and photographs of wildlife and oil soaked beaches. Defendant's counsel states in the motion that the Defendant has offered to stipulate that oil was discharged from the Macondo Well in harmful quantities as required by 33 U.S.C. §§ 1319(c)(1)(A), 1321(b)(3). Thus, the Defendant contends that this pictorial evidence's prejudicial nature far outweighs any probative value these pictures might have. The Government responds that these pictures are necessary to prove a required element of establishing a Clean Water Act violation and that such evidence is neither unfairly prejudicial nor cumulative. Moreover, the Government does not intend to introduce any carcasses. In the Defendant's reply memorandum, the Defendant reduces his objection to Govt. Exhibit 59 which are pictures of the effect of the oil spill on the wildlife.

Provided that the defendant stipulates that "the amount of oil discharged was of such quantities as may be harmful to public health and welfare or the environment," as required for proof of the violation charged, the introduction of pictures of the dead animals would not be to prove that element of the crime, but instead would serve primarily to inject emotional reactions

13

from the jury.  As such, the court finds that pursuant to Fed. R. Evid. 403, because the probative

value is outweighed by the prejudicial nature of these pictures,

      **IT IS ORDERED** that the Defendant's Motion *in Limine* to Exclude Wildlife Carcasses

and Photos of Wildlife and Oil Soaked Beaches (Doc. 292) is **DENIED** as moot in part and

**GRANTED** in so far as the Government will only be allowed to offer the picture of the dolphins

in the oil soaked water from Exhibit 59 provided that the Defendant enter into the necessary

stipulation prior to trial.  Failure to do so would be grounds for the Government to seek

reconsideration of this ruling.

**11)**      **Defendant Motion *in Limine* to Exclude "Normalization of Deviance" Email (Doc. 294)**

      Defendant Robert Kaluza moves the Court to preclude the Government from presenting

evidence or comment on an April 12, 2010 email from Kaluza's supervisor, Tony Emmerson, to

Kaluza containing a link to search results for YouTube videos on "normalization of deviance."

The Court finds such evidence irrelevant.  Accordingly,

      **IT IS ORDERED** that Defendant Motion *in Limine* to Exclude "Normalization of

Deviance" Email (Doc. 294) is **GRANTED**.

**12)**      **Defendant's Motion *in Limine* Regarding Statements of Government Attorneys in MDL Civil Litigation (Doc. 298) and the United States Motion in Limine to Exclude Evidence of Certain Statements Made by Department of Justice Civil Attorneys and to Require the Defendant to identify Pretrial All statements He intends to Use Under Federal Rule of Evidence 801(d)(2) (Doc. 301)**

14

These motions concern the issue of whether the certain statements made by Government attorneys in the MDL Civil Litigation concerning the *Deepwater Horizon* accident (MDL 2179, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, are to be admitted or excluded in this criminal trial. Defendant Kaluza seeks a pretrial ruling that "statements" by the Department of Justice attorneys in this matter can be admitted. Kaluza contends that under the holding in *United States v. Gluk*, — F.3d —, 2016 WL 304041 (5th Cir. Jan. 25, 2016), the failure of the Court to allow introduction of these materials would be "clear error." The Government seeks to exclude "certain statements" and for the defendant to be required to identify those particular statements it seeks to introduce at trial.

Thus, the first issue is a determination concerning which "statements" are sought to be introduced. In Defendant Kaluza's Response to the Government's Motion (Doc. 328), counsel for Defendant clearly states that he seeks "admission on two topics: (1) that BP Well site Leader Donald Vidrine told Senior BP Mark Hafle about the pressure on the drill pipe an hour before the blowout and (2) that maintaining the blowout preventer (BOP) would have prevented the oil spill." (Doc. 328 at 1 of 10). In addition, counsel attached Exhibits 1 and 2 stating "Kaluza intends to introduce only two excerpts from the government's MDL pleadings. One relates to the Hafle-Vidrine call, and the other to the BOP issue."

