DAVID H. ANGELI (admitted *pro hac vice*)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
URSULA LALOVIĆ (Cal. Bar No. 215551)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; tyler@angelilaw.com; michelle@angelilaw.com;
        ursula@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, Washington 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>Defendant. | Case No. 3:20-cr-00337-WHO<br><br>DEFENDANT JOSEPH SULLIVAN'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL GARRIE<br><br>Date: August 22, 2022<br>Time: 2:00 p.m.<br>Crtrm: 2, 17th floor<br><br>Hon. William H. Orrick |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 22, 2022 at 2 p.m., or at such later date and time as the Court may order, in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William H. Orrick, Defendant Joseph Sullivan will and hereby does move for an order excluding certain testimony of Daniel Garrie, the government's proposed expert witness. Specifically, Sullivan seeks to exclude (1) Garrie's opinions concerning bug bounty programs and (2) the following other parts of Garrie's proposed testimony:

| Testimony to be excluded | Source[1] | Grounds for exclusion |
|---|---|---|
| *Irrelevant testimony* | | |
| "Sullivan's FTC deposition included various declarative statements regarding Uber-specific cybersecurity controls (e.g., encryption and key management) that the 2016 breach later revealed were incorrect, including encryption and key management. (see generally, Mandiant report, preacher tracker, etc.)" | § VII.d | FRE 401-02 |
| *Garrie's characterization of the 2016 Incident as a "ransom"* | | |
| ". . . when responding to a significant incident, such as a ransom-type situation." | § II.a | FRE 403, 701, 702 |
| "Correspondence with the hacker plays out like ransom negotiation rather than bug bounty" | § V.b.i.4 | FRE 403, 701, 702 |
| " . . . industry best practices for a CSO responding to a data breach, especially one involving a ransom, . . . ." | § VII.b.ii | FRE 403, 701, 702 |
| "Discussion of consequences that would occur if companies were allowed to bar hackers from disclosing data breaches and ransom payments by having hackers sign NDAs or by classifying the hackers as agents or employees of the company." | § VII.e.i | FRE 403, 701, 702 |

---

[1] The citations in this column refer to the government's outline of Garrie's proposed testimony. That outline is attached as Exhibit 1 to the accompanying declaration of David H. Angeli.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

| Testimony to be excluded | Source[1] | Grounds for exclusion |
|---|---|---|
| *Improper legal opinions* | | |
| "Once a hacker obtains such access to data, they should not proceed with access and should notify the company. They would then contact a legal specialist to assess the situation further." | § IV.c.vi | FRE 701-02 |
| "Accordingly, Sullivan was still responsible for communications with the A-Team in regards to the status of the incident." | § V.b.i.5 | FRE 701-02 |
| "Sullivan's decision to not report or disclose the incident to the CA Attorney General and/or the Uber drivers violated various California notification and disclosure laws. . . ." | § VI (in its entirety) | FRE 401-02, 701-02 |
| "Rice at 9: 'seemed like extortion to them [HackerOne] because the hacker had vulnerability information and would not release information about it without getting paid.'" | § VII.a.iii.1 | FRE 401-02, 403, 701-02 |
| "Sullivan's decision to require the Hackers to sign the non-disclosure agreement ('NDA') does not make the Hackers employees or agents of Uber under any law or statute." | § VII.e | FRE 701-02 |
| *Improper testimony regarding Sullivan's state of mind* | | |
| "Sullivan knows about the breach, and that confidential records were exposed" | § V.b.i | FRE 701-02, 704(b) |
| "Uber was reluctant to pay before getting more information about the vulnerability" | § V.b.i.4.c | FRE 701-02, 704(b) |
| "At this time, they knew what data the hacker had obtained." | § V.b.i.5 | FRE 701-02, 704(b) |
| "Sullivan attempted to categorize the breach as part of the bug bounty program using an ad hoc private bug bounty program and not the public bug bounty program" | § V.b.ii | FRE 701-02, 704(b) |
| "Events in the hacker's correspondence and Uber's response demonstrate that this was not a genuine bug bounty" | § VII.a | FRE 701-02, 704(b) |
| "[D]emonstrates efforts to keep it a secret that would be unnecessary for a genuine bug bounty" | § VII.a.iv | FRE 701-02, 704(b) |

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL GARRIE
3:20-cr-00337-WHO                                ii

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

| Testimony to be excluded | Source[1] | Grounds for exclusion |
|---|---|---|
| "Sullivan intentionally excluded key stakeholders from incident response, which is inconsistent with industry best practices and supports the conclusion that Sullivan sought to hide the 2016 breach." | § VII.b | FRE 701-02, 704(b) |
| ". . . and it further supports the conclusion that Sullivan sought to hide the 2016 Uber incident." | § VII.b.ii | FRE 701-02, 704(b) |
| "Sullivan did not report the 2016 breach to the FTC despite being subject to an ongoing investigation indicating an attempt to hide the 2016 breach" | § VII.c | FRE 701-02, 704(b) |
| "Sullivan's experience as a Chief Security Officer and AUSA indicates that he should have known that this breach, which compromised sensitive information, should have been disclosed to the FTC as Uber was the subject of an ongoing investigation" | § VII.c.i | FRE 701-02, 704(b) |
| "Sullivan could not, in good faith, have thought that this breach did not need to be reported because of several reasons, including but not limited to . . . ." | § VII.c.ii | FRE 701-02, 704(b) |
| "Sullivan knew that sensitive information was exposed" | § VII.c.ii.2 | FRE 701-02, 704(b) |
| "Sullivan's FTC deposition covered the various Uber-specific cybersecurity controls (e.g., encryption and key management), such that there is no doubt that Sullivan understood it to be broad and that he was required to disclose the incident to the FTC." | § VII.c.ii.6 | FRE 701-02, 704(b) |
| "In fact, Sullivan's actions in connection with the NDA demonstrate Sullivan's intentional decision to not disclose, and in fact withhold, the 2016 Uber incident from the A-Team, the FTC, and other regulators." | § VII.e | FRE 701-02, 704(b) |

This motion is based on the memorandum of points and authorities below, the accompanying proposed order and declaration of David H. Angeli, the documents in the record, and such other evidence and argument as may be presented to the Court.

