DAVID H. ANGELI (admitted *pro hac vice*)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
URSULA LALOVIC (Cal. Bar No. 215551)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; tyler@angelilaw.com; michelle@angelilaw.com;
        ursula@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, Washington 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>Defendant. | Case No. 3:20-cr-00337-WHO<br><br>DEFENDANT'S OBJECTIONS TO GOVERNMENT EXHIBITS<br><br>Date: August 22, 2022<br>Time: 2:00 p.m.<br>Crtrm: 2, 17th floor<br><br>Hon. William H. Orrick |

DEFENDANT'S OBJECTIONS TO GOVERNMENT EXHIBITS
3:20-cr-00337-WHO

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION .............................................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................5

    I.      OBJECTION CATEGORY NO. 1: Documents Related to the FTC
            Investigation that Were Not Seen by Sullivan ..........................................5

    II.     OBJECTION CATEGORY NO. 2: Data Breach Notifications to and
            Communications with Various State Attorneys General ..........................8

    III.    OBJECTION CATEGORY NO. 3: Documents Regarding Unrelated
            Cybersecurity Incidents or Uber Investigations .....................................10

    IV.    OBJECTION CATEGORY NO. 4: Communications between Sullivan
            and Kalanick ...........................................................................................11

    V.      OBJECTION CATEGORY NO. 5: Over-Inclusive Copies of Sullivan's
            November 4, 2016 Deposition Transcript and "hipchat" Spreadsheets .........12

    VI.    OBJECTION CATEGORY NO. 6: Documents Detailing Mr. Sullivan's
            Salary and Compensation ........................................................................14

    VII.   OBJECTION CATEGORY NO. 7: Mereacre/Glover Plea Documents ...............16

CONCLUSION................................................................................................................17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1100 W., LLC v. Red Spot Paint & Varnish Co.*,
  No. 1:05-CV-1670-LJM-JMS, 2008 WL 4545311 (S.D. Ind. Oct. 8, 2008) ........................ 12

*Barnes v. Montgomery Cnty.*,
  No. CV AW-09-CV-2507, 2012 WL 13012421 (D. Md. July 9, 2012) ................................ 12

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*,
  728 F. Supp. 2d 205 (E.D.N.Y. 2010) ..................................................................... 10

*Old Chief v. United States*,
  519 U.S. 172 (1997) ............................................................................................. 12

*Tennison v. Circus Circus Enterprises, Inc.*,
  244 F.3d 684 (9th Cir. 2001) ................................................................................ 10

*United States v. Ausby*,
  436 F. Supp. 3d 134 (D.D.C. 2019) ....................................................................... 12

*United States v. Bensimon*,
  172 F.3d 1121 (9th Cir. 1999) ......................................................................... 14, 15

*United States v. Ellis*,
  147 F.3d 1131 (9th Cir. 1998) ............................................................................ 8, 9

*United States v. Feldman*,
  788 F.2d 544 (9th Cir. 1986) ................................................................................ 15

*United States v. Graham*,
  981 F.3d 1254 (11th Cir. 2020) .............................................................................. 8

*United States v. Griego*,
  837 F.3d 520 (5th Cir. 2016) .................................................................................. 7

*United States v. Holmes*,
  No. 5:18-CR-00258-EJD-1, 2021 WL 2044470 (N.D. Cal. May 22, 2021) .............. 14, 15, 16

*United States v. Mitchell*,
  172 F.3d 1104 (9th Cir. 1999) ...................................................................... 14, 15, 16

*United States v. Olson*,
  856 F.3d 1216 (9th Cir. 2017) ............................................................................ 7, 9

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*United States v. Pacific Gas & Electric Co.*,
    178 F. Supp. 3d 927 (N.D. Cal. 2016) .............................................................15, 16

*United States v. Reyes*,
    660 F.3d 454 (9th Cir. 2011) ........................................................................14, 15

**Statutes**

18 U.S.C. § 4 ....................................................................................................................7

18 U.S.C. §§ 4, 1505 .......................................................................................................9

**Other Authorities**

Federal Rules of Evidence 401–403 ...........................................................................5, 9

Federal Rules of Evidence 401-03 ..............................................................................14

Federal Rules of Evidence 401-403 ................................................................10, 11, 12

Federal Rules of Evidence 401-403 and 407 ...............................................................8

Federal Rules of Evidence 403 and 802 .....................................................................12

