STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ANDREW F. DAWSON (CABN 264421)
BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7019
    FAX: (415) 436-7234
    andrew.dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH SULLIVAN, <br><br> Defendant. | CASE NO. 3:20-CR-337 WHO <br><br> UNITED STATES'S RESPONSE RE JURY INSTRUCTIONS |

# INTRODUCTION

Defendant has made a series of confusing arguments about the requirements of § 1505 and its interplay with § 2 in an attempt to raise the requirements of § 1505 beyond those required by the statute and cases. In general, defendant's argument misapprehends the nature of § 1505 and incorrectly contends that the government's case is based on "omissions." Dkt. 194 at 1. The government's case is not an omissions case. It is an obstruction case under § 1505. As discussed in more detail, and as *United States v. Price* and § 1515(b) makes abundantly clear, § 1505 prohibits *any act* taken with a corrupt intent to influence a federal agency. There are many affirmative acts of obstruction in this case—including false statements, affirmative acts of concealment (including silencing his subordinates as well as the hackers), and intentional withholding of information from the FTC and those within Uber who defendant obviously worried would disclose that information to the FTC. So long as defendant took any such act with the corrupt intent to influence, he violated § 1505.

The government submits this brief to explain § 2(b) and its relationship with § 1505 and § 4, as well as to again restate the substantive requirements of those two statutes.

# ARGUMENT

## A.  Section 1505, § 2, and Duty to Disclose

The general law on § 2 and § 2(b), the general law on § 1505, and *United States v. Singh* all overwhelmingly establish that § 2(b) is an alternative theory of liability, not a limitation on liability as a principal under substantive criminal statutes, including § 1505, and that there is no "duty to disclose" requirement for § 1505.

### 1.  Background on § 2

Section 2, the general Title 18 provision for secondary liability, provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2. As the legislative history makes clear, § 2(b) was added to § 2 in 1948 order to provide a clear, alternative theory of liability:

> The section as revised makes clear the legislative intent to punish as a principal *not only one* who directly commits an offense and one who "aids, abets, counsels, commands,

induces or procures" another to commit an offense, *but also* anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States.

It removes all doubt that one who puts in motion . . . or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal. . . .

18 U.S.C. § 2 Historical and Revision Notes (emphasis added). Under § 2(b), "not only" are one who "directly commits an offense" and one who "aids, abets, counsels, commands, induces or procures" another to commit an offense liable, "but also" those who cause the "doing of an act" that would be a crime with the appropriate intent.

For this reason, courts have consistently described § 2(a) and § 2(b) as alternative theories of liability, added by Congress to establish additional ways of committing a single crime, with different elements than the primary substantive offenses, but nonetheless implied in every indictment. As the Ninth Circuit most clearly explained in *United States v. Garcia*:

Aiding and abetting is simply one means of committing a single crime. Indeed, we have often referred to aiding and abetting as a theory of liability. . . . We have also held a number of times in different contexts that aiding and abetting is embedded in every federal indictment for a substantive crime.

400 F.3d 816, 820 (9th Cir. 2005) (internal citations omitted). The Ninth Circuit has also noted that:

the elements necessary to convict an individual as a traditional principal also differ from the elements necessary to show the individual aided and abetted that crime . . . but this difference does not prevent aiding and abetting from being implied in every indictment for a substantive offense. The difference between causing and aiding and abetting alone, therefore, does not prevent either or both theories from being implied in an indictment.

*United States v. Armstrong*, 909 F.2d 1238, 1242 (9th Cir. 1990).

In other words, under Ninth Circuit law, every indictment that charges a substantive offense automatically implies three ways of committing that offense—as a principal, as an aider and abettor under § 2(a), and as a causer, under § 2(b): "[A]ll indictments for substantive offenses must be read as if the *alternative* provided by 18 U.S.C. § 2 were embodied in the indictment." *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988) (emphasis added). Additionally, specific unanimity is not required among the jury in deciding which of the three ways (substantive offense, aiding and abetting, and causation) a defendant has violated the

statute: "It does not matter whether some jurors found that he performed these acts himself, and others that he intended to help someone else who did, because either way, Garcia's liability is the same: as a principal, for committing the acts charged." *Garcia*, 400 F.3d at 820.

