STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ANDREW F. DAWSON (CABN 264421)
BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7019
    FAX: (415) 436-7234
    andrew.dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:20-CR-337 WHO |
| Plaintiff, | UNITED STATES'S RESPONSE TO MOTION TO PRESENT REMOTE TESTIMONY |
| v. | |
| JOSEPH SULLIVAN, | |
| Defendant. | |

    Defendant has moved to permit the remote testimony of Kiersten Todt, a senior official serving as Chief of Staff for the Cybersecurity and Infrastructure Agency ("CISA"). The government believes that remote testimony is not actually supported here, as there are no extraordinary circumstances and the defense has not taken reasonable measures to secure Ms. Todt's timely testimony (either in person or via a deposition at an earlier stage). Given the essentially irrelevant nature of Ms. Todt's likely testimony and the lack of effort to secure timely in-person testimony, the interests of justice are not served by her remote testimony. It also creates the appearance with the jury of special treatment.

    As an initial matter, Ms. Todt was previously the Executive Director of former President Obama's Commission on Enhancing National Cybersecurity ("the Commission"). Defendant's relevant interactions with Ms. Todt arose from his role as a commissioner on that Commission. This

1  Commission was established within the Department of Commerce, so, for purposes of her work for that
2  Commission, Ms. Todt worked for Commerce.
3      Government counsel has been informed by CISA that defense counsel submitted a *Touhy* request
4  to CISA for Ms. Todt's testimony on August 11, 2022, and, following negotiation between defense
5  counsel, CISA, and Commerce attorneys, CISA sent defense counsel a letter outlining the
6  "commitments and understandings set forth" by the defense regarding Ms. Todt's testimony. *See*
7  Exhibit 1, CISA Letter. Government counsel in this case was not involved in those negotiations.
8  However, the "commitments and understandings set forth" by the defense, reflected in the letter from
9  CISA, were that Ms. Todt "would not be appearing in her former official Commerce capacity, but rather
10 in her non-Commerce personal capacity"; "[t]hat the scope of Ms. Todt's testimony would be narrow
11 and limited by the Federal Rules of Evidence, including Rule 404"; "[t]hat other than factual
12 background describing her professional relationship with Mr. Sullivan, the remainder of Ms. Todt's
13 testimony would be strictly limited to her opinion of Mr. Sullivan's reputation for honesty and
14 integrity"; and "[t]hat you will not elicit responses relating to Ms. Todt's former position as an official at
15 Commerce or otherwise imply that she is testifying in her capacity as a former Commerce official." *Id.*
16 at 1–2.
17     Defendant's motion's description of Ms. Todt's expected testimony appears inconsistent with the
18 terms of that letter. The defense states that not only will Ms. Todt testify about "her opinion of Mr.
19 Sullivan's integrity and honesty, based in large part on her work with Mr. Sullivan" on the Commission,
20 but that "[s]he will also testify about the demanding work the Commission performed, and Mr. Sullivan,
21 beginning November 13, 2016 through December 1, 2016 as it prepared its final report to present to the
22 president." Dkt. 208 at 3. To the extent the defense plans on eliciting such evidence, it would clearly
23 require Ms. Todt to testify about matters "relating to her former position as an official at Commerce."
24 Moreover, even if not elicited on direct, it is likely that Ms. Todt's testimony would require the
25 government to cross-examine her about the Commission's work or her work at CISA.
26     To understand further what actually relevant evidence Ms. Todt has to offer, the government
27 interviewed Ms. Todt this morning (with CISA counsel present) and will be producing an FBI 302 of
28 that interview to the defense shortly. In that interview, Ms. Todt had described defendant's positive

reputation as of 2016 for being near the top of the field in cybersecurity work, and being a highly recommended voice from private industry for the Commission. She said that she knew defendant through the Commission's work, that defendant was a very diligent and involved member of the Commission, and that he participated actively in the work of the Commission, including drafting part of the Commission's final report. When asked whether she truly had an opinion of defendant's character for honesty and integrity, as opposed to his skill and thoughtfulness as a cybersecurity leader and member of the Commission, she did not articulate an opinion. When asked if she would have a basis for having such an opinion given the nature of their work and interactions, she could not think of a particular example or instance in which he had done something that would give her a basis for such an opinion.

