DAVID H. ANGELI (admitted *pro hac vice*)
TYLER P. FRANCIS (admitted *pro hac vice*)
MICHELLE H. KERIN (admitted *pro hac vice*)
URSULA LALOVIĆ (Cal. Bar No. 215551)
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232 │ Facsimile: (503) 227-0880
Email: david@angelilaw.com; tyler@angelilaw.com; michelle@angelilaw.com; ursula@angelilaw.com

JOHN D. CLINE (Cal. Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

*Attorneys for Defendant Joseph Sullivan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>    Defendant. | Case No. 3:20-cr-00337-WHO<br><br>DEFENDANT JOSEPH SULLIVAN'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT OF ACQUITTAL<br><br>Date: December 14, 2022<br>Time: 1:30 p.m.<br>Crtrm: 2, 17th floor<br><br>Hon. William H. Orrick |

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO

# REPLY

## I. INTRODUCTION

Blending hyperbole and snark, the government portrays this as a run-of-the-mill obstruction case. It is not. As Sullivan's motion demonstrates, the evidence reflects none of the usual badges of obstruction. Sullivan did not lie to the FTC. He did not tell anyone else to lie. He did not withhold or falsify documents or direct anyone else to do so. Instead, even by the government's telling, he committed a handful of affirmative acts (which the government recycles throughout its brief), none of which had any demonstrated connection to the FTC, and he did not volunteer information about the 2016 Incident on the occasions when he communicated with the Uber attorneys handling the FTC matter. No obstruction case the government cites (or that we have found) rests on such a flimsy basis. And the same goes for the misprision count.

The government's dismissive tone is likely to heighten the unsettling effect this prosecution has had on the cybersecurity community. Bug bounty programs have become essential cybersecurity tools. But in the hands of a zealous prosecutor, almost any request for a bug bounty payment can be construed as extortion. Cybersecurity professionals now must choose: report the hacker to law enforcement, with or without making the requested payment, or (as Sullivan and his team did) make the payment without reporting the hacker to law enforcement. The first option amounts to shuttering the bug bounty program; word will quickly spread among hackers that the company cannot be trusted. The second option preserves the bug bounty program but subjects those administering it to prosecution for misprision or even, in some circumstances, obstruction. As this case demonstrates yet again, criminal law is a blunt tool for setting public policy on complex issues—particularly where, as here, Congress has repeatedly considered the issue and declined to act.

We ask that the Court look past the government's rhetoric and tone, scrutinize the evidence carefully, and grant Sullivan's Rule 29 motion or, at a minimum, his alternative motion for new trial.

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO

1

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

## II. ARGUMENT

**A.   Nothing in the government's opposition demonstrates that the § 1505 charge was supported by sufficient evidence.**

**1.   The Court's earlier decision declining to give a standalone "nexus" instruction is distinct from the question of the sufficiency of the evidence.**

To begin, the government mistakenly contends that Sullivan's Rule 29 motion amounts to an attempt to relitigate the parties' earlier dispute over the jury instructions. Not so. The jury instructions and the sufficiency of the evidence are "separate issues." *United States v. Clark*, 24 F.4th 565, 572 (6th Cir. 2022); *see also United States v. Baldyga*, 233 F.3d 674, 679 n.3 (1st Cir. 2000) (a defendant's challenges to the jury instructions and the sufficiency of the evidence "raise analytically distinct questions"). The purpose of the jury instructions is to "accurately define the elements of a statutory offense" without reference to the evidence. *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003) (citing *United States v. Summers*, 268 F.3d 683, 687 (9th Cir. 2001)). A Rule 29 motion, however, asks the Court to "measure the sufficiency of the evidence" against the "elements of proof [that] are required of the Government to obtain a conviction[.]" *United States v. Browne*, 505 F.3d 1229, 1249 (11th Cir. 2007).

For the reasons stated in our initial brief, we maintain that § 1505 incorporates a "nexus" requirement and that, as to Sullivan's alleged affirmative acts of obstruction (the NDA, the September 2017 email to Uber's new CEO, and so on), the government did not present evidence from which a rational jury could find beyond a reasonable doubt that the requisite nexus existed between Sullivan's conduct and the FTC proceeding. We recognize, of course, that the Court rejected the nexus requirement in the context of the jury instructions—but it is free to revisit that question in the Rule 29 context and, for the reasons we have explained, it should do so.