In its reply brief, the Government opines that "the defendant advances no opposition to the requirement of pretrial identification, so that portion of the government's motion should be granted." It appears to the Court that not only is there no opposition to pretrial identification, the defendant has made that identification of the materials clear in Doc. 328, Exhibits 1 and 2 which fact has been verified by the Court. So, the Government's motion is moot in that regard.

15

Generally, it is true that statements made by the Department of Justice are generally considered to be party admission, and, therefore, are admissible non-hearsay. *United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1115 (D.N.M. 2012) (Court found prosecutor's statements from closing argument in prior trial were admissible as admissions by a party opponent); *United States v. Ballou*, 59 F. Supp. 3d 1038, 1075 (D.N.M. 2014) (Statements by Department of Justice employees in prior proceeding are party admissions). With that in mind, the Court will now turn to the substantive issue of the admissibility of these two statements.

**Exhibit 1–Hafle-Vidrine Discussion**

At 8:52 p.m. on April 20th, Houston-based BP Senior Engineer Mark Hafle had a ten minute telephone conversation with Well Site Leader Vidrine concerning, *inter alia*, the findings of the negative test. The subject of this phone conversation is central to the Defendant's case because the court in the civil trial found Mr. Hafle told Vidrine that he should consider that there was trapped pressure in the line, but Mr. Vidrine said that he was satisfied that the rig crew had performed a successful negative test. The Government basically took the position that BP had a "full half hour after the conclusion of the call to close in the well through normal operation of the BOP." This position supports Defendant Kaluza's defense.

The problem with these "positions" is that they were constructed from interview notes prepared by BP investigators. At the civil trial, neither Mr. Hafle nor Mr. Vidrine testified. Clearly, the best evidence of what Mr. Hafle told Mr. Vidrine would be Mr. Hafle's direct testimony and not the notes of a third party. The notes then could be used to impeach Mr. Hafle and as such admissible.

16

If Mr. Hafle does not testify, the Court will then reconsider this ruling.  In the event that the Court allows the admission of this statement, then the Court will consider admission of those other statements made demonstrating that the Government contended there were multiple causes as concerns this accident.

**Exhibit 2–BOP Would Have Prevented the Spill**

The Government in its Reply in Support of its Motion in Limine (Doc. 349) stated that it has no objection to the admission of Exhibit 2 save for Paragraph 331, which states:

> 331.  The April 20th blowout of the Macondo well, and the resulting explosions, fire, loss of life, personal injuries, oil spill and related damages and injuries resulted from, and were proximately caused by, the foregoing acts and omission of BP with respect to the design, configuration and maintenance of the BOP.

Doc. 328  (Exhibit 2 at p.88 of the original document).  As that paragraph speaks to the ultimate factual decision this jury must make, the Court finds that under Fed. R. Evid. 403, this paragraph is not admissible because it is within the purview of the jury in this case to determine causation. *United States v. O'Keefe*, 426 F.3d 274, 280-81 (5th Cir. 2005).   Accordingly,

**IT IS ORDERED** that Defendant's Motion *in Limine* Regarding Statements of Government Attorneys in MDL Civil Litigation (Doc. 298) and the United States Motion in Limine to Exclude Evidence of Certain Statements Made by Department of Justice Civil Attorneys and to Require the Defendant to identify Pretrial All statements He intends to Use Under Federal Rule of Evidence 801(d)(2) (Doc. 301) are **GRANTED** in part and **DENIED** in part and **MOOT as to the designation of statements.**

17

As to Exhibit 1, these statements may only be used to impeach Mr. Hafle in the event that he takes the stand. If he does not take the stand, the Court will reconsider its ruling upon proper motion.

As to Exhibit 2, these statements may be admitted except ¶ 331 which shall be redacted from the document.