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL GARRIE
3:20-cr-00337-WHO                                          iii

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................. i

TABLE OF CONTENTS ................................................................................... iv

TABLE OF AUTHORITIES ............................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

    I.      INTRODUCTION ............................................................................. 1

    II.     BACKGROUND .............................................................................. 2

          A.    Procedural Background ......................................................... 2

          B.    The Government's Expert Disclosure ................................... 2

              1.    Garrie's Proposed Testimony on Bug Bounty Programs ................. 3

              2.    Garrie's Other Proposed Testimony ................................. 6

    III.    ARGUMENT ................................................................................... 7

          A.    The Court should exclude Garrie's proposed expert testimony concerning bug bounty programs ......................... 7

              1.    Legal Standard ......................................................... 7

              2.    Garrie's proposed testimony flunks Rule 702 and *Daubert*'s test ......................................................... 8

          B.    The Court should exclude much of Garrie's other proposed testimony as well .............................................. 12

              1.    Garrie's opinion about Sullivan's FTC deposition testimony is irrelevant and confusing. ........................... 12

              2.    Garrie's characterization of the 2016 Incident as a "ransom" is inadmissible under Rules 403, 701, and 702. ............ 13

              3.    Garrie's legal opinions are neither helpful nor, in most cases, relevant. ............................................... 14

              4.    Garrie's proposed testimony concerning Sullivan's knowledge and intent plainly violates Rule 704(b). ............ 16

          C.    At minimum, the Court should hold a *Daubert* hearing. ........... 17

    IV.    CONCLUSION ............................................................................... 18

APPENDIX A .................................................................................................. 19

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL GARRIE
3:20-cr-00337-WHO             iv

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. DynCorp*,
    928 F. Supp. 2d 10 (D.D.C. 2013) ........................................................................8

*Estate of Barabin v. AstenJohnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014) .............................................................................8

*Cotton v. City of Eureka, Cal.*,
    No. C 08-04386 SBA, 2010 WL 5154945 (N.D. Cal. Dec. 14, 2010), ..................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)........................................................................... *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ..............................................................................17

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
    No. 12-CV-05845-VC, 2016 WL 1029463 (N.D. Cal. Mar. 15, 2016)....................10

*DiBella v. Hopkins*,
    403 F.3d 102 (2d Cir. 2005)................................................................................14

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)...................................................................................1, 12

*Glastetter v. Novartis Pharms. Corp.*,
    252 F.3d 986 (8th Cir. 2001) ...............................................................................8

*Globetti v. Sandoz Pharms. Corp.*,
    111 F. Supp. 2d 1174 (N.D. Ala. 2000)................................................................8

*Haflich v. McLeod*,
    No. CV 09-161-M-DWM-JCL, 2011 WL 52348 (D. Mont. Jan. 5, 2011)............11

*Holmes v. Miller*,
    768 F. App'x 781 (9th Cir. 2019) ......................................................................13

*Jinro Am. Inc. v. Secure Invs., Inc.*,
    266 F.3d 993 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289
    (9th Cir. 2001)....................................................................................................13

*Johnson v. Kelly*,
    No. C16-0635JLR, 2017 WL 1838140 (W.D. Wash. May 8, 2017) .....................11

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL GARRIE
3:20-cr-00337-WHO                                        v

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 ....................................................................................................17

*Lee v. Metro. Gov't of Nashville and Davidson County*,
   596 F. Supp. 2d 1101 (M.D. Tenn. 2009)........................................................11

*Marines v. UPS Ground Freight, Inc.*,
   No. DR-07-CV-072-AML/CW, 2010 WL 11507206 (W.D. Tex. Mar. 5,
   2010) ..............................................................................................................9, 10

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) .........................................................................14

*Pecover v. Elec. Arts Inc.*,
   2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .................................................12

*Penor v. Columbia Cnty.*,
   No. CV 08-1114-HU, 2010 WL 916211 (D. Or. Mar. 9, 2010) .......................11

*Phillips v. Wilkerson*,
   No. 115CV00151JMSMPB, 2016 WL 5394404 (S.D. Ind. Sept. 27, 2016) ...........9

*Sanchez v. Jiles*,
   2012 WL 13005996 (C.D. Cal. June 14, 2012) ...............................................10

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
   927 F. Supp. 2d 1069 (D. Or. 2013) ...........................................................16, 17

*United States v. Booth*,
   309 F.3d 566 (9th Cir. 2002) ...........................................................................16

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003)...............................................................................14

*United States v. Hermanek*,
   289 F.3d 1076 (9th Cir. 2002) ........................................................................8, 10

*United States v. Hoac*,
   990 F.2d 1099 (9th Cir. 1993) .........................................................................13

*United States v. McIver*,
   470 F.3d 550 (4th Cir. 2006) .......................................................................14, 15

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008).............................................................................10

*Velazquez v. Costco Wholesale Corp.*,
   No. SACV1100508JVSRNBX, 2012 WL 13059928 (C.D. Cal. Oct. 12, 2012) ...................12

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Zeiger v. WellPet LLC,*
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ......................................................14

**Statutes**

18 U.S.C. § 4 ......................................................................................................2

18 U.S.C. § 1343 ................................................................................................2

18 U.S.C. § 1505 ................................................................................................2

18 U.S.C. § 1030 ................................................................................................2

California Civil Code § 1798.82 ....................................................................2, 15

**Rules**

Fed. R. Crim. P. 16(a)(1)(G) ........................................................................2, 8

Fed R. Evid. 104(a) ..........................................................................................17

Fed R. Evid. 401 ....................................................................................1, 13, 15

Fed R. Evid. 402 ........................................................................................1, 13

Fed R. Evid. 403 ....................................................................................1, 13, 14

Fed R. Evid. 701 ..............................................................................1, 13, 14, 15

Fed R. Evid. 702 ...................................................................................... *passim*

Fed R. Evid. 704(b).............................................................................1, 16, 17

Fed R. Evid. 706 ..............................................................................................17

**Other authorities**

Fed. R. Evid. 702 advisory committee note (2000) ......................................11

Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be
    Amended*, 138 F.R.D. 631 (1991) ............................................................13

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL GARRIE
3:20-cr-00337-WHO
vii

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3      "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

4 admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."