Rule 403 ...........................................................................................................8, 12, 16

Rules 401-02 ...................................................................................................................8

Rules 401-403 and 801-802 .........................................................................................11

Rules 401 and 402 ..........................................................................................................8

Rules 401403 ................................................................................................................10

Statement of Facts ¶ 20 .................................................................................................6

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1

## INTRODUCTION

2

Consistent with the Court's Pre-trial Order (ECF No. 126), Joseph Sullivan files this

3 objection to specific government exhibits. Attached to this objection is a spreadsheet identifying

4 the specific exhibits offered by the government to which Sullivan objects as well as the Federal

5 Rule(s) of Evidence underlying Sullivan's objection. Most of the identified objectionable

6 exhibits fall into one of seven categories: (1) documents related to the FTC investigation that

7 were not seen by Sullivan; (2) data breach notifications to and communications with various state

8 attorneys general; (3) documents regarding unrelated cybersecurity incidents or Uber

9 investigations; (4) unrelated communications between Sullivan and Uber's then-CEO, Travis

10 Kalanick; (5) complete copies of Sullivan's November 4, 2016 deposition transcript and

11 "HipChats" spreadsheets; (6) documents about Sullivan's salary and compensation; and

12 (7) Mereacre/Glover Plea Documents. The attached spreadsheet also indicates, by number and a

13 brief description, which of these categories the proposed government exhibit falls into. With

14 respect to the seven categories and based on the argument below, the Court should sustain

15 Sullivan's objections and exclude the identified exhibits.

16

Some of the defendant's objections do not neatly fall into these seven categories and are

17 instead identified on the attached spreadsheet, plus the Federal Rule of Evidence that is the basis

18 of the defendant's objection. For these documents, the defendant suggests these be discussed

19 further at the pretrial conference.

20

## MEMORANDUM OF POINTS AND AUTHORITIES

21

I.    **OBJECTION CATEGORY NO. 1:** **Documents Related to the FTC Investigation
      that Were Not Seen by Sullivan**

22

23

Pursuant to Federal Rules of Evidence 401–403, Sullivan objects to the admissibility of

the identified government exhibits concerning the FTC's investigation because there is no

24

evidence that Sullivan was aware of them at any time during Uber's response to the 2016

25

cybersecurity incident at the heart of this case (the "2016 Incident").

26

27

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    The government intends to introduce the bulk of Uber's correspondence and negotiations

2    with the FTC over the course of the FTC's multi-year investigation, even though Sullivan's

3    interactions with the FTC were limited. These documents were almost all exclusively exchanged

4    between and prepared by outside lawyers for Uber and the FTC's lawyers. Many relate to

5    negotiations over granular details about the scope of document production and interrogatory-

6    styled questions, as well as wording of specific agreements between the parties (e.g., Exs. 294,

7    580, 602). The government's proffered exhibits include documents that pre-date Mr. Sullivan's

8    employment (Ex. 260) as well as those that post-date his employment (Exs. 635, 642, 636-638,

9    640, 643, 651). With one exception, noted below, none of the government's exhibits in this

10   category were authored, edited, reviewed, or even received by Mr. Sullivan. For example:

11       <u>Negotiations between Uber and the FTC regarding the scope of the FTC's Civil
         Investigative Demand (CID) and other items.</u>

12

13       Exhibits 322 and 330 are letters between outside counsel for Uber and FTC lawyers

14   negotiating the scope of the CID. Exhibit 330, for example, is a letter from the FTC negotiating

15   the scope of an FTC investigational hearing and other supplemental responses required,

16   including information relating to the authenticity of documents produced. There is no evidence

17   that Sullivan knew of or participated in these negotiations. As such, these negotiations do not

18   shed light on the issues before the jury and are, therefore, irrelevant.

19       <u>Uber's Eighth Set of Responses to the FTC's CID</u>

20       On December 21, 2016, Uber sent its Eighth Set of Responses to the FTC's CID ("Eighth

21   Response"). This document has played a central role in the government's case (Complaint ¶ 38),

22   and it seeks to introduce numerous drafts and other internal communications regarding the

23   Eighth Response as well as the final submission itself. (Exs. 453-54, 457, 466.) The government

24   seeks to do this, presumably, in order to point out various representations in the Eighth Response

25   that the government believes to be incomplete or inaccurate in order to fault Sullivan's "failure"

26   to correct these inaccuracies. (*See* Uber Non-Prosecution Agreement, Statement of Facts ¶ 20.)