Section 2(b) thus serves to add criminal liability based on causation in situations where the substantive underlying offense itself includes, as an element, an *actus reus* that the causer did not do him or herself. Many substantive criminal statutes, of course, require a defendant to commit a specific act themselves. *See, e.g.,* Ninth Cir. Model Jury Instr. 9.1—Bank Robbery (requiring that defendant "took" or "obtained by extortion"); Ninth Cir. Model Jury Instr. 12.1—Possession with Intent to Distribute (requiring that defendant "knowingly possessed" a controlled substance); Ninth Cir. Model Jury Instr. 14.6—Firearms—Unlawful Transportation (requiring that defendant "knowingly transported" a destructive device or firearm); Ninth Cir. Model Jury Instr. 15.24—Obtaining Information by Computer (requiring that defendant "accessed without authorization" or "exceeded authorized access"); Ninth Cir. Model Jury Instr. 16.1—Murder—First Degree (requiring that defendant "killed" the victim). For that large category of statutes, § 2(b) provides liability for individuals who, with the appropriate willfulness[1] *mens rea*, cause another to commit an *actus reus* that is an element of the offense. For example, a defendant can commit the offense of transporting firearms without engaging in the transportation him or herself, but instead by causing, with the requisite criminal intent, a potentially unwitting third party to transport the firearms.

However, § 2(b) is mostly superfluous for some specific statutes that already include, within the definition of the criminal *actus reus*, causing another to commit a particular act. For example, the acts required as elements of wire fraud and mail fraud include having "devised,

---

[1] The government maintains its argument that "willfully" under § 2(b) does not automatically require knowledge of wrongdoing for every statute, just for those where that level of willfulness is the appropriate level of *mens rea* anyway.

The Court suggested in indicating its view of this question that it believed that "willfully" in § 2(b) must be so read to add something. That is not the case—a "willfully" *mens rea* requirement in § 2(b) is necessary or else it would impose liability on those who unwittingly cause others to commit criminal acts even without *any mens rea*. As the vast majority of courts (cited in the government's briefing on "willfully") who have considered the general question have held that "willfully" operates in reference to the underlying offense, establishing liability for those who cause another to commit an act that is an element of the crime while also possessing the state of mind necessary to commit that crime.

U.S. RESPONSE RE JURY INSTRUCTIONS
3:20-CR-337 WHO                                    4

intended to devise, or participated in" a material scheme to defraud, with intent to defraud, and having "used, or caused to be used" a wire or mailing as part of the scheme. Ninth Cir. Model Jury Instr. 15.32—Mail Fraud; Ninth Cir. Model Jury Instr. 15.35—Wire Fraud. A defendant thus can be guilty of wire or mail fraud simply by pulling all the necessary strings in a fraud scheme by causing other unwitting participants to carry out the acts necessary for the scheme, and it is difficult to imagine how an individual could violate § 1341 or § 1343 *only* under § 2(b) and not under the substantive statutes, given the nature of these offenses.

2. Section 1505

Section 1505, as an omnibus obstruction statute that covers all kinds of obstructive conduct, is much like the wire fraud and mail statutes in the way in which it would interact with § 2(b) liability. As the Court's instruction for § 1505 provides, the elements of the offense are (1) the existence of a pending proceeding, (2) defendant's awareness of that proceeding, and (3) that defendant "intentionally endeavored corruptly to influence, obstruct, or impede the pending proceeding." And as the Court has already indicatively ruled, § 1515(b) provides that "[c]orruptly means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. § 1515(b). As a result, a defendant violates § 1505 by "acting with improper purpose, personally or by influencing another." The statute lists non-exhaustive ways to do so. But the statute in essence prohibits any form of conduct designed to improperly influence, obstruct, or impede a proceeding—whether taken directly or indirectly toward the agency.

The Ninth Circuit has explicitly held so in *United States v. Price*, 951 F.2d 1028 (9th Cir. 1991), and thus has already rejected defendant's argument that indirect influence or failure to disclose information in a pending proceeding requires something more than what is written in § 1505 and § 1515(b). In *Price,* the defendant had used an innocent intermediary as a conduit to threaten the IRS in connection with a pending IRS proceeding. On appeal, the Ninth Circuit rejected defendant's argument that this indirect means of influence did not violate § 1505, holding that "[c]ausing a threat to be communicated to the IRS is one means to obstruct a

pending proceeding." *Id.* at 1031. In so doing, the court explained that:

> the proper inquiry is whether a defendant had the requisite corrupt intent to improperly influence the investigation, not on the means the defendant employed in bringing to bear this influence.' Section 1505, like the other obstruction of justice statutes, can be violated by a variety of methods 'limited only by the imagination of the criminally inclined.'