With respect to the timing of their work together, and its overlap with the 2016 data breach response, Ms. Todt said that most of the work of the Commission was completed by early November 2016, that the last in-person meeting was around November 8, 2016, and that a few commissioners (she could not recall who) were giving comments on the draft report in the next week or two,[1] but that by November 20, 2016, she was finalizing the report, which was released on December 1, 2016.[2] Publicly available meeting minutes reflect that there was a virtual meeting of the Commission on November 21, 2016, and the participant list in those meeting minutes does not list defendant as a participant at that meeting.[3] Ms. Todt also acknowledged that one of the express focuses of the Commission's work and recommendations in the report was on improving consumer awareness of cybersecurity risks in products

---

[1] If defendant were one of those commissioners, he never mentioned his attention being taken up by the Commission in the two interviews with WilmerHale in which he described how busy he was the week of November 14, 2016. Instead, he pointed to other things, including his testimony in Maryland at the end of that week. Ex. 1055 (Sep. 26, 2017 meeting notes) at 3 ("My oversight. I was testifying in MD on the safety front. We had a major regulatory proceeding in Thursday/Friday where MD first state to require every Uber driver to be fingerprinted."); id. at 7 ("That week I wasn't at 555, was in prep, in east coast."); Ex. 1111 (Oct. 2, 2017 interview notes) at 2 ("In looking back at 2 week period, we were on precipice of having US drivers fingerprinted; dealing with this; and IOS privacy. Major backlash against the change in privacy settings that my team had built.").

[2] See Commission on Enhancing National Cybersecurity, "Report on Securing and Growing the Digital Economy," Dec. 1, 2016, available at https://www.nist.gov/document/cybersecurity-commission-report-final-postpdf (last accessed Sep. 23, 2022).

[3] Commission on Enhancing National Cybersecurity, "Meeting Minutes," Nov. 21, 2016, available at https://www.nist.gov/system/files/documents/2017/01/19/commission_public_meeting_november_21_2016_clean_final.pdf (last accessed Sep. 23, 2022).

and services so that they could make informed decisions about cybersecurity risks posed by products and services, including by having businesses work with the FTC on this issue.

Given these facts, it is unclear what, if any, relevant and helpful testimony Ms. Todt will offer the defense. Her opinion of defendant's character is that he was a respected, hardworking, and highly regarded leader in the cybersecurity world. Such evidence is not entirely irrelevant, as defendant's desire to protect his pristine reputation was clearly part of his motive in covering up the 2016 data breach. But it is also essentially uncontested, and has been elicited by both parties from many other witnesses who worked directly with defendant. It is not proper character evidence testimony.

Moreover, defendant has simply not established diligence or extraordinary circumstances that would require authorizing remote testimony for such a minor witness this late in a criminal trial. Defendant states that "Because two of the agency's four leaders have mission critical travel during the weeks of September 20 and 26, 2022, Ms. Todt must remain at CISA's headquarters during their absence." Dkt. 208 at 2. Despite indicating that Ms. Todt is unavailable to travel "during the weeks of September 20 and 26, 2022," defendant's motion also states that "Mr. Sullivan expected Ms. Todt would testify much later in the month, as the government has consistently maintained to the Court and Mr. Sullivan's counsel that it needed two and a half to three weeks to present its case against Mr. Sullivan (a total of 12 to 15 trial days)." Dkt. 208 at 2 n.1.