The government insists that the Court's jury instructions in fact incorporated a nexus requirement. If that is true, one wonders why the government fought tooth and nail at trial against the nexus instruction that Sullivan proposed. The answer is straightforward: the purported nexus requirement the government cites appears solely in the Court's instruction on Sullivan's intent; it required proof that Sullivan intended to obstruct the FTC proceeding, but it

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO

2

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

did not require that a connection—"a relationship in time, causation, or logic[,]" *United States v. Aguilar*, 515 U.S. 593, 599 (1995)—actually exist between Sullivan's affirmative acts and the proceeding.[1]

### 2. The government presented insufficient evidence of a nexus between the allegedly obstructive acts and the FTC proceeding.

The government's opposition does not identify evidence based on which a jury could have rationally found "a relationship in time, causation, or logic"—or, for that matter, any meaningful connection at all—between the FTC investigation and any of Sullivan's affirmative conduct. *See id*. For that reason, the government's case failed.

The government devotes much of its opposition to an issue that Sullivan's Rule 29 motion does not raise: intent. As *Aguilar* makes clear, a defendant's mere intent to obstruct a proceeding is insufficient to sustain a conviction. The Supreme Court rejected the view "that *any* act, done with the intent to 'obstruct . . . the due administration of justice,' is sufficient to impose criminal liability." *Id.* at 602 (emphasis in original). In doing so, *Aguilar* envisioned a man who "knew of a pending investigation and lied to his wife about his whereabouts at the time of the crime, thinking that an FBI agent might decide to interview her and that she might in turn be influenced in her statement to the agent by her husband's false account of his whereabouts." *Id*. Fully conceding the man's obstructive *intent* ("The intent to obstruct justice is indeed present[.]"), *Aguilar* noted that the man's conduct still would be insufficient to subject him to criminal liability because it was not sufficiently likely to affect the investigation itself. *See id*. The same rule applies in these circumstances. Under § 1505, the government needed to do more than establish merely that Sullivan engaged in some act out of a desire to hinder the FTC investigation. Put differently, the connection between the obstructive conduct and the relevant proceeding must involve more than just the defendant's state of mind. Instead, the defendant's

---

[1] Nothing in this reply amounts to or should be construed as a waiver of Sullivan's argument that the Court should have given an instruction requiring the government to establish such a nexus.

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
3

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

conduct must be of a type that would have the "natural and probable effect" of interfering with the proceeding. *See id*. at 599-601.[2]

All that in mind, the government's proof on Count 1 falls short not because the government failed to adduce sufficient evidence of intent, but rather because no rational juror could have concluded that Sullivan's relevant *actions* had the "natural and probable effect" of obstructing an FTC proceeding to which (so far as the evidence revealed) those actions were wholly unrelated. *See id*. For example, at the very most, John Flynn's testimony about Sullivan's "this can't get out" comment bore on the FTC investigation in only a speculative and highly attenuated way. Flynn himself testified that he did not make a connection between the comment and the FTC proceeding. (Tr. (Flynn) 604:3-22.) In any event, Flynn had no authority to determine what information Uber did and did not provide to the FTC—and, so far as the evidence revealed, Sullivan had no reason at all to think that Flynn had any power to influence Uber's FTC responses. The same is true of comments attributed to Sullivan in the Preacher Central Tracker (the "PCT") about the information being "extremely sensitive" and about his communications with the A-Team. Of the nearly 20 Uber employees who were privy to those PCT comments, none had the power to determine what Uber would or would not disclose to the FTC.