**13)    United States' Motion *in Limine* to Preclude Evidence, Question, Comment, or Argument Inviting Jury Nullification (Doc. 300)**

The United States seeks to have the Court preclude the Defendant from introducing evidence, questioning, commenting and arguing that the defendant is a scapegoat for BP or its senior executives and thus inviting jury nullification. The Defendant has responded that he will not argue jury nullification; however, the Defendant contends that the Government's position is overly broad and would hamper his ability to present his defense.

The  Defendant's counsel specifically discusses the cross-examination of certain witnesses ostensibly to be called by the Government, who were members of the Bly Team.  Apparently the Defendant will attempt to prove that the Bly Team was biased in favor of BP senior executives in its reporting.  The Government is concerned that the Defendant will use this as a proxy for the Defendant being a "scapegoat."

The prophylactic measures that the Government seeks are overly broad to rule on without context.  Thus, the Court will have to rule on such questions as they arise at trial.  Thus, should the Government want to object to a question, it shall request a bench conference to raise such an objection.  However, the court will not allow the defendant to use the term "scapegoat" or in any way challenge the charging decision of the Government.  Accordingly,

18

**IT IS ORDERED** that the Motion is **GRANTED in part** and **DEFERRED in part**.

Defendant's counsel shall not use the term "scapegoat" or in any way challenge the charging

decision of the Government.

New Orleans, Louisiana, this 3rd day of February, 2016.

_____ 1

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| GAS PIPE, INC. (7), | § | No. 3:14-cr-00298-M |
| AMY LYNN, INC. (8), | § | |
| GERALD SHULTS (9), | § | |
| AMY HERRIG (10), | § | |
| BRIDGET PAYROT (18), | § | |
| CAROLYN SETTLEMIRE (29), | § | |
| TOM SCOTT (30) | § | |

## ORDER

Before the Court are the Motion in Limine to Exclude Guilty Pleas and Convictions of Co-Defendants [ECF No. 962], the Motion in Limine to Exclude Prong Two Evidence [ECF No. 963], and the Motion in Limine Prohibiting the Government from Referencing "Spice" Overdoses, "K2" Overdoses, or Similar Evidence [ECF No. 978].  Also before the Court are Defendant Bridget Payrot's Motion to Adopt the Motion to Exclude Evidence of Overdoses [ECF No. 985] and Defendant Tom Scott's Motion to Adopt the Motion to Exclude Evidence of Overdoses [ECF No. 992].

The Motions to Adopt [ECF Nos. 985, 992] are **GRANTED**.

The Motion to Exclude Guilty Pleas [ECF No. 962] is **GRANTED**, the Motion to Exclude Prong Two Evidence is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Exclude Evidence of Overdoses [ECF No. 978] is **GRANTED IN PART** and **DENIED IN PART**.

## I.      Motion to Exclude Guilty Pleas

In their Motion, Defendants state that they do not intend to impeach their co-defendants with evidence of their pleas of guilty or their convictions in this action.  Therefore, Defendants seek to exclude evidence of the pleas and convictions of their co-defendants "until the defense notifies the [G]overnment . . . that the [D]efendants intend to introduce that witness's plea or conviction into evidence."  [ECF No. 962 at 1–2].  At the pretrial conference, all Defendants removed the conditional language above and stated on the record that they will, under no circumstances, seek to impeach their co-defendants based on their pleas or convictions at the upcoming trial.

Based on this representation, the Court finds that Defendant's Motion to Exclude Guilty Pleas should be **GRANTED**.  The Court will not permit the introduction of the co-defendant's plea agreements or the accompanying factual resumes, assuming that these materials do not later become proper impeachment evidence for the Government given the testimony offered by a co-defendant witness.  Further, the Court will not permit the introduction of the fact that a co-defendant witness has pled guilty or been convicted in this action.

The Government will be permitted to ask general questions during voir dire regarding a prospective juror's willingness to rely and act upon the testimony of an accomplice.  The Government will in no way allude to the relationship between this line of questioning and this action, and the Government will clarify that it merely seeks to determine a prospective juror's willingness to rely on the testimony of others who engaged in alleged criminal acts with an accused.