5 *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Most of the opinions of the government's

6 proposed expert witness—a lawyer, mediator, arbitrator, and entrepreneur named Daniel

7 Garrie—are inadmissible for that reason.

8      The government's summary of Garrie's testimony shows that he intends to opine, among

9 other things, on the typical operation of "bug bounty" programs like the one Uber had in place in

10 2016 and 2017. There is, however, nothing in his multiple resumés or biographies suggesting any

11 basis for his expertise in that area. Instead, Garrie evidently plans to parrot the contents of

12 various Uber and HackerOne documents, and then to frame that testimony with a slapdash *ipse*

13 *dixit* about whether the 2016 cybersecurity incident at the heart of this case (the "2016 Incident")

14 was a "genuine" application of Uber's bug bounty program as it then existed.[2] That testimony

15 would violate Rule 702 and *Daubert* in nearly every way, and the Court should exclude it. At

16 minimum, the Court should hold a *Daubert* hearing on the issue of Garrie's proposed testimony

17 on bug bounty programs.

18      Garrie's proposed testimony is rife with other evidentiary problems as well. Parts of his

19 testimony are irrelevant and inadmissible under Rules 401 and 402; his inflammatory

20 characterization of the 2016 Incident as a "ransom" is inadmissible under Rules 403, 701, and

21 702; the litany of legal opinions he offers are largely irrelevant and would trample the Court's

22 exclusive role in deciding the law in violation of Rules 401, 402, 403, 701, and 702; and his

23 dozen-plus statements regarding Sullivan's state of mind violate Rules 701, 702, and 704(b). As

24 explained in more detail below, the Court should exclude all of that testimony.

25

26      [2] HackerOne is a company that administers other businesses' bug bounty programs,
through which cybersecurity researchers (a.k.a., "hackers") are rewarded for finding and
27 reporting vulnerabilities in the businesses' systems.

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                          1

## II.     BACKGROUND

### A.     Procedural Background

The original indictment alleged that Sullivan sought to conceal the 2016 Incident from the FTC in violation of 18 U.S.C. § 1505 (Count 1). (ECF No. 13 ¶¶ 6-7.) It further alleged that the 2016 Incident amounted to a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and that Sullivan sought improperly to conceal it from federal law enforcement in violation of 18 U.S.C. § 4 (Count 2). (*Id*. ¶¶ 8-9.) The Superseding Indictment added wire fraud counts (Counts 3 through 5) based on the theory that, with respect to the 2016 Incident, Sullivan sought to defraud Uber's drivers in violation of 18 U.S.C. § 1343. (ECF No. 71 ¶¶ 15-16.) Sullivan allegedly did so by, among other things, violating a duty purportedly imposed on him by California Civil Code § 1798.82, California's data breach law, to disclose certain facts about the 2016 Incident. (*See id*. ¶¶ 8-9.)

On April 11, 2022, Sullivan moved to dismiss the wire fraud counts. (ECF No. 107.) On June 28, 2022, the Court denied the motion but held that "the wire fraud cha[r]ges cannot proceed on an omission theory[,]" *i.e.*, on the theory that in failing to disclose the 2016 Incident Sullivan violated a duty imposed by California's data breach law. (*See* ECF No. 129 at 1, 11-14.) The government later moved to dismiss the wire fraud counts in their entirety, and the Court granted that motion on August 2, 2022. (ECF Nos. 133 and 134.)

### B.     The Government's Expert Disclosure

On July 25, 2022, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the government provided notice of its intent to call Garrie as an expert witness. (Angeli Decl. ¶ 2, Ex. 1.) Garrie, the government's disclosure indicated, is an expert in "cybersecurity, e-discovery, and computer forensic[s.]" (*Id*. at 1.) He is the co-founder of a company called Law & Forensics LLC;[3] a mediator, arbitrator, and special master with JAMS;[4] and a partner at a New York-based

---

[3] Garrie's Law & Forensics biography is available at https://www.lawandforensics.com/daniel-garrie/ (last accessed August 8, 2022).

[4] Garrie's JAMS biography is available at https://www.jamsadr.com/garrie/ (last accessed August 8, 2022).

law firm, Zeichner Ellman & Krause LLP.[5] (*Id*. at 2.) With its disclosure, the government provided a six-page outline of Garrie's anticipated testimony (*id*. at 7-12), Garrie's "Executive Resume" (*id*. at 13-15), and Garrie's "Compiled Resumé[,]" which was "last updated in 2020" (*id*. at 2, 16-98). Garrie has not prepared a written report. (*See id*. at 2.)

### 1.   Garrie's Proposed Testimony on Bug Bounty Programs

Much of Garrie's proposed testimony concerns bug bounty programs. The government's disclosure, however, is silent regarding the source of his purported expertise in that area. Accordingly, on August 4, 2022, Sullivan's counsel asked the government to "detail what, if any, expertise Mr. Garrie has with respect to bug bounty programs[.]" (Angeli Decl. ¶ 3, Ex. 2.) In response, the government provided the following paragraph by email:

> Daniel Garrie has multidisciplinary experience with bug bounties. Mr. Garrie taught at Harvard University and Rutgers Law School on bug bounties. He has also served as a mediator and neutral for bug bounty disputes. Over the past decade, Mr. Garrie has served as counsel and/or technical advisor in the formation, development, and analysis of bug bounty programs for a range of companies: global automotive manufacturing, cryptocurrency, large multinational food manufacturing organization, various insurance companies, and multiple companies in the metal sector.

(*Id*.) While Garrie's experience purportedly spans "the past decade"—a period that both his "Executive Resumé" and "Compiled Resumé" cover—the words "bug bounty" appear nowhere in those resumés' 86 combined pages. Those words are likewise absent from his Law & Forensics biography, his JAMS biography, and his Zeichner Ellman & Krause biography. The opening paragraphs of Garrie's resumes and published biographies focus instead on his experience in matters such as "cybersecurity" generally, "forensics," "e-discovery," "blockchain," and "cryptocurrency."[6] Counsel for Sullivan requested further information regarding Garrie's specific experience with bug bounty programs, but the government has yet to provide it. (Angeli Decl. ¶ 4.)

---

[5] Garrie's firm biography is available at https://www.zeklaw.com/attorney/daniel-b-garrie (last accessed August 8, 2022.)

[6] *See* notes 3, 4, and 5, *supra*.