27   The undisputed evidence, however, is that *Mr. Sullivan played no role in drafting, editing, or*

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1   *even commenting on this submission.* Although he was sent a link that would permit him to

2   access a draft copy of the document the day before it was sent to the FTC, Uber has confirmed to

3   the government both that Sullivan was never asked to review the draft and that there is no

4   evidence that he ever accessed the link or otherwise viewed the document. As such, the

5   introduction of the Eighth Response (or previous drafts and communications relating to the

6   Eighth Response) is simply not relevant and would prejudicially invite the jury to engage in

7   evidence-free speculation.

8           <u>Documents related to negotiations about the Consent Decree and Complaint</u>

9           The FTC and Uber began negotiations in late-April 2017 to resolve the pending FTC

10   investigation. From late-May 2017 through mid-July 2017, there were numerous drafts of

11   settlement documents (a Consent Decree and Complaint) exchanged between the FTC and

12   Uber's outside lawyers. On May 18, 2017, Sullivan provided comments and edits to the initial

13   Consent Decree (but not the Complaint) sent by the FTC. *This was the last draft that Mr.*

14   *Sullivan saw in connection with this process*: there is no evidence that he saw, edited, or

15   commented on any draft submissions to the FTC after May 18. 2017. Uber did not send its first

16   redlined draft to the FTC until one week later, on May 25, 2017. This was followed by the

17   exchange of at least seven additional redlined drafts of the Consent Decree and Complaint, as

18   well as numerous communications between Uber's outside lawyers and the FTC. There is no

19   evidence that Sullivan saw any of this. Yet, *all* of these documents are on the government's

20   exhibit list. (See Exs. 580, 594, 602.)

21           As explained in Sullivan's omnibus motions in limine, the two counts remaining in this

22   case each turn on Sullivan's knowledge and intent. (ECF No. 137 at 16-17.) *See also United*

23   *States v. Griego*, 837 F.3d 520, 523 (5th Cir. 2016) ("'[C]orruptly' in the context of § 1505

24   means 'knowingly and dishonestly, with the specific intent to subvert or undermine the due

25   administration of justice.'" (quoting *United States v. Kay*, 513 F.3d 432, 454 (5th Cir. 2007)));

26   *United States v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017) ("18 U.S.C. § 4 requires the

27   government to prove the defendant knew the principal engaged in conduct that satisfies the

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

essential elements of the underlying felony *and* that the defendant knew such conduct was a felony." (Emphasis in original)). What *others* at Uber or elsewhere may have known or believed about the FTC investigation has no bearing on *Sullivan's* knowledge or on any other issue before the Court. *See, e.g.*, *United States v. Graham*, 981 F.3d 1254, 1262 (11th Cir. 2020) (holding that a third party's "subjective belief that [allegedly fraudulent documents] were or were not genuine" did not make "it any more likely that [the defendant] thought the [documents] were valid" and affirming the exclusion of such evidence under Rules 401-02). Thus, without evidence that Sullivan drafted, reviewed, or otherwise became aware of their contents, documents concerning the FTC's investigation have no probative value and should be excluded under Rules 401 and 402.

Moreover, if admitted, these materials would cause substantial unfair prejudice to Sullivan by improperly inviting the jury to decide this case based not on Sullivan's knowledge, but on the knowledge of others. That danger warrants the exclusion of those documents under Rule 403 as well. *See, e.g.*, *United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998) (reversing a conviction where the trial court improperly admitted evidence that 'created a grave danger that the defendant's guilt was established *not* by evidence relevant to the particular offense being tried, but rather' by evidence that was wholly unrelated to these offenses" (quoting *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995)) (emphasis in original)). The documents in this category of proffered exhibits on the government's list are not admissible and should be excluded.

## II.   OBJECTION CATEGORY NO. 2: Data Breach Notifications to and Communications with Various State Attorneys General

Pursuant to Federal Rules of Evidence 401-403 and 407, Sullivan objects to Uber's notifications to and communications with various state attorneys general and communications regarding the same. (Exs. 267, 273, 318, 325, 331, 615, 635-36, 642, 649, 651.) Those communications relate to both the 2016 Incident and a prior 2014 data breach (the "2014 Breach").