*Ibid.* (quoting *United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989)). In other words, under *Price*, § 1505 has no limitation on the method of obstruction. The statute imposes liability for any acts that cause improper influence on a proceeding, whether taken directly towards the relevant agency or not. In either instance, instead of focusing on a particular act of a defendant, § 1505 focuses on a defendant's corrupt intent to improperly influence an investigation. For that reason, it is difficult to imagine a situation in which an individual would not violate § 1505 substantively but would do so via § 2(b). Any act taken to cause or influence another to improperly influence an investigation is already a violation of § 1505. And § 1515 includes in its definition not only making false statements, but also withholding or concealing information, with no limitation on those verbs—and no "duty to disclose" whatsoever.

The cases upon which defendant has relied, *United States v. Singh* and *United States v. Curran*, only underscore the point that § 2(b) provides an alternative theory of liability on which the government can proceed when a defendant him or herself does not undertake the acts that are necessary elements of particular charged counts. Neither case was about § 1505, and neither adds any requirements to the substantive elements of § 1505.

By way of context, the government in *Singh* and *Curran* proceeded in part on § 2(b) because neither case involved an omnibus obstruction statute like § 1505 that covers any conduct undertaken to improperly influence a pending proceeding. Instead, both cases involved a defendant who was not preparing election filings himself, but instead whose conduct caused *other people*—those who were working on election campaigns—to file documents that were false or contained omissions, in the context of election laws, to the FEC. Though the conduct in each case was very similar, the government alleged different statutes in each case (§ 1001 in *Curran* and § 1519 in *Singh*). However, both cases involved the government proceeding alternatively under a § 2(b) theory that a particular defendant had caused innocent third parties to violate the

relevant statutes, § 1001 and § 1519, by making false filings in instances where the defendant had not done so himself.

In *Curran*, the government alleged that the defendant had caused campaign treasurers to make false statements to the FEC and thus caused those campaign treasurers to conceal with a duty to disclose material facts from the FEC, both under different provisions of § 1001(a). 20 F.3d 560, 562 (3d Cir. 1994). Section 1001 requires a defendant, "knowingly and willfully," either to make a false statement to a government agency or to conceal a material fact with a duty to disclose. As the Third Circuit in *Curran* explained, the government had conceded that "the duty to disclose the source of the contributions to the Federal Election Commission was that of the campaign treasurers, not that of defendant," and that "the false statements at issue here were the contributor lists submitted by various campaign treasurers to the Federal Election Commission," but that the defendant "did not prepare or file such reports." *Curran*, 20 F.3d at 566–67. As a result, the defendant in *Curran* could not have been guilty of § 1001 directly. *Id.* For that reason, the government proceeded under a combination of § 1001 and § 2(b), and the Third Circuit analyzed what mental state was required of a defendant who was prosecuted for causing campaign treasurers to make false statements or conceal material facts in the context of federal election laws. *Id.* at 569.

In *Singh*, the government alleged (among other things) under § 1519 and § 2(b) that defendant Singh and others had caused election campaigns to file false campaign reporting documents by omitting to provide to the campaigns information required by election law. 979 F.3d 697, 706 (9th Cir. 2020); *see also United States v. Singh*, CR 14-388 MMA (S.D. Cal.), dkt. 336 at 18–21 (listing particular § 1519 counts). As the *Singh* Court explained, "'[i]n order to prove a violation of § 1519, the Government must show that the defendant (1) knowingly committed one of the *enumerated acts* in the statute, such as destroying or concealing; (2) towards 'any record, document, or tangible object'; (3) with the intent to obstruct an actual or contemplated investigation by the United States of a matter within its jurisdiction.'" *Id.* at 715 (quoting *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir. 2015)) (emphasis added). Thus, § 1519 enumerates *specific* acts that a defendant must undertake to violate it.

*Singh* then went on to analyze the sufficiency of the evidence of particular § 1519 counts as to Singh under *both* substantive principal liability and under "causation" liability under § 2(b). Specifically, first (and as discussed further below re duty to disclose), the court discussed the government's theory that an omission could satisfy § 1519's actus reus element, and the court found that it could. *Singh*, 979 F.3d at 716. The court then responded to *Singh*'s argument that "even if he omitted" the relevant information from the documents, "he had no duty to disclose that information" because "he played no role in preparing the campaign disclosure forms." *Id.* The Ninth Circuit found that this argument had "merit," but then went on to explain that, even if Singh had no duty, he "was not simply convicted under § 1519. Instead, the jury instructions and the Indictment disclosed that the Government proceeded under 18 U.S.C. § 2(b) in conjunction with § 1519." *Id.* Like the defendant in *Curran*, Singh's liability turned on the duty of the campaigns to disclose the information combined with Singh's willful causation of the omission of that information.