It is unclear exactly at what point "later in the month" the defense expected Ms. Todt to testify if she is unavailable to travel "during the weeks of September 20 and 26," as the week of September 26 ends at the end of the month of September. Contrary to defendant's contention, the government has been telling the defense and the Court that it expected to rest the week of September 19—as it did. At the pretrial conference, during the discussion of time-screening jurors for four calendar weeks of trial, the Court stated: "I'm thinking four weeks is enough for the trial. Does someone want to disabuse me of that notion?" 8/22/2022 Tr. at 69. AUSA Dawson responded, "Your Honor, I think from our perspective, we are hoping our case in chief will be done in two-and-a-half weeks, maybe three on the outside." *Id.* Defense counsel stated: "With that, Your Honor, four weeks will be plenty, Your Honor." *Id.* On the morning of Monday, September 12, the parties discussed scheduling, and AUSA Kingsley stated: "I think it's possible that the Government will rest this week, if we have a normal week," and that

"[m]aybe it will carry over into the beginning of next week." 9/12/2022 Tr. at 817. On the morning of September 15, 2022, the Court asked the government when it would rest, and government counsel said, "it's possible it would be Tuesday." 9/15/2022 Tr. at 1489. The government's various predictions turned out to be, basically, correct—the government rested early on Wednesday, September 21, the second court day of the third week of trial. And by the Court adding a dark day on Rosh Hashanah, the schedule for the defense's case actually has ended up being a day later than would have been anticipated based on the initial trial schedule the Court provided at the pretrial conference.

The defense has had since August 22, 2022, to prepare for the contingency that Ms. Todt would not be available on the precise days it would want to call her—or to figure out how to arrange for her appearance here. Ms. Todt never appeared on the defense witness list, filed August 15, 2022, dkt. 147, and defense counsel did not reach out to the government about her scheduling issues until September 19, 2022, dkt. 208-1 at 2. The defense never requested a Rule 15 deposition to preserve her testimony, nor requested taking her testimony out-of-order during the government's case because of her scheduling issues. The government has put 17 witnesses on, all in person, in this trial without a single break in testimony.

Following the Supreme Court's decision in *Maryland v. Craig*, 497 U.S. 836, 840 (1990), the Ninth Circuit allows for remote video testimony of when the denial of physical confrontation "is necessary to further an important public policy" and reliability is ensued. *See United States v. Carter*, 907 F.3d 1199, 1207 (9th Cir. 2018); *see also Stoner v. Sowders*, 997 F.2d 209, 213 (6th Cir. 1993) ("The witness is not confronted in the courtroom situation. The immediacy of a living person is lost. In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact."); *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) ("Closed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness. There may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony."); *United States v. Nippon Paper Indus. Co.*, 17 F. Supp. 2d 38, 42 (D. Mass. 1998) ("Studies have suggested that television and videoscreens necessarily present antiseptic, watered down versions of reality. Much of the interaction of the courtroom is missed."). Though most appellate cases involve the defendant's right under the Confrontation Clause (as the government rarely is

in a position to appeal an order granting remote testimony), the United States nonetheless has a valid interest in live testimony. *United States v. Banki*, 2010 WL 1063453, *2-3 (S.D.N.Y. 2010) (noting that while "[t]he Government's interest in confrontation may not be of constitutional proportions . . . these cases suggest that the Court should evaluate whether the proposed testimony has similar indicia of reliability as a matter of public policy").

Though the government expects Ms. Todt will be a helpful witness for the government, the government has serious reservations about permitting remote testimony. Hybrid remote testimony is clunky and, for all the reasons above, not an adequate substitute for live testimony in a criminal jury trial. It should be reserved for truly extraordinary circumstances, not simply at the convenience of a party and a witness when a modicum of planning could have avoided it, particularly for a witness with as little to say as Ms. Todt. Her testimony may create the appearance to the jury that Ms. Todt is getting some kind of special treatment—perhaps by virtue of her high-ranking role in the government—and thus is allowed to testify remotely. If she is permitted to testify remotely, her testimony on direct examination should be appropriately limited.

DATED: September 23, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

_____/s/_____
ANDREW F. DAWSON
BENJAMIN KINGSLEY
Assistant United States Attorneys