Nor, critically, was there any evidence that Sullivan ever told anyone to withhold information from the Uber attorneys who were responsible for responding to the FTC's inquiries. (*See* Tr. (Clark) 1448:16–1449:10, 1455:3–10; *id*. (Flynn) 697:5–697:19; *id*. (Garbutt) 837:11–838:2); *id*. (Ross) 1176:19–1177:9, 1213:11–1214:20.) On the contrary, the undisputed evidence established that Sullivan took steps to ensure that Uber's legal department had the information it needed to assess the significance of the incident. For example, he provided Alex Garbutt—who

---

[2] By analogy, in a mail fraud case, the elements of intent to defraud and materiality are separate. The government can prove that a defendant acted with intent to defraud the alleged victim through false representations, but if it fails to prove that the misrepresentations were material, the jury must acquit. Similarly here, even if the government proved Sullivan's intent to obstruct the FTC proceeding (which, of course, we dispute), acquittal is still required because it did not prove the requisite nexus between his affirmative acts and the proceeding.

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
4

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

was closely involved in responding to the 2016 Incident—as a resource to the Uber attorneys responsible for the FTC matter. More saliently, from the beginning of Uber's response to the Incident, Sullivan involved Uber attorney Craig Clark, whose job included liaising between the security and legal teams.

In each case, Sullivan's comments to his team would influence the FTC investigation only if additional, unforeseeable events occurred. Put differently, none of the comments, whether individually or together, were reasonably capable *themselves* of causing Uber to withhold relevant information from the FTC. Because Sullivan never directed anyone to withhold information from the attorneys preparing Uber's responses, others at Uber needed independently to cause those attorneys not to receive the information. That could have happened for any number of reasons—perhaps the attorneys failed to ask the right questions of Clark, Garbutt, or others; perhaps Clark, Garbutt, or others failed to understand the attorneys' questions; perhaps they simply forgot the information requested of them, or did not consider it responsive—but, at bottom, none of Sullivan's comments set in motion a chain of events that inevitably (or even likely) would have influenced the FTC investigation. *See Aguilar*, 515 U.S. at 601 (a false statement to a grand jury "all but assures that the grand jury will consider the material in its deliberations[,]" whereas "what use will be made of false testimony given to an investigating agent who has not been subpoenaed or otherwise directed to appear before the grand jury is far more speculative"). For those reasons, no rational juror could have found "a relationship in time, causation, or logic[,]" *id*. at 599, between the FTC investigation and any of Sullivan's general statements about the need to keep the response to the incident tightly controlled.

The same is true of the decisions to treat the incident as a bug bounty and to enter into a nondisclosure agreement ("NDA") with the hackers. Even if those decisions were arguably "wrongful" in some other sense—*e.g.*, because the incident did not meet the terms of Uber's bug bounty program, or because the NDA misstated the circumstances of the incident—the government presented no evidence suggesting that either had any impact whatsoever on Uber's responses to the FTC. So too with Sullivan's 2017 email to Uber CEO Dara Khosrowshahi and

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO

5

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

communications with WilmerHale attorney Randall Lee; the government offered no evidence that any of those communications had any bearing whatsoever on the information disclosed to the FTC in the company's responses. In fact, the government's opposition appears not even to argue as much, characterizing those communications merely as evidence of intent—which, as explained above, is insufficient by itself to sustain a § 1505 conviction.

3. **A recent Ninth Circuit case confirms that a § 1505 case based on an omission must involve a corresponding duty to disclose—which the government failed to prove at trial.**

As the government's opposition recognizes, Sullivan was involved in Uber's communications to the FTC on only three occasions following the 2016 Incident, all of them very brief. Those communications included Uber's December 2016 interrogatory responses, its April 2017 letter urging the FTC to close its investigation, and its subsequent comments on the FTC's draft consent order. At no point did the government present any evidence suggesting that Sullivan claimed *affirmatively* at those times (or otherwise) that the 2016 Incident had not occurred. Instead, the evidence established only that Sullivan did not mention the Incident to the Uber attorneys responsible for preparing the communications to the FTC. The government tries hard to paint those interactions as something more than mere omissions—it says variously that Sullivan "permitted," "allowed," and "impliedly ratified" communications that others wrote— but no evidence at trial indicated that Sullivan did anything more than remain silent regarding the 2016 Incident on those three occasions.

As a matter of law, Sullivan's silence is insufficient to sustain a § 1505 conviction, and nothing in the government's opposition demonstrates otherwise. The government's contention that Sullivan's omissions on those occasions were somehow "interwoven" with the other, unrelated conduct outlined above is not supported by the evidence. There was, for example, no evidence at trial that Sullivan ever invoked the NDA or Uber's bug bounty program when communicating with Uber's FTC lawyers about the company's draft responses.