The Court will instruct the jury that its duty is to determine only the guilt of the Defendants on trial in this action and that it is not to consider or speculate regarding the guilt, innocence, or

Angeli Decl. Exhibit 6
Page 2 of 6

status of others who participated in the allegedly illegal acts at issue, include those giving

testimony at trial.

## II.        Motion to Exclude Prong Two Evidence

Count Four charges Defendants Gas Pipe, Inc., Amy Lynn, Inc., Gerald Shults, and Amy

Herrig with conspiracy to distribute a controlled substance analogue.  [ECF No. 672 at 23].

Defendants offer the following stipulation regarding this count:

> The Defendants hereby stipulate that during all times material to the
> Indictment they knew that the herbal incense or "spice" products sold by the
> Gas Pipe were intended by their purchasers for human consumption.  The
> Defendants further stipulate that these products had a stimulant, depressant, or
> hallucinogenic effect on the central nervous system that was substantially
> similar to a schedule I or II controlled substance and that the Defendants had
> knowledge of that fact.

[ECF No. 1001 at 1].

Given this stipulation, Defendants move to exclude the following items of evidence:

(1) The testimony of Dr. Jordan Trecki, the Government's expert on the stimulant,

depressant, and hallucinogenic effect of the alleged controlled substance analogues.

(2) Testimony and documents showing that customers and/or employees of Gas Pipe, Inc.

ingested, and in some cases "rated," products containing substances the Government

alleges to be analogues.

(3) Testimony that Mr. Shults and/or Ms. Herrig ingested the products containing

substances the Government alleges to be analogues.

(4) Testimony and documents related to deaths and/or ill effects of the substances that the

Government alleges to have been associated with Gas Pipe, Inc. products.

Angeli Decl. Exhibit 6
Page 3 of 6

(5) Course of investigation evidence by law enforcement that the investigation of Gas Pipe,

Inc. commenced as a result of reports of ill effects among users of Gas Pipe, Inc.

products.

(6) Testimony by Government witnesses, including but not limited to Dr. Trecki, about the

dangers or ill effects of synthetic cannabinoids.

(7) Testimony or documents regarding the history of, and reasons for, the passage of the

Controlled Substances Analogue Act.

[ECF No. 963 at 3–4].

**Item (1):**  The Court finds that the Government should be permitted to prove, generally,

the effects of the substances alleged to be analogues.  *Old Chief v. United States*, 519 U.S. 172,

186 (1997).  This includes the general fact that death by overdose has resulted from use of the

substances.  In a drug case, the Government seeks to punish Defendants for involvement with

substances proscribed by law.  It is logical to believe that jurors would expect to understand why

a certain substance has been proscribed and why possession, use, and distribution of the

substance is punished.  *Id.*  ("[T]here lies the need for evidence in all its particularity to satisfy

the jurors' expectations about what proper proof should be.").  Thus, the Government, if it so

chooses, may present the testimony of Dr. Trecki regarding the effects of the substances alleged

to be analogues, including the general fact that death by overdose has occurred.  Dr. Trecki,

however, will not be permitted to opine regarding whether a substance alleged to be a controlled

substance analogue meets prong two of the definition of a controlled substance analogue.

**Items (2) and (3):**  Defendants' Motion with regard to these items is denied.  The

evidence which Defendants seek to exclude is relevant to issues which the Government must

prove, and to which Defendants have not stipulated, in Counts One and Four.  Namely, in Count

Angeli Decl. Exhibit 6
Page 4 of 6

One, the Government must show that Defendants participated in the misbranding of a drug. [*See* ECF No. 672 at 5]. The evidence sought to be excluded in Items (2) and (3) is relevant to this issue. Further, Count Four charges Defendants with conspiring to distribute a controlled substance analogue. [*Id*. at 23]. The evidence sought to be excluded in Items (2) and (3) is relevant to whether Defendants reached an agreement to commit a crime in distributing the relevant substances, whether Defendants knew the unlawful purpose of the agreement, and whether Defendants joined the agreement willfully.