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                        3

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

Nevertheless, the topic of bug bounty programs features prominently in Garrie's proposed testimony. The topic first appears in section IV of the government's summary, which is titled "Background on Bug Bounty Programs as a Tool for Cybersecurity[.]" (*Id.* at 7.) Subsections IV.a ("What is a bug bounty program?") and IV.b ("Purposes and goals of an effective bug bounty program") provide general background, and then subsection IV.c outlines how, in Garrie's view, bug bounty programs "typically" or "usually" operate. (*See id.* at 8 (§§ IV.c, IV.c.ii).) The disclosure fails, however, to explain how or why Garrie's experience led him to draw those conclusions. In fact, tellingly, nearly all of the language in subsections IV.a and IV.b appears to reflect not Garrie's independent knowledge, but rather a word-for-word copy and paste from a publicly-available HackerOne blog post,[7] which originally appeared on July 16, 2021—nearly five years *after* the events at issue here—and to which section IV.a.i makes a passing reference. Far from the stuff of experts, the blog post is, on its face, nothing more than a HackerOne marketing communication that does not even purport to reflect the nascent state of affairs as bug bounty programs were emerging in 2016.[8] Appendix A to this motion compares subsections IV.a and IV.b of Garrie's proposed testimony to that blog post, and shows that the majority of the former was simply lifted from the latter.

Other parts of Garrie's proposed bug bounty testimony do little more than regurgitate information that he seems to have gleaned from HackerOne's public website. He says, for example, that "HackerOne or other provider [*sic*] has a policy which researchers are required to agree to." (*Id.* (§ IV.c.i).) HackerOne plainly outlines that requirement online: "By participating in programs on HackerOne, all Finders agree to . . . follow[] the HackerOne Code of Conduct

---

[7] The blog post is available at https://www.hackerone.com/vulnerability-management/what-are-bug-bounties-how-do-they-work-examples (last accessed August 8, 2022).

[8] It concludes, for example, with a passage titled "How HackerOne Can Help[.]" It also includes the following passage: "Traditionally, setting up a bug bounty program required companies to build their communication platform, implement bug tracking systems, and integrate into payment gateways. Now, setting up a bug bounty program is a simple process through HackerOne. The HackerOne platform allows organizations to set their scope, track bug reports, and manage payouts from one location." *See* note 7, *supra*.

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                  4

(CoC)."[9] Likewise, in Garrie's words, "[i]n a public bug bounty program, the researcher's handle would be posted on boards to include a leader board in regards to their scores and the amount of bounty they were paid out[] . . . [w]hereas a private bug bounty program had its own private leader board which could only be accessed by those who had been invited to the program." (Angeli Decl. ¶ 2, Ex. 1 at 8 (§ IV.c.iv-v).) Again, HackerOne plainly describes the distinction between public and private bug bounty programs on its website.[10]

Much of Garrie's remaining testimony on bug bounty programs will apparently rehash the government's version of the facts. Sections IV ("Background on Bug Bounty Programs as a Tool for Cybersecurity"), V ("Factual Background"), and VII ("Sullivan's actions concerning the 2016 breach were not consistent with industry best practices or Uber's bug bounty program") each follow a common pattern: they frame a long list of facts with *ipse dixit* labels describing how the jury should interpret those facts. Section V, for example, merely summarizes the facts of the 2016 Incident before declaring, in conclusory fashion, that "Sullivan attempted to categorize the breach as part of the bug bounty program using an ad hoc private bug bounty program and not the public bug bounty program[.]" (Angeli Decl. ¶ 2, Ex. 1 at 10 (§ V.b.ii).)

Nowhere does the government's disclosure connect Garrie's opinions regarding the 2016 Incident to any aspect of his professional experience or accumulated knowledge. In fact, the summary of his proposed testimony reveals that, apart from Uber's 2016 bug bounty policy and the July 16, 2021 HackerOne blog post, Garrie has reviewed no materials concerning the intended normal operation of bug bounty programs. (*See generally id*. at 1-12.)

Given these omissions, Garrie's opinion concerning the operation of Uber's bug bounty program in this case is striking. "Sullivan's actions[,]" he says flatly, "were not consistent with industry best practices or Uber's bug bounty program[,]" and "cut against standard bug bounty practice and Uber's bug bounty process[.]" (*See id*. at 10 (§ VII.a).)

---

[9] https://www.hackerone.com/policies/code-of-conduct (last accessed August 8, 2022).

[10] https://docs.hackerone.com/programs/private-vs-public-programs.html (last accessed August 8, 2022).

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                    5

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

### 2.   Garrie's Other Proposed Testimony

2       The problems with Garrie's proposed testimony go well beyond bug bounty programs. In

3   several other places, his testimony is, on its face, is inadmissible:

4       ***Uber's broader cybersecurity controls.*** Garrie apparently intends to offer expert

5   testimony that "Sullivan's FTC deposition included various declarative statements regarding

6   Uber-specific cybersecurity controls (e.g., encryption and key management) that the 2016 breach

7   later revealed were incorrect, including encryption and key management. (see generally,

8   Mandiant report, preacher tracker, etc.)[.]" (*Id.* at 12 (§ VII.d).)

9       ***"Ransom."*** Garrie repeatedly and baselessly characterizes the 2016 Incident as a

10  "ransom" or "ransom-type situation." (*Id.* at 7, 9, 11-12 (§§ II.a, V.b.i.4, VII.b.ii, VII.e.i).)

11      ***Legal opinions.*** Garrie's proposed testimony is replete with improper legal opinions,

12  including:

13      • "Once a hacker obtains such access to data, they should not proceed with access and

14         should notify the company. They would then contact a legal specialist to assess the

15         situation further." (*Id.* at 8 (§ IV.c.vi).)

16      • "Sullivan was still responsible for communications with the A-Team in regards to the

17         status of the incident." (*Id.* at 10 (§ V.b.i.5).)

18      • "Sullivan's decision to not report or disclose the incident to the CA Attorney General

19         and/or the Uber drivers violated various California notification and disclosure

20         laws. . . ." (*Id.* at 10 (§ VI).)

21      • "Rice at 9: 'seemed like extortion to them [HackerOne] because the hacker had

22         vulnerability information and would not release information about it without getting

23         paid.'" (*Id.* at 11 (§ VII.a.iii.1).)

24      • "Sullivan's decision to require the Hackers to sign the non-disclosure agreement

25         ('NDA') does not make the Hackers employees or agents of Uber under any law or

26         statute." (*Id.* at 12 (§ VII.e).)

27

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                                    6

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

***Sullivan's state of mind.*** Finally, Garrie's proposed testimony repeatedly and improperly characterizes Sullivan's knowledge and intent. For example:

- "Sullivan knows about the breach, and that confidential records were exposed[.]" (*Id.* at 9 (§ V.b.i).)

- "Sullivan intentionally excluded key stakeholders from incident response, which is inconsistent with industry best practices and supports the conclusion that Sullivan sought to hide the 2016 breach." (*Id.* at 11 (§ VII.b).)