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1    Those communications are inadmissible for substantially the same reason as the FTC

2   documents identified above: there is no evidence suggesting that Sullivan was involved in

3   drafting these submissions or that he even saw them. Indeed, some of these documents pre-date

4   Sullivan's employment with Uber (Exs. 267-70), and many others were sent after or on the very

5   day of Sullivan's November 21, 2017 termination from Uber. For example, the government

6   seeks to introduce data breach notification letters regarding the 2016 Incident that Uber sent on

7   November 21 and 22, 2017 to the Attorneys General of Connecticut (Ex. 635), California (Ex.

8   636), Maine (Ex. 637), Florida (Ex. 638), and Hawaii (Ex. 640). Exhibit 643 is a letter from the

9   New York Attorney General's Office to Uber's outside counsel confirming receipt of Uber's

10   "data breach notification report" followed by a list of questions regarding the 2016 Incident.

11   Exhibit 651 is yet another letter from the New York Attorney General's Office to Uber's outside

12   counsel asking follow-up questions on December 13, 2017, almost a month after Mr. Sullivan

13   was terminated.

14    More problematically, these communications pertain solely to the question of whether the

15   2016 Incident and the 2014 Breach amounted to "data breaches" as that term is defined by

16   various *state* laws. State law, however, has nothing to do with this case. Sullivan is charged with

17   obstructing a *federal* investigation and concealing a *federal* felony from *federal* authorities. *See*

18   18 U.S.C. §§ 4, 1505; *Olson*, 856 F.3d at 1223. With the Court's ruling on Sullivan's motion to

19   dismiss—in which it held that "the wire fraud cha[r]ges cannot proceed on [the] theory" that

20   Sullivan violated a duty imposed by California's data breach law (*see* ECF No. 129 at 1, 11–

21   14)—and the government's subsequent dismissal of those counts, the issue of state law has

22   become a moot point. Thus, if admitted, Uber's communications with state attorneys' general

23   would invite the jury improperly to decide a question that is not before it, *i.e.*, whether the 2016

24   Incident amounted to a "data breach" within the meaning of state law. *See Ellis*, 147 F.3d at

25   1136. Under Rules 401–403, the Court should exclude that evidence.

26

27

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

### III.   OBJECTION CATEGORY NO. 3: Documents Regarding Unrelated Cybersecurity Incidents or Uber Investigations

Pursuant to Federal Rules of Evidence 401-403, Sullivan objects to the admission of government exhibits concerning other, unrelated Uber cybersecurity incidents (Exs. 238, 261, 263, 280, 288, 297, 300, 312-13, 321, 548, 550) or other Uber investigations (Exs. 287, 570) that are not relevant and/or are prejudicial.

As the Chief Security Officer for Uber, Sullivan oversaw both physical and cyber security issues. Uber was a burgeoning company at the time, operating internationally. Thus, it is not a surprise that he dealt with and communicated regularly about the many varied and different security issues that came up during his tenure. These other incidents have little, if anything, in common with the 2016 Incident. For example, Exhibits 548 and 550 concern an investigation into a telephone scam aimed at drivers to get them to cancel rides and provide password information. Exhibit 321 involves suspicious passengers in Brazil who may have had ties to a terrorist organization. Exhibit 313 involves potential phishing and "distributed denial-of-service" attacks. And so on. Thus, the meager probative value proffered by the government in support of these exhibits, is substantially outweighed by the danger that their introduction would waste time, confuse the issues, and unfairly prejudice Sullivan. In particular, determining whether these other incidents are relevant at all would require the jury to evaluate the similarity of each incident to the 2016 Incident. That exercise would cause "mini trials" of the sort that courts routinely exclude and invite the jury to decide this case based on those other incidents, as opposed to the incident actually at issue in this case.

Rules 401403 bar that tactic. In *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001), for example, the Ninth Circuit affirmed the exclusion of evidence that "might have resulted in a 'mini trial,'" on grounds that it "would be an inefficient allocation of trial time" and "would create a significant danger that the jury would base its [decision] on remote events involving other[s] . . . instead of recent events concerning Plaintiffs." *See also M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 218 n.14 (E.D.N.Y. 2010) (suggesting that an insured would not be permitted to offer evidence of "the long history

DEFENDANT'S OBJECTIONS TO GOVERNMENT EXHIBITS
3:20-cr-00337-WHO                    10

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

regarding Allstate's dealings with hundreds of individual customers" because "[t]his type of 'kitchen-sink' approach . . . clearly raises relevancy issues, as well as the real specter of unnecessary mini-trials, jury confusion, and unfair prejudice"). The Court should do the same here. Under Rules 401-403, evidence concerning other, unrelated cybersecurity incidents should be excluded.