The *Singh* Court then quoted *Curran* and held that willfulness was the appropriate state of mind for a violation of § 1519 via § 2(b) in the election context:

> "When a defendant's culpability is based, not on his own communications with the federal agency, but on information furnished to the agency by an intermediary, the element of intent takes on a different cast than it does if a direct violation of [the underlying statute] is asserted." *Curran*, 20 F.3d at 567. By proceeding pursuant to § 2(b), the Government had to show that Singh "willfully" caused the false reporting. 18 U.S.C. § 2(b).

*Singh*, 979 F.3d at 715.

It is clear from *Singh* and *Curran*, in addition to the law on § 1505 (including the plain language of the statutes and *Price*) and § 2(b) discussed above, that the willfulness requirement in § 2(b) *only* applies when the government is "proceeding pursuant to § 2(b)" to establish liability of a defendant for an act not undertaken directly by that defendant.

If, in this case, the government had charged defendant with violations of § 1001 or § 1519 for the making of false filings to the FTC, then defendant would only be responsible either for false statements or documents that he made himself, or those that he caused to be made with a willful state of mind. But the government did not charge defendant with either such

statute.  Instead, because a "pending proceeding" was ongoing, and defendant was aware of that proceeding, his liability for criminally obstructive acts was broader under § 1505 and § 1515(b) than the enumerated acts prohibited by § 1001 and § 1519.  And though § 1001 and § 1519 only apply to enumerated acts, they are much broader jurisdictionally than § 1505, as they do not include that defendant be aware of an actual "pending proceeding" and thus apply to any statement to a federal agency or any document within the jurisdiction of the agency—even when no proceeding is pending, or even when defendant is not aware of any such proceeding.

For all of these reasons, the government does not see significant need for a § 2(b) instruction for § 1505, but supports the inclusion of one so long as the Court makes clear that it is an alternative, additional theory of liability beyond the substantive instruction, so the defense cannot argue that the government must satisfy a willfulness standard to convict under § 1505.

3.  Defendant's Latest Argument on "Duty to Disclose"

After previously arguing that § 2(b) modified the elements of § 1505, defendant now has shifted his argument, and instead has made a wholly novel argument that *Singh*—a § 1519 case—imposes a novel "duty to disclose" requirement on § 1505.  Dkt. 194.  The defense previously contended that § 1505 has a "duty to disclose" requirement in the briefing on the jury instructions for § 1505, but at that time relied entirely on fraud cases, not *Singh*.

This argument (which cites to no § 1505 cases and completely ignores the description of conduct offered in § 1515(b)) is actually contrary to the explicit holding of *Singh*, which rejected for purposes of § 1519 the precise argument defendant is making now—that falsity via omissions under § 1519 requires a "duty to disclose."  It also elides the differences between § 1519 and § 1505, and the nature of the proof in this case.

First, *Singh* explicitly held that *no* "duty to disclose" was required to violate § 1519 directly via omission of information from documents.  In challenging his convictions under § 1519, Singh made the exact argument defendant is making here—that "the language in § 1519 requires an affirmative act, and that a mere omission, without an affirmative duty, cannot satisfy the element."  *Singh*, 979 F.3d at 716. In the next sentence following that quote, the Ninth Circuit explicitly rejected that precise argument: "Yet, many courts, including our own, have found that an omission with the requisite mental state

satisfies the element." *Id.* The court went onto cite and quote from opinions discussing "the generally accepted premise that an omission with the requisite mental state constitutes a deceptive practice." *Id.*; *see also United States v. Lanham*, 617 F.3d 873, 887 (6th Cir. 2010) ("Material omissions of fact can be interpreted as an attempt to 'cover up' or 'conceal' information.") (cited by *Singh*). As *Singh* explained:

> It is difficult to differentiate between the culpability of one who intentionally omits information, and one who conceals or falsifies information. It may also be difficult to differentiate between acts of concealment and omission. Imagine, for example, an individual who omits the detail of a specific, identifiable tattoo from a witness statement, in order to conceal the identity of a perpetrator. In such a situation, the omission is an act of concealment or falsification.

*Id.* at 716–17. The court thus held that, regardless of a duty to disclose, "an omission satisfies § 1519's actus reus element, especially since terms such as 'conceal' and 'false entry,' specifically listed in the statute, refer to similar actions."[2] *Id.* at 717.