Nor has the government pointed to any case holding that it need not prove a specific legal duty to disclose in a § 1505 prosecution premised on an omission. In particular, *United States v.*

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
6

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1  *Singh*, 979 F.3d 697 (9th Cir. 2020), did not so hold. In fact, *Singh* came to the opposite
2  conclusion. *See id*. at 717 ("Singh further argues that even if he omitted the information . . . he
3  had no duty to disclose that information. . . . This argument has merit. In most of the cases where
4  courts affirmed § 1519 convictions based on omissions, the defendants either prepared the record
5  or document, or were responsible for doing so." (citations omitted)). In *Singh*, the defendant's
6  conviction was upheld under 18 U.S.C. § 2(b) because—unlike Sullivan's silence here—the
7  defendant there affirmatively caused a third party to violate its duty to disclose. *See id*. at 715-16
8  (when discussing potential payment with the individuals who were responsible for preparing the
9  reports, the defendant said falsely "that he would 'voluntarily help'" and "'[d]on't worry. It's
10 taken care of.'"). Notably, the government's opposition declines even to address the due process
11 problems that would arise if the Court were not to require the government to demonstrate a duty
12 to disclose in these circumstances.

13       The Ninth Circuit recently signaled that district courts should read § 1505 in conjunction
14 with 18 U.S.C. § 1001, in which context the duty-to-disclose requirement is well established. In
15 *United States v. Kirst*, 2022 WL 17099113 (9th Cir. Nov. 22, 2022), the government brought a
16 § 1505 case against a pilot who lied to the NTSB and FAA in proceedings related to an air crash.
17 The pilot argued that the jury instructions erroneously permitted the jury to convict him without
18 finding that his statements were material to the agencies' proceedings. *See id*. at *12-*13. In
19 affirming, the Ninth Circuit took it for granted that materiality was an "element" of the
20 government's § 1505 case. *See id*. at *13 ("The district court thus did not err in instructing the
21 jury on the materiality element."). It noted, moreover, that the district court's instruction
22 "accords with Ninth Circuit Model Criminal Jury Instruction 24.10[,]" which by its terms applies
23 in § 1001 cases, and further cited a § 1001 case. *Id*. (citing *United States v. Peterson*, 538 F.3d
24 ///
25 ///
26 ///
27 ///

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
7

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

1064, 1072–73 (9th Cir. 2008)). In other words, in *Kirst*, the Ninth Circuit interpreted § 1505 in accordance with § 1001.[3]

This Court should do the same in determining whether § 1505, like § 1001, requires the government to prove that a defendant had a duty to disclose before he may be held criminally liable for an omission. As measured against the Ninth Circuit's § 1001 jurisprudence, the government's generalized contention that Uber's lawyers habitually "relied on [Sullivan] and his team" falls far short of establishing a specific legal duty to disclose. As Sullivan outlined in his opening brief, both the text of the statute and due process demand that a failure to disclose information may lead to criminal liability only "where a statute or government regulation requires the defendant to disclose specific information to a particular person or entity." *United States v. White Eagle*, 721 F.3d 1108, 1117 (9th Cir. 2013) (citing *United States v. Tobon–Builes*, 706 F.2d 1092, 1096 (11th Cir. 1983)). To say instead that a duty to disclose can arise from an informal expectation held by a fellow employee risks converting ordinary workplace miscommunications into federal felonies—an approach to federal criminal law of which the Ninth Circuit has pointedly disapproved. *See United States v. Nosal*, 676 F.3d 854, 859-60 (9th Cir. 2012) (en banc) ("The government's construction of the statute would . . . make criminals of large groups of people who would have little reason to suspect they are committing a federal crime. . . . Significant notice problems arise if we allow criminal liability to turn on the vagaries of private polices that are lengthy, opaque, subject to change and seldom read.").