**Item (4):** Defendants' Motion is granted with regard to the evidence outlined in Item (4). In light of Defendants' stipulation, the Government will not be permitted to introduce evidence that specific customers or users of Defendants' products suffered death or ill effects from the use of these products. Such evidence is highly prejudicial to Defendants and has limited probative value given Defendants' stipulation.

**Item (5):** This evidence is the subject of another motion in limine made by Defendants. [*See* ECF No. 967 at 4–5]. At the pretrial conference, when reviewing this other motion, the parties and the Court agreed that disputes regarding this evidence will be best resolved by objection and ruling at trial. Therefore, Defendants' Motion is denied with regard to Item (5) without prejudice to Defendants later objecting to admission of this evidence at trial.

**Item (6):** For the reasons stated with regard to Item (1), Defendants' Motion is denied with respect to Item (6).

**Item (7):** For the reasons stated on the record at the pretrial conference, the Motion is denied with respect to Item (7).

Angeli Decl. Exhibit 6
Page 5 of 6

III.    **Motion to Exclude Evidence of Overdoses**

Finally, Defendants move to prohibit the Government from raising during voir dire,

through witnesses, or during argument any references to "spice" overdoses, "K2" overdoses, or

similar evidence and statements unless the Government can first establish a direct nexus between

such references and Defendants.  [ECF No. 978 at 4].  At the pretrial conference, the Court

granted this Motion with regard to all specific events of overdose unrelated to Gas Pipe.  In light

of the Court's ruling with regard to Item (4) of Defendants' Motion to Exclude Prong Two

Evidence, Defendants' Motion to Exclude Evidence of Overdoses is **GRANTED IN PART**.

The Government will be permitted to allude, generally, to the fact that death by overdose has

resulted from the use of the substances at issue.

IV.    **Conclusion**

For the reasons above, the Motion to Exclude Guilty Pleas [ECF No. 962] is **GRANTED**,

the Motion to Exclude Prong Two Evidence is **GRANTED IN PART** and **DENIED IN PART**,

and the Overdose Limine Motion [ECF No. 978] is **GRANTED IN PART** and **DENIED IN**

**PART**.  These rulings are subject to modification and revision by the Court.

**SO ORDERED**.

September 21, 2018.

BARBARA M. G. LYNN
CHIEF JUDGE

6

E-Filing,REFDIS

# U.S. District Court
## California Northern District (San Francisco)
## CRIMINAL DOCKET FOR CASE #: 3:15-cr-00234-CRB-28

Case title: USA v. Karapedyan et al                    Date Filed: 04/28/2015

Assigned to: Hon. Charles R. Breyer
Referred to: Magistrate Judge Jacqueline
Scott Corley

**Defendant (28)**

**David Miller**                    represented by   **John D. Cline**
                                                     Law Office of John D. Cline
                                                     600 Stewart Street
                                                     Suite 400
                                                     Seattle, WA 98101
                                                     360-320-6435
                                                     Email: cline@johndclinelaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

                                                     **David Seiyei Wakukawa**
                                                     Maxwell Law PC
                                                     23 Geary Street, Suite 600
                                                     San Francisco, CA 94108
                                                     415-494-8887
                                                     Fax: 415-329-1985
                                                     Email: dsw@kcmaxlaw.com *(Inactive)*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **K.C. Maxwell**
                                                     Maxwell Law, PC
                                                     23 Geary Street, Suite 600
                                                     San Francisco, CA 94108
                                                     415-494-8887
                                                     Fax: 415-329-1985
                                                     Email: kcm@kcmaxlaw.com
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

**Pending Counts**                                   **Disposition**

18:1962(d) Racketeering conspiracy
(1)

18:1962(d) Racketeering Conspiracy
(1s)