- "Sullivan did not report the 2016 breach to the FTC despite being subject to an ongoing investigation indicating an attempt to hide the 2016 breach[.]" (*Id.* at 11 (§ VII.c).)

- "Sullivan's experience as a Chief Security Officer and AUSA indicates that he should have known that this breach, which compromised sensitive information, should have been disclosed to the FTC as Uber was the subject of an ongoing investigation[.]" (*Id.* at 12 (§ VII.c.i).)

- "Sullivan could not, in good faith, have thought that this breach did not need to be reported because of several reasons . . . ." (*Id.* at 12 (§ VII.c.ii).)

- "In fact, Sullivan's actions in connection with the NDA demonstrate Sullivan's intentional decision to not disclose, and in fact withhold, the 2016 Uber incident from the A-Team, the FTC, and other regulators." (*Id.* at 12 (§ VII.e).)

## III.    ARGUMENT

### A.    The Court should exclude Garrie's proposed expert testimony concerning bug bounty programs.

#### 1.    Legal Standard

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert witness testimony. Under Rule 702, expert testimony is admissible only when (1) the witness "is qualified as an expert by knowledge, skill, experience, training, or education"; (2) the testimony "will help the trier of fact to understand the evidence or

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                   7

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

to determine a fact in issue"; (3) "the testimony is based on sufficient facts or data"; (4) "the

testimony is the product of reliable principles and methods"; and (5) "the expert has reliably

applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In applying those

requirements, the Court acts as a "gatekeeper" and enforces the bounds of permissible expert

testimony. *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002); *see also Estate of

Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (Rule 702 "'clearly

contemplates *some* degree of regulation of the subjects and theories about which an expert may

testify'" (quoting *Daubert*, 509 U.S. at 589)). The core purpose of Rule 702 is to "separate[]

expert opinion evidence based on 'good grounds' from subjective speculation that masquerades

as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir.

2001) (quoting *Globetti v. Sandoz Pharms. Corp.*, 111 F. Supp. 2d 1174, 1177 (N.D. Ala. 2000)).

## 2.    Garrie's proposed testimony flunks Rule 702 and *Daubert*'s test.

On its face, Garrie's proposed testimony on bug bounties flunks Rule 702's first, second,

fourth, and fifth elements. For each independent reason, the Court should exclude it.

***First***, Rule 702 requires as a threshold matter that an expert witness be "qualified as an

expert by knowledge, skill, experience, training, or education[.]" In the same vein, Federal Rule

of Criminal Procedure 16(a)(1)(G) requires the government to disclose, among other things, "the

bases and reasons for [the witness's] opinions, and the witness's qualifications." As explained

above, the government's disclosure and accompanying summary of Garrie's testimony suggests

that he possesses no relevant qualifications when it comes to bug bounty programs. His three

online biographies and two resumés say *nothing* whatsoever about the subject. And, particularly

because his published credentials are silent in that regard, the government's informal summary

paragraph concerning Garrie's experience with bug bounty programs is insufficient to qualify

him as an expert. *See*, *e.g.*, *Arias v. DynCorp*, 928 F. Supp. 2d 10, 25 (D.D.C. 2013)

("Conclusory statements that an expert is qualified because of his education or experience [are]

insufficient for a court to find that the witness is indeed qualified to offer his expert opinion."

(citation omitted)); *DL v. District of Columbia*, 730 F. Supp. 2d 78, 81 (D.D.C. 2010) (a

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                    8

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1  proffered expert was not qualified where he had only "conclusively stated that he has 35 years

2  experience, without further explanation of what that experience entails"); *Phillips v. Wilkerson*,

3  No. 115CV00151JMSMPB, 2016 WL 5394404, at *2 (S.D. Ind. Sept. 27, 2016) (determining

4  that a proffered expert was not qualified because, "although [his] report contains a vague list of

5  his qualifications," the expert had provided no "further documentation, such as [his] curriculum

6  vitae, publications, or other academic credentials, that help support his credentials as an expert");

7  *Marines v. UPS Ground Freight, Inc.*, No. DR-07-CV-072-AML/CW, 2010 WL 11507206, at *3

8  (W.D. Tex. Mar. 5, 2010) (determining that a proffered expert was not qualified because "his

9  credentials are . . . vague"). Those facts alone warrant exclusion.

10      The government's conclusory assertions about Garrie's experience in "cybersecurity"

11  generally are likewise too vague to establish Garrie's expertise in bug bounty programs

12  specifically. For example, in *O'Reilly v. Valley Entertainment, Inc.*, a plaintiff offered expert

13  testimony from a music executive to establish the value of certain "artistic and mechanical

14  royalties, as well as the infringer profits attributable to [the] [d]efendant's unauthorized use of

15  her musical works." No. C-09-03580-CW (DMR), 2011 WL 13258234, at *13 (N.D. Cal. Jan. 4,

16  2011), *report and recommendation adopted*, No. C 09-3580 CW, 2011 WL 13260734 (N.D. Cal.

17  Feb. 16, 2011). The expert's qualifications were as follows:

18
19          I am CEO of . . . a music production business. I have personal
            knowledge of the facts set forth therein regarding music industry
20          standards and practices and if called upon as a witness could and
            would testify competently thereto. I base this application on my
21          own knowledge of the recording industry, having worked in that
            industry for twenty five years and negotiated many contracts with
22          composers and performers of greater and lesser stature than [the
            plaintiff].

23  *Id*. at *14. That description was "far too vague and meager for the Court to be able to evaluate

24  whether [the witness] has sufficient knowledge, skill and experience in the area to qualify him to

25  provide an expert opinion in this matter." *Id*. While the executive possessed generalized

26  experience in the music industry, he "d[id] not state the nature of his work within the music

27  industry, the number of contracts he has negotiated within the industry, or whether those

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                    9

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1   contracts are even remotely similar to the types of contract terms he discusses in his declaration."

2   *Id.* "Nor d[id] he describe any relevant lectures, publications, other experience or prior work as

3   an expert in this field that might support his qualification as an expert in this matter." *Id*; *see also*

4   *Hermanek*, 289 F.3d at 1094 ("The factors Broderick identified—his knowledge and prior

5   investigation of defendants and the 'evidence seized' in the case—were too vague and

6   generalized to satisfy the requirements of Rule 702. . . . Broderick failed to explain in any detail

7   the knowledge, investigatory facts and evidence he was drawing from.").