## IV.   OBJECTION CATEGORY NO. 4: Communications between Sullivan and Kalanick

Pursuant to Rules 401-403 and 801-802, Sullivan moves to exclude various irrelevant communications between Uber's then-CEO Travis Kalanick and himself (*e.g.,* Exs. 303, 306, 414, 532, 539-40, 546-47, 571, 656, 659).

On their face, these communications—which pertain to matters such as assaults in other countries, protests, and foreign earthquakes—have nothing to do with this case. At the very most, they establish the unremarkable (and undisputed) facts that Sullivan was in regular communication with Kalanick (his direct supervisor) and that Sullivan promptly informed Kalanick of the 2016 Incident. For example, Exhibit 656 is a six-page table with multiple texts between Kalanick and Sullivan involving, among other things, Kalanick's home internet, requests for a telephone call, and managing Kalanick's email. None relate to the 2016 Incident. Exhibits 546 and 547 are a communication and photo attachment from Sullivan, copying Kalanick, regarding protests at Uber headquarters in February 2017. Exhibit 532 is an eight-page email exchange with multiple parties, initiated by a member of the CEO's executive team, also known as the "A-Team." The communications concern presenting information to a local government agency to persuade them not to require contemplated reporting regulations because of privacy concerns. At some point late in the email chain, a member of the A-Team adds CEO Kalanick to the email chain; Sullivan is added even later by a different Uber employee who asks him to put his "best data people" on the project and responds. (*See* Ex. 532 at 2.) This document has no relevance to the FTC investigation or the 2016 Incident.

These communications establishing nothing more than what Sullivan already concedes

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

and thus serve no purpose beyond confusing the jury. *See Old Chief v. United States*, 519 U.S. 172, 191 (1997) ("For purposes of the Rule 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other."). Under Rules 401-403, the Court should exclude those communications.

## V.   OBJECTION CATEGORY NO. 5: Over-Inclusive Copies of Sullivan's November 4, 2016 Deposition Transcript and "HipChats" Spreadsheets

Pursuant to Federal Rules of Evidence 403 and 802, as noted below, Sullivan moves to exclude complete copies of Sullivan's November 4, 2016 deposition transcript (which includes all the exhibits) and various spreadsheets showing voluminous "HipChats" communications within Uber. (*See* Exs. 657, 658, 660.) In each case, to admit the *entire* document, as opposed to just those portions on which the government intends to rely, would be confusing, waste time, and likely lead to substantial unfair prejudice.

"Where, as here, a party seeks the admission of 'entire transcripts' into evidence, the 'required analysis [under Rule 403] is context-specific and must be made on a case-by-case basis.'" *United States v. Ausby*, 436 F. Supp. 3d 134, 153 (D.D.C. 2019) (Quoting *Amobi v. Brown*, 317 F. Supp. 3d 29, 40 (D.D.C. 2018)) (excluding various examples of such evidence). Courts generally refuse to admit entire transcripts into evidence because doing so usually serves no real purpose and would lead only to a waste of time. *See, e.g.*, *Barnes v. Montgomery Cnty.*, No. CV AW-09-CV-2507, 2012 WL 13012421, at *2 (D. Md. July 9, 2012); *1100 W., LLC v. Red Spot Paint & Varnish Co.*, No. 1:05-CV-1670-LJM-JMS, 2008 WL 4545311, at *2 (S.D. Ind. Oct. 8, 2008).

That is true in these circumstances as well. Sullivan's deposition transcript and the HipChats spreadsheets each contain voluminous information and communications that are irrelevant, hearsay, and/or otherwise inadmissible. Sullivan has asked the government to identify the specific portions of those documents on which it intends to rely, and it has so far declined to do so. For example, the government seeks to introduce each exhibit Mr. Sullivan was shown in

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

his deposition before the FTC. (Exs 311,328, 278, 282, 283, 284, 289, 291, 293). However, during his deposition, Mr. Sullivan had no personal knowledge of some of those exhibits or stated that he was speculating about their contents:

> Exhibit 10 ("Fork and extend prezi/repoguard for monitoring GitHub gists and employee dotfiles repos") (103:19-23)
>
> - Sullivan's testimony: "I'm not 100 percent certain, but my understanding…" (104:16-17); "So that's my understanding of what this is without having talked to the team about it in over a year." (105:1-3)
>
> Exhibit 13 ("Phabricator AWS Security Workboard") (128:1-8)
>
> - Sullivan had seen this before, but the copy was "super blurry" (128:7-8)

He did not know when it was created (129:13-15) or what tasks it referred to (129:22-130:1); *see also* 130:7-10 ("I don't recall off the top of my head when the task was created or how much effort went into it"). In addition, during the deposition, Uber's outside counsel lodged and preserved several objections, but Sullivan (consistent with FTC rules of practice) proceeded to answer. Here are examples:

> 23:10-24:7: Objection based on privilege (attorney work product)/ to question "Who on your legal team was responsible for providing support to the legal department?"
>
> 124:8- 125:9: Objection to the form of the question (compound) to question "Do you think it makes sense to store less testing data or ensure that testing data isn't stored in such a complex fashion as a result of the findings in Kivu's report?"
>
> 134:22-135:10: Objection, lack of foundation/ to question: "For how long has Uber had formalized security training programs in place for new employees?"
>
> 143:6-12: Objection based on lack of foundation to question: "So I want to turn to the password reset incident discussed in the responses to the 2016 CID. Now, is it correct that the password reset incident resulted from Uber's implementation of a new dispatch server called Dispatch XO?"

The HipChats spreadsheets are similarly over-inclusive and also contain hearsay. (Exs. 657-58, 660.) While some are arguably relevant, others consist of employees making lunch plans and gossiping about the 2016 Incident and Sullivan's termination.

To admit such statements would waste time and likely confuse the jury; the government

DEFENDANT'S OBJECTIONS TO GOVERNMENT EXHIBITS
3:20-cr-00337-WHO

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

13

should be precluded from offering the full deposition transcript (with exhibits) and the HipChats

spreadsheets. Instead, the government should be required to identify those portions of the

documents they intend to submit to the jury, and the Court can consider the admissibility of each

of those portions.

## VI.  __OBJECTION CATEGORY NO. 6:__ Documents Detailing Mr. Sullivan's Salary and Compensation

Pursuant to Federal Rules of Evidence 401-03, Sullivan objects to several documents the

government intends to offer concerning his salary and compensation as Uber's Chief Security

Officer. (*See* Exs. 272, 576, 583, 675)

Those documents—as well as the matter of Sullivan's compensation generally—have no

meaningful connection to any matter before the Court. If admitted, whatever meager probative

value they might have would be substantially outweighed by the danger of unfair prejudice. In

the Ninth Circuit, it is well-established that generalized evidence of a defendant's "greed" is,

"without more, . . . likely to amount to a great deal of unfair prejudice with little probative

value." *United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999). "The problem with"

such evidence is "that it does not prove much, because almost everyone, poor or not, has a

motive to get more money. And most people, rich or poor, do not steal to get it." *Id*. at 1109.

Thus, for such evidence to be admissible, "something more" is required. *United States v.

Bensimon*, 172 F.3d 1121, 1129 (9th Cir. 1999).

That "something more" must connect the defendant's finances with the charged conduct

in more than an abstract or theoretical way. *See, e.g.*, *United States v. Holmes*, No. 5:18-CR-

00258-EJD-1, 2021 WL 2044470, at *4 (N.D. Cal. May 22, 2021) ("[E]vidence of an

individual's lavish spending habits, *without a connection to an individual's participation in

criminal activity*, is irrelevant." (Citing *United States v. Hatfield*, 685 F. Supp. 2d 320, 326

(E.D.N.Y. 2010)) (emphasis added)). For example, in *United States v. Reyes*, 660 F.3d 454, 464

(9th Cir. 2011), the Ninth Circuit held that evidence of a defendant's "gains from backdated

[stock] options" was properly admitted because the defendant was charged with a crime arising