Second, the Ninth Circuit *next* considered *Singh's* argument, discussed above, that his tenuous connection to the actual filings rendered his convictions insufficient directly under § 1505. The Ninth Circuit characterized his argument as that "he had no duty to disclose" information and "played no role in preparing the campaign disclosure forms," so "his connection to any actions taken was particularly tenuous." *Singh*, 979 F.3d at 717. The Ninth Circuit found that this argument "ha[d] merit" because "most of the cases where courts affirmed § 1519 convictions based on omissions, the defendants *either prepared the record or document, or were responsible for doing so*." *Id.* (emphasis added). The court then went onto describe the interplay between § 2(b) and § 1519 in such a situation, discussed above. *Id.* at 717–18.

In other words, because Singh did not prepare the particular documents that he was charged with falsifying via omission under § 1519, he could not be found guilty under § 1519 without § 2(b). This makes sense. Again, as discussed above, § 1519 is a false document statute requiring (as relevant here) the act of falsification of an actual document, record, or tangible

---

[2] The district court's jury instructions in *Singh* also (1) did not include a "duty to disclose" and (2) make clear that causing the falsification of records was an additional theory of liability. In that case, the district court instructed on the standard substantive elements of § 1519, with no duty to disclose, and then additionally stated, "A defendant does not have to personally conceal an entry, cover up an entry, falsify an entry, or make a false entry, in a record or document" and then went onto explain the elements of "causing the falsification of records." *United States v. Singh*, CR 14-388 MMA (S.D. Cal.), dkt. 463 at 36–37.

object, and the government in *Singh* charged particular false campaign filings as the relevant false documents—documents that Singh apparently had no role in preparing. The counts that were actually charged in *Singh* mattered substantially to the analysis, as they delineated the relevant *actus reus* that the government alleged violated § 1519. For example, had Singh been charged with sending a false email to the campaign that intentionally omitted relevant information, he would have likely been liable directly under § 1519 without reference to § 2(b), as the email itself would have been a false record.

In any event, as explained repeatedly, defendant in this case is not charged with § 1519 for the submission of particular false documents to the FTC. Instead, he is charged with § 1505. Section 1505 is not a false statement or false document statute. As explained above, § 1505 criminalizes corrupt intent to obstruct an official proceeding implemented by any method, "limited only by the imagination of the criminally inclined," *Price*, 951 F.2d at 1031, and § 1515(b) *specifically* states that "corruptly" under § 1505 includes "withholding" and "concealment."

Third, the evidence in this case is not simply that defendant omitted information from documents that someone else submitted to the FTC. Instead, it is that he undertook an expansive scheme to cover up the nature of the 2016 data breach from the FTC in a myriad of ways. His obstructive acts include—but are in no sense limited to—signing off (via email or otherwise) on documents that were submitted to the FTC and intentionally withholding and omitting information both from those documents and from the people who were working on such documents. But that does not render the case an omissions case, or one that requires a duty to disclose for those acts to be criminal.

## B.   Section 2(b) and § 4

Separately, the misprision statute requires as an act any "affirmative act, as alleged, to conceal the crime." As with § 1505, there is no limit to the acts undertaken to conceal, and any act taken to cause another to conceal is probably, by definition, an act of concealment itself. But the government requests a § 2(b) instruction for § 4 that makes clear it is alternative to the substantive instruction for § 4.

The government notes that if the Court plans to give a § 2(b) instruction defining "willfully" with reference to the *Bryan* standard of "knowledge that his conduct is unlawful," the government intends to introduce evidence that defendant, as an Assistant United States Attorney, prosecuted a defendant for misprision in violation of § 4.

The government also notes that the joint proposed jury instructions in this case for § 4 include the substantive elements of the felonies that defendant is alleged to have concealed, including conspiracy to violate § 1030(a)(7)(B). In turn, the definition of conspiracy in that section, drawn from the Model Jury Instructions, also uses the word "willfully" (with the definition included in the same sentence acting with the "intent to advance or further some object or purpose of the conspiracy"). If the word "willfully" is defined for purposes of § 2(b), that definition should be included in the same § 2(b) instruction and make clear it is limited to § 2(b), so as not to confuse the jury about the meaning of "willfully" in the conspiracy instruction.

## CONCLUSION

For the foregoing reasons, the Court should give a clearly alternative instruction on § 2(b), and should not add a "duty to disclose" to the § 1505 instruction.

DATED: September 18, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

_____/s/_____
ANDREW F. DAWSON
BENJAMIN KINGSLEY
Assistant United States Attorneys