**B.   Nothing in the government's opposition demonstrates that the misprision charge was supported by sufficient evidence.**

The government is mistaken in suggesting that Sullivan's motion attempts to relitigate the jury instructions with respect to the charge under 18 U.S.C. § 4. As Sullivan's motion pointed out, the jury instructions themselves required (consistent with the statute) the government to

---

[3] We note that Sullivan requested a materiality instruction on Count 1, which the government opposed, and the Court declined to give. (*E.g.*, ECF No. 156 at 52-59; *see also* Tr. 2359:6-11.) *Kirst* squarely supports the requested instruction.

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
8

**ANGELI LAW GROUP LLC**
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

prove affirmative conduct "*designed to conceal* the fact that a federal felony has been committed[.]" (ECF No. 219 at 19 (emphasis added).) As with the § 1505 charge, Sullivan's motion asks the Court not to revisit the jury instructions, but rather—for substantially the same reasons outlined above—to determine that the government presented no evidence of any affirmative conduct sufficient to meet that requirement.

**C.  The government's opposition identifies insufficient evidence from which a rational juror could conclude that the hackers' conduct—following the completion of the bug bounty process—was unauthorized.**

The government disputes much about the circumstances in which Clark advised Sullivan that the hackers' conduct could be deemed authorized retroactively, but it does not and cannot dispute *the fact that the advice was given*. Regardless of who solicited the advice, or the extent to which Sullivan (and, notably, others)[4] had developed an independent belief that the incident could properly be treated as a bug bounty, the evidence at trial was plain: Clark advised Sullivan and the rest of the security team that Uber could appropriately treat the incident as a bug bounty if they could (i) secure the data, (ii) ensure the hackers had not disseminated it further, and (iii) obtain an NDA from the hackers. (Tr. (Clark) at 1423:18-1424:13; Ex. 29 at 8.) In those circumstances, Clark then elaborated to Sullivan and his team, the incident would "by definition" not be considered a "data breach" because the access would "have been authorized." (Tr. (Clark) at 1424:7-13, 1320:14–17.) The government presented no evidence suggesting that Clark limited or qualified that advice, or that Clark was unaware of any particular facts or circumstances about the incident that would have affected his evaluation of its legal implications.

Instead, the government asks the Court to find that the jury could rationally conclude that Sullivan did not rely on Clark's legal advice, disparaging it (without meaningful explanation) as "ludicrous." As Sullivan pointed out in his opening brief, though, at least one federal court seems likely to disagree. *See Shefts v. Petrakis*, No. 10-CV-1104, 2012 WL 4049509, at *7 (C.D. Ill.

---

[4] The first person at Uber to tell the hackers that Uber's bug bounty program was the proper way to report the vulnerabilities they had discovered was Rob Fletcher, when he first emailed the hackers at 12:51 p.m. on November 14, 2016. (Tr. (Fletcher) 952:6-12; *see also* Exs. 152, 350.)

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
9

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880


Sept. 13, 2012) (coming to an analogous conclusion in the context of the Stored Communications Act). Moreover, considering the Ninth Circuit's longstanding framework for evaluating CFAA claims, Clark's advice was not unreasonable on its face. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) ("The plain language [CFAA] indicates that 'authorization' depends on actions taken by the employer.").

More fundamentally, the government's argument that Sullivan should have disregarded Clark's advice is legally insufficient to prove his knowledge that a federal felony had occurred. *See United States v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017). Even "'evidence that tends to show a defendant was negligent or otherwise should have known about a criminal venture'" is insufficient to establish that a defendant had the requisite knowledge of a "'criminal venture.'" *United States v. Sanders*, 240 F.3d 1279, 1284 (10th Cir. 2001) (quoting *United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996)). In other words, the government needed to do more than merely ridicule Clark's advice—which, taken at face value, rendered the hackers' access authorized once certain conditions were met. The government introduced no such evidence, and the government's opposition identifies none.

### III. CONCLUSION

For all the foregoing reasons, as well as those outlined in his opening brief, Sullivan respectfully requests that the Court enter a judgment of acquittal on both of the charged counts.

DATED: December 7, 2022.

        *s/David H. Angeli*
        David H. Angeli
        Tyler P. Francis
        Michelle H. Kerin
        Ursula Lalović
        John D. Cline

        *Attorneys for Defendant Joseph Sullivan*

DEF'S REPLY ISO RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
3:20-cr-00337-WHO
10

ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880