18:1962(d) Racketeering conspiracy

https://ecf.cand.uscourts.gov/cgi-bin/DktRpt.pl?25256738235704-L_1_0-1

Angeli Decl. Exhibit 7
Page 1 of 3
1/48

| | | |
|---|---|---|
| | | **Motion to Compel as to David Miller (28) Signed by Judge Charles R. Breyer on 06/17/2020. (crblc2, COURT STAFF) (Entered: 06/17/2020)** |
| 06/17/2020 | 1535 | Minute Entry for proceedings held before Judge Charles R. Breyer: Motion Hearing by Zoom for David Miller held on 6/17/2020 re 1496 MOTION to Compel Election between Multiplicitous Counts filed by David Miller; 1495 MOTION to Strike Bank Fraud Object of Count 4 or for a Bill of Particulars filed by David Miller. Motions taken under submission. The Court will issue an order. (Total Time in Court: 28 Minutes) Court Reporter: Katherine Sullivan. Plaintiff Attorney: Andrew Dawson, Claudia Quiroz, Chris Kaltsas. Defendant Attorney: John Cline and K.C. Maxwell. Defendant Present: Yes. Defendant in Custody: No. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lsS, COURT STAFF) (Filed on 6/17/2020) (Entered: 06/17/2020) |
| 06/26/2020 | 1536 | NOTICE *RE: ELECTION OF COUNTS* by USA as to David Miller (Quiroz, Claudia) (Filed on 6/26/2020) (Entered: 06/26/2020) |
| 06/29/2020 | 1537 | STIPULATION WITH PROPOSED ORDER as to David Miller *EXCLUDING TIME PURSUANT TO THE SPEEDY TRIAL ACT* filed by USA. (Quiroz, Claudia) (Filed on 6/29/2020) (Entered: 06/29/2020) |
| 06/30/2020 | 1538 | **STIPULATION AND ORDER: Granting 1537 Stipulation as to David Miller (28). Signed by Judge Charles R. Breyer on 6/30/2020. (lsS, COURT STAFF) (Entered: 06/30/2020)** |
| 07/06/2020 | 1540 | NOTICE *UNITED STATES NOTICE REGARDING CO-CONSPIRATOR STATEMENTS* by USA as to David Miller (Quiroz, Claudia) (Filed on 7/6/2020) (Entered: 07/06/2020) |
| 07/09/2020 | 1543 | TRANSCRIPT ORDER for proceedings held on 5/10/2017 before Judge Charles R. Breyer for Court Reporter Katherine Sullivan (Maxwell, K.C.) (Filed on 7/9/2020) (Entered: 07/09/2020) |
| 07/10/2020 | 1544 | MOTION in Limine *to Exclude Evidence of Government Witnesses' Guilty Pleas and Agreements* by David Miller. Motion Hearing set for 8/18/2020 02:00 PM in San Francisco, Courtroom 06, 17th Floor before Judge Charles R. Breyer. (Attachments: # 1 Proposed Order)(Maxwell, K.C.) (Filed on 7/10/2020) (Entered: 07/10/2020) |
| 07/10/2020 | 1545 | MOTION in Limine *to Exclude Certain Evidence Unrelated to Their Conduct* by David Miller. Motion Hearing set for 8/18/2020 02:00 PM in San Francisco, Courtroom 06, 17th Floor before Judge Charles R. Breyer. (Attachments: # 1 Proposed Order) (Maxwell, K.C.) (Filed on 7/10/2020) (Entered: 07/10/2020) |
| 07/10/2020 | 1546 | RESPONSE by David Miller 1540 Notice (Other) filed by USA *to Government's Notice of Co-Conspirator Statements* (Maxwell, K.C.) (Filed on 7/10/2020) (Entered: 07/10/2020) |
| 07/10/2020 | 1547 | MOTION in Limine by USA as to David Miller. (Quiroz, Claudia) (Filed on 7/10/2020) (Entered: 07/10/2020) |
| 07/10/2020 | 1548 | First MOTION Trial Modifications by USA as to David Miller. Motion Hearing set for 8/18/2020 02:00 PM before Judge Charles R. Breyer. (Dawson, Andrew) (Filed on 7/10/2020) (Entered: 07/10/2020) |
| 07/14/2020 | 1552 | **ORDER re: Trial Schedule as to David Miller. Signed by Judge Charles R. Breyer on 07/14/2020. (crblc2, COURT STAFF) (Filed on 7/14/2020) (Entered: 07/14/2020)** |
| 07/23/2020 | 1553 | STIPULATION WITH PROPOSED ORDER as to David Miller *Re: Pre-Trial* |