8          With respect to bug bounty programs, Garrie's qualifications are materially no different,

9   and equally lacking. While he may have general experience in the field of cybersecurity,

10  nowhere has the government identified any *specific* prior work by Garrie on bug bounty

11  programs, nor do any of his writings or speeches pertain to that subject. Given his lack of

12  qualifications, his testimony should be excluded for substantially the same reasons as were the

13  experts in *O'Reilly* and *Hermanek*.

14         ***Second***, Rule 702(a) requires that "the expert's scientific, technical, or other specialized

15  knowledge" be "*help*[*ful* to] the trier of fact[.]" (Emphasis added.) Testimony that merely

16  "parrots [a lay witness's] version of events" is not helpful and should be excluded to avoid

17  "lend[ing] the special aura of credibility associated with expert testimony to [a lay witness's]

18  account of [an] event." *Sanchez v. Jiles*, 2012 WL 13005996, at *32 (C.D. Cal. June 14, 2012);

19  *see also Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-CV-05845-VC, 2016

20  WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding expert testimony where the expert

21  "often does no more than regurgitate information given to him by other sources" and "'[does] not

22  analyze his source materials so much as repeat their contents'" (quoting *United States v. Mejia*,

23  545 F.3d 179, 198 (2d Cir. 2008))).

24         Garrie's proposed testimony falls flat on that front as well. As explained above, much of

25  his proposed testimony does nothing more than rehash the government's version of the facts

26  (based on Garrie's review of an extremely small subset of the hundreds of thousands of pages of

27  discovery in the case) before suggesting the conclusions the jury should draw from them. The

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                    10

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    jury, however, is "quite capable" of doing that on its own, and it would be "unnecessary and

2    unhelpful" for Garrie merely to repeat facts to which other witnesses will testify. *Haflich v.*

3    *McLeod*, No. CV 09-161-M-DWM-JCL, 2011 WL 52348, at *4 (D. Mont. Jan. 5, 2011)

4    (excluding expert testimony on that basis). Under Rule 702(a), the Court should bar him from

5    doing so.

6         **Third**, Rules 702(c) and (d) require the government to establish that Garrie's proposed

7    testimony on bug bounties "is the product of reliable principles and methods[,]" and that Garrie

8    "has reliably applied the principles and methods to the facts of the case." In other words, an

9    expert must *explain* why the underlying facts and the expert's method lead to the proffered

10   conclusion. This is true even where, as here, the expert testifies based on experience: "If the

11   witness is relying solely or primarily on experience, then the witness must explain how that

12   experience leads to the conclusion reached, why that experience is a sufficient basis for the

13   opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory

14   committee note (2000); *see also Johnson v. Kelly*, No. C16-0635JLR, 2017 WL 1838140, at *4

15   (W.D. Wash. May 8, 2017) ("[T]he court cannot conclude that a non-scientific expert's proffered

16   testimony is reliable unless the expert explains the manner in which her knowledge and

17   experience support her conclusions." (citations omitted)); *Penor v. Columbia Cnty.*, No. CV 08-

18   1114-HU, 2010 WL 916211, at *3 (D. Or. Mar. 9, 2010) ("If an expert bases his testimony on

19   experiential knowledge, he must explain how that experience lead[s] to his conclusions and how

20   he applied his experience to the facts in a reliable way." (citing *Lee v. Metro. Gov't of Nashville*

21   *and Davidson County*, 596 F. Supp. 2d 1101, 1119 (M.D. Tenn. 2009)).

22        Again, Garrie's proposed testimony flunks that test. The government's summary of his

23   testimony fails to establish that Garrie's knowledge and experience is a reliable measure of the

24   "typical" or "usual" way in which bug bounty programs operate, much less that he applied his

25   experience reliably to the facts of this case. *See* Fed. R. Evid. 702(c)-(d). Instead, as explained

26   above, Garrie's proposed testimony merely parrots the government's version of the facts and

27   applies the government's preferred label to them. Nowhere, however, does it explain *how*

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                      11

Garrie's experience leads him to his conclusions, as the Advisory Committee Note to Rule 702 quoted above contemplates. In fact, given the government's disclosure, Garrie's knowledge and experience concerning bug bounty programs appear to be based on the sort of piecemeal anecdotal evidence that courts routinely exclude as unreliable. *See Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at \*7 (N.D. Cal. Dec. 21, 2010) (holding that an expert's opinion based on anecdotal evidence was unreliable when expert provided no methodology by which she determined the evidence "to be representative of all or even most . . . opinions"); *Velazquez v. Costco Wholesale Corp.*, No. SACV1100508JVSRNBX, 2012 WL 13059928, at \*2 (C.D. Cal. Oct. 12, 2012) ("A collection of 25 anecdotal experiences is not a sufficient basis to express an opinion." (citing *Joiner*, 522 U.S. at 146)).

Garrie's conclusions about Uber's bug bounty program, in other words, are "connected to [the] existing data" recited in the government's summary "only by the *ipse dixit* of" Garrie himself. *See Joiner*, 522 U.S. at 146. For that independent reason, the testimony should be excluded.

**B.      The Court should exclude much of Garrie's other proposed testimony as well.**

**1.      Garrie's opinion about Sullivan's FTC deposition testimony is irrelevant and confusing.**

Garrie's opinion concerning Sullivan's 2016 FTC deposition testimony—*i.e.*, that it "included various declarative statements regarding Uber-specific cybersecurity controls (e.g., encryption and key management) that the 2016 breach later revealed were incorrect" (Angeli Decl. ¶ 2, Ex. 1 at 12 (§ VII.d))—is irrelevant and if admitted would likely confuse the jury about the issues before it. Sullivan is not charged with failing to correct his testimony concerning Uber's cybersecurity controls, but instead with affirmatively concealing the 2016 Incident itself.[11] (*See*, *e.g.*, ECF No. 71 (Superseding Indictment) ¶ 5.) The portion of his deposition

---

[11] The government's contention that Sullivan *failed* to take certain actions following the 2016 Incident was arguably relevant only to the wire fraud counts. As explained above, though, the Court determined in ruling on Sullivan's motion to dismiss those counts that the government would not be permitted to proceed on an "omission theory"; the government later moved to dismiss the wire fraud counts in their entirety. (*See* ECF Nos. 129 at 11-14 and 133.) Sullivan's

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                                    12

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1   testimony concerning Uber's cybersecurity controls is immaterial to any matter the jury will

2   decide and would invite the jury to resolve a question (*i.e.*, whether Sullivan should have

3   corrected his deposition testimony) not properly before it. *See*, *e.g.*, *Holmes v. Miller*, 768 F.