DEFENDANT'S OBJECTIONS TO GOVERNMENT EXHIBITS
3:20-cr-00337-WHO
14

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

out of that very conduct. The evidence thus "permitted the jury to draw a reasonable inference that he knew what he was doing, and how the scheme operated to his benefit." *Id*. Similarly, *United States v. Feldman*, 788 F.2d 544 (9th Cir. 1986), was a bank robbery case in which the defendant's bank account "was overdrawn by more than $8,000[.]" *See Mitchell*, 172 F.3d at 1108 (citing *Feldman*, 788 F.2d 544). That evidence was properly admitted, the Ninth Circuit held, because it "tended to prove that [the defendant] had a desperate need to cover the overdraft, not just that he would be better off if he were a few thousand dollars richer. Feldman was squeezed, not just poor." *Id*. at 1109. In *United States v. Pacific Gas & Electric Co.* ("*PG&E*"), 178 F. Supp. 3d 927 (N.D. Cal. 2016), the court provisionally admitted evidence of PG&E's profits, revenue, and employee compensation. because the government "allege[d] that PG&E's profit motives drove 'cost-cutting' decisions that actually meant 'safety-cutting' decisions," which in turn "suggest[ed] that PG&E's inclination to make money *actually informed* its decision-making" in regard to the accidental explosion from which the case arose. *Id*. (emphasis added). And in *Holmes*, evidence that the defendant "enjoyed a lifestyle as . . . [her company's] CEO that is comparable to those of other tech company CEOs" was admissible because the defendant's company *was* the scheme to defraud with which she was charged. *See* 2021 WL 2044470, at *4–*5.

Without any such connection, however, courts routinely exclude evidence of a defendant's wealth. For example, in *Mitchell*, the Ninth Circuit reversed the admission of evidence that the defendant "was in very poor financial condition, was unemployed at the time," and thus had a "motive . . . to commit the bank robbery" at issue. *See id*. at 1106, 1109-10. "That a person is feckless and poor, or greedy and rich, without more, has little tendency to establish that the person committed a crime to get more money, and its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. at 1110. In *Bensimon*, the Ninth Circuit likewise held that "a petition for bankruptcy is not in and of itself evidence of a specific and immediate financial need such that it would be relevant to showing . . . motive [,]" and should thus be excluded. 172 F.3d at 1129. Even in *Holmes* and *PG&E*, this Court excluded substantial

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

portions of the wealth evidence that the government sought to introduce. In *Holmes*, this Court excluded "references to specific purchases or details reflecting branding of clothing, hotels, or other personal items" because generalized "evidence of [the defendant's] wealth and fame is not highly (or even moderately) probative of intent to defraud." 2021 WL 2044470, at *5. And in *PG&E*, it noted that its ruling provisionally admitting certain financial evidence did "not mean all evidence regarding PG&E's financial condition would survive a Rule 403 balancing." 178 F. Supp. 3d at 950. "For example, the fact that PG&E reported its income for the second quarter of 2010 as $333 million . . . is a presentation of wealth unnecessary to any argument that PG&E's profit motives drove regulatory violations, and it is therefore inadmissible." *Id.* (internal quotation marks and citation omitted).

In these circumstances, evidence of Sullivan's Uber compensation would amount to "a presentation of wealth" that is likewise "unnecessary to any argument" that either party may make. *See id.* There is, in other words, no evidence at all that Sullivan's compensation "actually informed" his or anyone else's decision-making with respect to the 2016. *Id.* At no point, for example, did Sullivan or anyone around him ever express concern over how the 2016 Incident might impact their year-end bonuses or entitlement to stock options. The government's only argument in favor of admitting the evidence boils down to the non-sequitur that *Mitchell* and numerous other cases have rejected, *i.e.*, that, because Sullivan is supposedly "greedy and rich" in a general sense, he was more likely to have "committed a crime to get more money[.]" 172 F.3d at 1110. Evidence of Sullivan's Uber compensation, including but not limited to the documents identified in this motion, should be excluded.

## VII.    OBJECTION CATEGORY NO. 7: Mereacre/Glover Plea Documents.

Pursuant to Federal Rule of Evidence 403, Sullivan moves to exclude Brandon Glover and Vasile Mereacre's plea agreements and related documents. Sullivan does so for the reasons outlined in his omnibus motions in limine, which he incorporates by reference here. (*See* ECF No. 137 at 8–14.)

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**CONCLUSION**

For the foregoing reasons, Sullivan respectfully requests that the Court sustain the defendant's objections to the government exhibits identified in the attached spreadsheet.

DATED: August 15, 2022.

                                        *s/David H. Angeli*
                                        David H. Angeli
                                        Tyler P. Francis
                                        Michelle H. Kerin
                                        Ursula Lalovic
                                        John D. Cline

                                        *Attorneys for Defendant Joseph Sullivan*

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880