| | | |
|---|---|---|
| 12/14/2021 | 1687 | Minute Entry for proceedings held before Judge Charles R. Breyer: Pretrial Conference as to David Miller held on 12/14/2021. Jury Selection set for 1/18/2022 at 9:15 AM in San Francisco, Courtroom 06, 17th Floor before Judge Charles R. Breyer. Jury Trial set for January 24, 2022 at 9:15 a.m. Trial set for 4 weeks. Jury Trial hours are 9:15 a.m. to 4:00 p.m. The Court will be dark on Wednesdays (partial day or entire day).<br>MIL ECF No. 1544 granted<br>MIL ECF No. 1545 deferred (but granted as to the murder-for-hire allegation)<br>MIL ECF No. 1547 deferred (Total Time in Court: 1 Hour and 20 Minutes)<br>Court Reporter: Marla Knox.<br>Plaintiff Attorney: Claudia Quiroz and Andrew Dawson.<br>Defendant Attorney: K.C. Maxwell and John Cline.<br>Defendant Present: Yes.<br>Defendant in Custody: No.<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 12/14/2021) (Entered: 12/15/2021) |
| 12/20/2021 | 1691 | TRANSCRIPT ORDER for Future Trial with Daily Transcripts (Dawson, Andrew) (Filed on 12/20/2021) (Entered: 12/20/2021) |
| 12/22/2021 | 1693 | TRANSCRIPT ORDER for Future Trial with Daily Transcripts (Maxwell, K.C.) (Filed on 12/22/2021) (Entered: 12/22/2021) |
| 01/03/2022 | 1695 | **SEALED. Signed by Judge Charles R. Breyer on 1/3/2022. (ls, COURT STAFF) (Filed on 1/3/2022) (ls, COURT STAFF). (Entered: 01/03/2022)** |
| 01/07/2022 | 1698 | **SEALED. Signed by Judge Charles R. Breyer on 1/7/2022. (ls, COURT STAFF) (Filed on 1/7/2022) (ls, COURT STAFF). (Entered: 01/07/2022)** |
| 01/07/2022 | 1699 | CLERK'S NOTICE as to David Miller. Status Conference set for 1/12/2022 at 1:30 PM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**General Order 58.** Persons granted access to court proceedings he ld by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>Status Conference set for 1/12/2022 01:30 PM in San Francisco, - Videoconference Only before Judge Charles R. Breyer. *(This is a text-only entr y generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 1/7/2022) (Entered: 01/07/2022) |
| 01/11/2022 | 1700 | **SEALED. Signed by Judge Charles R. Breyer on 1/11/2022. (ls, COURT STAFF) (Filed on 1/11/2022) (ls, COURT STAFF). (Entered: 01/11/2022)** |
| 01/12/2022 | 1701 | Minute Entry for proceedings held before Judge Charles R. Breyer: Trial Setting Hearing as to David Miller held by Zoom on 1/12/2022. Due to the Covid19 pandemic, all parties consent to proceed by video conference. Status Conference set for 2/9/2022 at 1:30 PM in San Francisco - Video conference Only before Judge Charles R. Breyer. Jury Selection set for 2/24/2022 at 9:15 AM in San Francisco, Courtroom 06, 17th Floor before Judge Charles R. Breyer. (Total Time in Court: 8 Minutes)<br>Court Reporter: Marla Knox. |