4   App'x 781, 784 (9th Cir. 2019) (affirming the exclusion of evidence under Rule 403 where it

5   "likely would have resulted in mini-trials" on irrelevant issues (emphasis removed)). Garrie's

6   opinion concerning Sullivan's deposition testimony should be excluded under Rules 401, 402,

7   and 403.

### 2. Garrie's characterization of the 2016 Incident as a "ransom" is inadmissible under Rules 403, 701, and 702.

9   Even "[o]therwise admissible expert testimony may be excluded under Fed. R. Evid. 403

10  if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

11  the issues, or undue delay." *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993); *see also*

12  *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006 (9th Cir.), *opinion amended on denial of*

13  *reh'g*, 272 F.3d 1289 (9th Cir. 2001). Indeed, because "[e]xpert evidence can be both powerful

14  and quite misleading because of the difficulty in evaluating it," the Supreme Court recognized in

15  *Daubert* that "'the judge in weighing possible prejudice against probative force under Rule

16  403 . . . exercises more control over experts than over lay witnesses.'" *Daubert*, 509 U.S. at 595

17  (quoting Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be*

18  *Amended*, 138 F.R.D. 631, 632 (1991)).

19  Garrie's characterization of the 2016 Incident as a "ransom" or "ransom-type situation"

20  flunks the balancing test of Rule 403. (Angeli Decl. ¶ 2, Ex. 1 at 7, 9, 11-12 (§§ II.A, V.b.i.4,

21  VII.b.ii, VII.e.i).)  The term itself has no probative value; the jury is capable of listening to the

22  facts concerning the 2016 Incident and drawing its own conclusions as to their meaning. And

23  coming from an expert witness, the term "ransom" is unfairly inflammatory. *See*, *e.g.*, *Cotton v.*

24  *City of Eureka*, Cal., No. C 08-04386 SBA, 2010 WL 5154945, at *14 (N.D. Cal. Dec. 14, 2010)

26  _____

27  alleged failure to act, whether by failing to correct his deposition testimony or otherwise, is
simply no longer a part of this case.

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

(precluding an expert witness from offering "'inflammatory' characterizations of the [the defendant's] conduct, including terms such as 'pummeled,' [']beating the dickens out of,' and 'beat into submission'"; "[b]oth parties are instructed to ensure that their respective experts articulate their opinions in a thoughtful and professional manner, and to avoid eliciting unnecessarily sensationalized testimony"). Under Rule 403, the Court should preclude Garrie from characterizing the 2016 Incident as a "ransom."

Moreover, even if it were to pass Rule 403's test, Garrie's opinion that the 2016 Incident amounted to a "ransom" is not a proper subject of either lay or expert opinion testimony. Garrie possesses no special knowledge or experience enabling him to identify "ransom-type situations," nor does he attempt even to define what he means by those words. They are, rather, an inflammatory label that ultimately would be of no help to the jury. Fed. R. Evid. 701-02; *see also United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (if admitted, an expert's "sweeping conclusions . . . may unfairly provid [e] the government with an additional summation by having the expert interpret the evidence, and may come dangerously close to usurping the jury's function." (internal quotation marks and citations omitted)). Rules 701 and 702 provide an independent basis to preclude Garrie from using the word "ransom."

### 3. Garrie's legal opinions are neither helpful nor, in most cases, relevant.

This Court has recognized the long-established principle that "'[a]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.'" *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 679 (N.D. Cal. 2021) (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)). Rather, "'instructing the jury as to the applicable law is the distinct and exclusive province of the court.'" *Id.* (quoting *Nationwide Transp.*, 523 F.3d at 1058). The same is true of legal conclusions when presented as lay opinions: "such testimony is not 'helpful' as it must be under FRE 701" and is thus inadmissible. *Id.* (citing *Nationwide Transp.*, 523 F.3d at 1059-60); *see also United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *DiBella v. Hopkins*, 403

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                    14

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    F.3d 102, 121 (2d Cir. 2005) (the trial court properly excluded testimony that "inappropriately

2    drew a legal conclusion by opining that [the plaintiff's] actions amounted to extortion").

3          The government's summary of Garrie's proposed testimony abounds with improper

4    conclusions of law. In each case, those opinions are either reserved exclusively for the Court or

5    are irrelevant. Most egregiously, the government's summary of Garrie's testimony devotes an

6    entire section to the issue of whether Sullivan's conduct "violated various California notification

7    and disclosure laws[,]" including California Civil Code § 1798.82. (Angeli Decl. ¶ 2, Ex. 1 at 10

8    (§ VI).) This pure conclusion of law would be irrelevant in any case, but is particularly egregious

9    here, given that Mr. Sullivan is not charged with violating the data breach notification and

10   disclosure laws of California or any other state.[12] Equally improper is Garrie's opinion that

11   "Sullivan's decision to require the Hackers to sign the non-disclosure agreement ('NDA') d[id]

12   not make the Hackers employees or agents of Uber under any law or statute." (*Id.* at 12

13   (§ VII.e).) On its face, each of those opinions improperly "draws a legal conclusion by applying

14   law to the facts[.]" *McIver*, 470 F.3d at 562.

15         Garrie's other legal opinions are more carefully disguised but no less inadmissible. For

16   example, his opinion concerning what a hacker "should" do after obtaining access to a

17   company's data is thinly veiled legal advice; indeed, Garrie suggests that hackers should then

18   "contact a legal specialist [*i.e.*, a lawyer] to assess the situation further." (Angeli Decl. ¶ 2, Ex. 1

19   at 8 (§ IV.c.vi).) So too is Garrie's opinion that "Sullivan was still responsible for

20   communications with the A-Team in regards to the status of the incident." (*Id.* at 10 (§

21   V.b.i.5).)[13]

22         Thus, pursuant to Rules 401-03, 701, and 702, the Court should exclude these and

23   Garrie's other conclusions of law.

24         [12] *See* note 11, *supra*. Even under the government's now-abandoned wire fraud theory,

25   the government did not allege that Sullivan had any duty under California Civil Code § 1798.82.
     (*See* ECF No. 129 at 13.) The dismissal of these counts removes any remaining relevance.

26         [13] Here, Garrie presumably plans to challenge the rationale for the legal advice provided

27   to the Uber security team by Uber attorney Craig Clark. But the only relevance of that advice is
     the (undisputed) fact that it was given, not Garrie's opinion about its validity.

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO
15

1

**4.    Garrie's proposed testimony concerning Sullivan's knowledge and intent plainly violates Rule 704(b).**

2

Garrie's proposed testimony also repeatedly and improperly touches on Sullivan's

3

knowledge, intent, and state of mind. Under Rules 702 and 704(b), that testimony should be

4

excluded.

5

"In a criminal case, an expert witness must not state an opinion about whether the

6

defendant did or did not have a mental state or condition that constitutes an element of the crime

7

charged or of a defense." Fed. R. Evid. 704(b). "Those matters are for the trier of fact alone." *Id*.

8

When a putative expert witness offers such testimony, it is unnecessary for the Court to

9

determine whether the testimony comports with Rule 702 and *Daubert*'s requirements; Rule

10

704(b) independently requires its exclusion. *See United States v. Booth*, 309 F.3d 566, 573 (9th

11

Cir. 2002).

12

In his proposed testimony, Garrie opines on Sullivan's mental state no fewer than 14

13

times. Sullivan, he says, "knew" about both the 2016 Incident and the types of information that

14

were exposed. (Angeli Decl. ¶ 2, Ex. 1 at 9-10, 12 (§§ V.b.i, V.b.i.5, and VII.c.ii.2).) In Garrie's

15

opinion, Sullivan also acted "intentionally" in various circumstances. (*Id*. at 11-12 (§§ VII.b and

16

VII.e).) And, in Garrie's view, Sullivan "could not, in good faith, have thought that this breach

17

did not need to be reported[.]" (*Id*. at 12 (§ VII.c.ii)). This and Garrie's other testimony

18

concerning Sullivan's mental state, which is listed above, should be excluded under Rule 704(b).

19

Garrie's proposed testimony about Sullivan's state of mind, including whether he

20

believed the 2016 Incident amounted to a "genuine" bug bounty,[14] is also inadmissible under

21

Rule 702. "Expert testimony as to intent, motive, or state of mind offers no more than the

22

drawing of an inference from the facts of the case." *Siring v. Oregon State Bd. of Higher Educ.*

23

*ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013). Thus, "[c]ourts routinely

24

exclude as impermissible expert testimony as to intent, motive, or state of mind." *Id*. "The jury is

25

26

27

---

[14] To the extent Garrie plans to speak to the "genuineness" of the 2016 Incident for reasons unrelated to Sullivan's state of mind, his testimony still is inadmissible under Rule 702. As explained above, Garrie's proposed testimony about bug bounty programs generally falls short of Rule 702's requirements.

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                  16

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from

2    the evidence, and permitting expert testimony on this subject would be merely substituting the

3    expert's judgment for the jury's and would not be helpful to the jury." *Id.* (collecting cases).

4    Thus, even if some of Garrie's testimony concerning Sullivan's state of mind were to fall outside

5    Rule 704(b)'s ambit, it still should be excluded.

6        **C.    At minimum, the Court should hold a *Daubert* hearing.**

7        If the Court is not inclined to grant this motion based on the briefing alone, Sullivan

8    respectfully requests that the Court hold a *Daubert* hearing to assess whether Garrie's proposed

9    testimony is admissible. "Where the opposing party . . . raises a material dispute as to the

10   admissibility of expert scientific evidence, the district court *must* hold an *in limine* hearing (a so-

11   called *Daubert* hearing) to consider the conflicting evidence and make findings about the

12   soundness and reliability of the methodology employed by the scientific experts." *Daubert v.*

13   *Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 n.10 (9th Cir. 1995) (citing Fed. R. Evid. 104(a)

14   and 706) (emphasis added); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (making

15   clear that the *Daubert* analysis "applies to all expert testimony," not merely "scientific"

16   testimony).

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                                    17

1

## IV.     CONCLUSION

2        For the foregoing reasons, Sullivan respectfully requests that the Court exclude Garrie's

3   opinions concerning bug bounty programs, as well as the testimony summarized in the table in

4   the preceding motion.

5

6   DATED: August 8, 2022.

7                                             *s/David H. Angeli*
                                              David H. Angeli
8                                             Tyler P. Francis
                                              Michelle H. Kerin
9                                             Ursula Lalović
                                              John D. Cline
10
11                                            *Attorneys for Defendant Joseph Sullivan*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO                    18

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

## APPENDIX A

| Garrie's proposed testimony | The July 16, 2021 HackerOne blog |
|---|---|
| a. What is a bug bounty program?<br>i. A bug bounty is a monetary reward to ethical hackers for successfully discovering and reporting a vulnerability or bug to the application's developer. Bug bounty programs allow companies to leverage the hacker community to improve their systems' security posture over time continuously. (see https://www.hackerone.com/vulnerability-management/what-are-bug-bounties-how-do-they-work-examples).<br><br>(Angeli Decl. ¶ 2, Ex. 1 at 7 (§ IV.a.i).) | <br>What Are Bug Bounties? How Do<br>hackerone.com/vulnerability-manage...<br>Guest<br>hackerone<br>What Exactly Is a Bug Bounty?<br>A bug bounty is a monetary reward given to ethical hackers for successfully discovering and reporting a vulnerability or bug to the application's developer. Bug bounty programs allow companies to leverage the hacker community to improve their systems' security posture over time continuously. |
| b. Purposes and goals of an effective bug bounty program<br>i. Discover security vulnerabilities and weaknesses in systems to allow company to remediate before bad actors take advantage.<br><br>(Angeli Decl. ¶ 3, Ex. 2 at 8 (§ IV.b.i).) | <br>What Are Bug Bounties? How Do<br>hackerone.com/vulnerability-manage...<br>Guest<br>hackerone<br>How Do Bug Bounties Work?<br>Companies create bug bounties to provide financial incentives to independent bug bounty hunters who discover security vulnerabilities and weaknesses in systems. When bounty hunters report valid bugs, companies pay them for discovering security gaps before bad actors do. |

APPENDIX A TO DEFENDANT JOSEPH SULLIVAN'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID GARRIE
3:20-cr-00337-WHO

| Garrie's proposed testimony | The July 16, 2021 HackerOne blog |
|---|---|
| ii.  Bounty programs often complement regular penetration testing and allow organizations to test their application security throughout their development life cycles.<br><br>(Angeli Decl. ¶ 3, Ex. 2 at 8 (§ IV.b.ii).) |  |